**EXHIBIT 1**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIPCRICKET, INC., | ) | Case No. 15-10104 (LSS) |
| | ) | |
| Debtor.[1] | ) | |

**MOTION FOR ENTRY OF AN ORDER:
(I) AUTHORIZING DEBTOR TO (A) PAY WAGES,
SALARIES, AND OTHER COMPENSATION, PAYROLL WITHHOLDINGS AND
BENEFITS CONTRIBUTIONS, (B) MAINTAIN EMPLOYEE MEDICAL AND
SIMILAR BENEFITS, AND (C) PAY REIMBURSABLE EMPLOYEE EXPENSES; AND
(II) AUTHORIZING BANKS AND OTHER FINANCIAL
INSTITUTIONS TO PAY ALL CHECKS AND ELECTRONIC PAYMENT
<u>REQUESTS MADE BY DEBTOR RELATING TO THE FOREGOING</u>**

The above-captioned debtor and debtor in possession ("<u>Hipcricket</u>" or the

"<u>Debtor</u>"), hereby moves (the "<u>Motion</u>") the Court for entry of an order, substantially in the form

annexed hereto as **Exhibit A**: (a) authorizing, but not requiring the Debtor to (i) pay and/or

honor and remit prepetition wages, salaries, and certain other compensation, payroll

withholdings and benefits contributions, (ii) maintain employee medical and similar benefits,

(iii) pay reimbursable employee expenses, and (iv) pay prepetition payroll and benefits,

administrative fees and expenses, subject to caps shown below; and (b) authorizing banks and

other financial institutions to receive, process, honor, and pay all checks presented for payment

and electronic payment requests relating to the foregoing. In support of this Motion, the Debtor

respectfully states as follows:

---

[1]  The last four digits of the Debtor's tax identification number are 2076. The location of the Debtor's headquarters
and the service address for the Debtor is 110 110th Avenue NE. Suite 410, Bellevue, WA 98004.

DOCKET # 3

DATE 1-21-15

**Jurisdiction**

1.      The United States Bankruptcy Court for the District of Delaware (the

"Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the District of*

*Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection

with this Motion to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III

of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a),

363(b) and 507(a) of title 11 of the United States Code (as amended, the "Bankruptcy Code")

and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (as amended, the

"Bankruptcy Rules").

**Background**

4.      On January 20, 2015 (the "Petition Date"), the Debtor filed with this Court

a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is operating

its business and managing its property as debtor and debtor in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a

trustee or an examiner in this case, and no official committee has yet been appointed by the Office of the United States Trustee (the "U.S. Trustee").

5.    The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Todd Wilson in Support of First Day Motions* (the "Wilson Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

## Debtor's Employees

6.    The Debtor utilizes, in the aggregate, 77 employees in engineering, mobile solutions, creative, sales, marketing, IT, and administrative positions to perform the functions necessary to effectively and efficiently operate the Debtor's business (collectively, the "Employees"). Of that workforce, 70 are full-time Employees and 7 are part-time Employees.

7.    To minimize the personal hardships that the Employees will suffer if prepetition employment-related obligations are not paid or honored, to maintain the morale of the retained Employees during this critical time, and to minimize disruptions to the Debtor's ongoing business operations and the administration of the estate, the Debtor, by this Motion, seeks authority, in its sole discretion, to: (i) pay unpaid prepetition claims for wages, salaries, non-insider bonuses, and other compensation (collectively, the "Unpaid Wages") to the Employees (both those who have been or may be terminated and those who are being retained) up to $12,475 per employee; (ii) pay and remit the Withholding Obligations (defined below) to the proper third parties; (iii) pay any prepetition fees and charges owed to the Payroll Related

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Wilson Declaration.

Administrators (as defined below); (iv) honor and maintain certain Employee related benefits (as more fully set forth in Section C below) offered by the Debtor (collectively, the "Benefits"); (v) reimburse certain unpaid business Expense Reimbursement Obligations (defined below) incurred prepetition by Employees; and (vi) pay all costs incident to the foregoing as set forth in detail below.

### Debtor's Compensation and Benefits Programs

**A.      Unpaid Wages and Withholding Obligations**

**Employee Wages**

8.      Salaried and Part-Time Employees.  For the Debtor's 77 salaried and part-time Employees, the average aggregate gross payroll per pay cycle including wages and salaries (collectively, "Wages") and Withholding Obligations (defined below) is approximately $334,000 (although there are fluctuations during, for example, holiday periods).  The salaried and part-time Employees are paid in arrears, on a bi-monthly basis, typically the 15th and last day of each month (unless such day falls on a weekend in which case the payroll is issued the previous Friday).  The Debtor's last payroll was made on January 15, 2015, covering Wages earned from January 1 through January 15, 2015.

9.      The next payday is scheduled for January 30, 2015, covering the pay period January 16 to January 31, 2015, with (subject to Court approval) the Debtor's funding of direct deposits to be authorized on January 28, 2015, direct-deposit Employees' bank accounts to receive such funds on January 30, 2015.  The Debtor believes it owes an estimated $109,739 in

gross earned but unpaid prepetition Wages for Employees (including applicable Withholding

Obligations (discussed below)) which would be paid as part of the January 30th payroll.

10.    Contract Employees.  Six of the Debtor's Employees are independent

contractors who provide critical art direction, business operations, engineering and accounting

services.  The independent contractors are paid approximately monthly.  The average aggregate

gross monthly run-rate is $42,000.[3]  The Debtor requests approval to pay contract Employees up

to the approximate amount of $30,000 of amounts owing as of the Petition Date.

11.    Based on the foregoing, the Debtor seeks authority to pay the total amount

of unpaid Wages up to a total aggregate amount of $150,000.[4]

1.    **Employer Tax Obligations and Withholding Obligations**

12.    In the ordinary course of business, the Debtor routinely withholds from

Wages, and also owes in connection with Wages, certain amounts required to be transmitted to

taxing authorities, including, without limitation, employer payroll taxes and Employees' portions

of FICA and unemployment taxes (collectively, the "Payroll Related Tax Obligations").  The

Payroll Related Tax Obligations are remitted by an administrator, ADP, as discussed below.  In

the ordinary course, the Debtor also withholds contributions to the Debtor's health, vision, dental

benefit plans and other insurance plans, 401(k) contributions and 401(k) loan repayments,

employee medical contributions, flexible spending and dependent care accounts and other similar

accounts, and withholdings for garnishment, or child support or similar obligations pursuant to

court order or law (the "Benefits Withholdings" and, together with the Payroll Related Tax

---

[3]  Such amount includes 25% of the Wages of one of the contract Employees which is paid to a third-party recruiter.
[4]  No Employee is owed more than $12,475 in unpaid Wages as of the Petition Date.

Obligations, the "<u>Withholding Obligations</u>").  The Debtor estimates that Payroll Tax Related

Obligations, accrued as of the Petition Date, total approximately $48,400, which amount should

be withheld as part of the Withholding Obligations and remitted to the proper taxing authorities.

The Debtor estimates all other prepetition Withholding Obligations to total approximately

$8,730.

       13.     The Debtor seeks authority to withhold any and all Withholding

Obligations from the paychecks and remit such amounts to the applicable governmental entities

and other third parties, and to pay and remit the appropriate Payroll Related Tax Obligations

owed by the Debtor, in the ordinary course of business.

**B.**     **<u>Payroll/Benefits Related Administrators</u>**

       14.     The Debtor employs ADP, LLC ("<u>ADP</u>") as its payroll administrator to

process and transfer payroll and payroll tax related amounts to the Employees and appropriate

taxing authorities.  As part of each payroll, on the day that the Debtor submits its payroll report

to ADP the Debtor transfers the funds needed for payroll and payroll tax related obligations from

its operating account to its payroll account at Silicon Valley Bank.  Based on the report furnished

by the Debtor, ADP automatically withdraws funds from the Silicon Valley Bank payroll

account.  ADP's compensation is approximately $275 per pay period, and is collected by ADP

directly from the Debtor's payroll account at Silicon Valley Bank, typically after payroll has been

settled.  The Debtor estimates that, as of the Petition Date, no amounts are owed to ADP.

However, given the intervening federal holiday since the last payroll, the Debtor seeks authority

to pay up to $275 of prepetition obligations in an abundance of caution.

15.    The Debtor also employs Flex Plan Services, Inc. ("Flex Plan" and together with ADP, "Payroll Related Administrators") as an administrator in respect to Employees' FSA related matters.  Flex Plan authorizes Employees' withdrawals and reimbursements from the Debtor's accounts in respect to such matters.  The Debtor pays fees to Flex Plan monthly in the approximate amount of $100 per month (the "FSA Administrator Obligations").  In addition, the Debtor currently has outstanding a $150 plan amendment fee which is related to a 2014 plan amendment which has not yet been invoiced by Flex Plan and must be paid in order for the plan amendment to take effect as of January 1, 2015.  Accordingly, the Debtor seeks authorization to pay Flex Plan up to $150 on account of prepetition services.

**C.    Debtor's Employee Benefits and Employee Programs**

16.    The Debtor provides eligible Employees, in the ordinary course of business, with certain Benefits, including, but not limited to (a) medical, dental and vision insurance, (b) workers' compensation, (c) vacation time and other paid time off, and (d) other miscellaneous employee benefits, each as described below.

**1.    Medical Plans**

17.    Approximately 66 of the Debtor's Employees (together with their participating dependents) receive medical benefits through the Debtor.  For medical coverage, eligible Employees are offered three PPO policies with different deductible and premium structures provided and operated by Aetna (the "Medical Plan").  Premiums are paid on a cost-sharing basis.  In 2015, the Debtor will pay Aetna approximately $52,000 in total monthly premiums under the Medical Plan (which includes the Employees' portion of premiums that is

paid by the Debtor and subsequently offset by the applicable Withholding Obligations) in advance each month. Prior to the Petition Date, typically for each payroll period, covered Employees are paid approximately 23.6%-34% of the monthly owed premium based on the applicable plan selected. The Debtor seeks authorization to pay any and all prepetition amounts that may be owed to Aetna relating to the Debtor's medical insurance policies (the "Medical Plan Obligations"), up to $52,000.

    2.    **Other Healthcare Related Reimbursements/Payments**

18.    The Debtor also makes contributions ("Debtor-Spending Account Contributions") to certain Employees' flexible spending accounts ("FSAs") and healthcare savings accounts ("HSAs" and, collectively with FSAs, the "Spending Accounts"), based on which particular healthcare plan the Employee is in.

19.    Each pay period, Employees make contributions to FSAs which are held at and administered by Flex Plan. Debtor and Employee contributions to HSAs made each pay period are held at and administered by Aetna; the remittance file is emailed each payroll period and debited by Aetna.

20.    In an average payroll, approximately $2,283 is in relation to the Spending Accounts, of which $2,090 is comprised of Employees' own contributions to the Spending Accounts and $193 is comprised of the Debtor's contributions to HSAs. The Debtor seeks authority to remit the applicable Employee Spending Account contributions in the ordinary course.

3.    **COBRA**

21.    The Debtor seeks to continue to perform any obligations under Section 4980B of the Internal Revenue Code to administer Continuation Health Coverage (26 U.S.C. § 4980B) ("COBRA") in respect to former Employees and their covered dependents.  Polestar Benefits, Inc. ("Polestar") is the third-party COBRA administrator for the Debtor.  The Debtor does not believe it owes any prepetition amounts to Polestar in respect to COBRA matters; however, in an abundance of caution, the Debtor seeks authority to pay up to $100 to Polestar on account of prepetition obligations (the "COBRA Administration Fees").  Moreover, to maintain Employee morale and ensure the orderly administration of the estate, the Debtor requests authority to continue performing in its discretion any COBRA related obligations.

4.    **Dental & Vision Plans**

22.    The Debtor offers dental coverage administered by Aetna for eligible Employees and eligible dependents (the "Dental Plan"), and a voluntary vision plan administered by VSP to Employees and eligible dependents (the "Vision Plan").

23.    Dental Plan and Vision Plan coverage premiums also are paid on a cost-sharing basis.  The Debtor pays (a) Aetna approximately $5,100 in total monthly premiums (which includes the Employees' 19.8%-32.6% portion of premiums that is paid by the Debtor and subsequently offset by the applicable Withholding Obligations) in advance each month for coverage under the Dental Plan and (b) VSP approximately $465 in total monthly premiums (which includes the Employees' 12.3% portion of premiums that is paid by the Debtor and

subsequently offset by the applicable Withholding Obligations) in advance each month for coverage under the Vision Plan.

24.     The Debtor is seeking authorization to pay any and all prepetition amounts including Withholding Obligations that may be owed to (a) Aetna relating to the Debtor's Dental Plan (the "Dental Plan Obligations"), up to $5,100; and (b) VSP relating to the Debtor's Vision Plan (the "Vision Plan Obligations") up to $465.

**5.     Life & Disability Insurance**

25.     The Debtor provides eligible Employees with (i) premium-based life insurance and accidental death & dismemberment insurance ("Life/AD&D Insurance"), long-term disability insurance and short-term disability insurance (together, "Disability Insurance"), each through Aetna, and (ii) access to supplemental life insurance, supplemental spouse/child life insurance and supplemental disability insurance (also through Aetna) (collectively, the "Aetna Supplemental Insurance Programs").

26.     There also are two Employees enrolled in a supplemental disability and catastrophic care insurance plan (the "Colonial Supplemental Insurance Program" and, together with the Aetna Supplemental Insurance Programs, the "Supplemental Insurance Programs") offered through Colonial Life ("Colonial"). This is 100% employee paid (no employer contribution). The Debtor withholds the premiums from paychecks and then pays the invoice to Colonial.

27.     All premiums for the Life Insurance, Disability Insurance and Supplemental Insurance –totaling approximately $3,200 per month– are paid for by the Debtor.

While the Debtor is responsible for payment for the Life Insurance and Disability Insurance (approximately $2,430 of the $3,200 monthly total), the balance relating to the Supplemental Insurance Programs is subsequently offset by applicable Employees' premium payments.

28.     The Debtor does not believe that any amounts are owed by the Debtor on account of the Life Insurance, Disability Insurance and Supplemental Insurance Programs as of the Petition Date.  However, in the abundance of caution, the Debtor seeks authority to pay up to $2,430 of prepetition obligations and to continue to offer the Life Insurance, Disability Insurance, and Supplemental Insurance Programs postpetition in the ordinary course of business, in the Debtor's discretion.

**6.     Workers' Compensation**

29.     Under the laws of various states, the Debtor is required to maintain workers' compensation insurance to provide its Employees with coverage for injury claims arising from or related to their employment with the Debtor.  For Employees other than Employees in Washington (discussed further below), the Debtor maintains a workers' compensation benefits program through Hanover (the "Hanover WC Program").  The Hanover WC Program provides benefits to all Employees in each of the states in which the Debtor operates other than Washington, for claims arising from or related to the Employee's employment with the Debtor (together with any premiums, fees and/or other charges payable to Hanover, the "Hanover WC Obligations").  Under the Hanover WC Program, Hanover acts as a third party administrator and provides guaranteed insurance coverage at the statutorily-required level for the states in which the Debtor operates.  The Debtor pays Hanover in ten installments

for the coverage year. There currently is approximately $20,000 remaining unpaid for the October 15, 2014 – October 15, 2015 coverage period. The Debtor seeks authority to pay to Hanover the unpaid installments as they come due in the ordinary course.

30.    In respect to Employees in Washington, the Debtor has state-mandated compensation insurance fund coverage (the "Washington Program," respectively, and together with the Hanover WC Program, the "Workers' Compensation Programs"). In respect to the Washington Program, the Debtor made payment in January, 2015 to the Washington Department of Labor and Industry (the "Washington Agency"), for the period October, 2014 to December, 2014. The Debtor will make payment to the Washington Agency, for the period January, 2015 to March, 2015, in April, 2015. The Debtor estimates approximately $17,522 will be owing to the Washington Agency for the calendar year 2015. Based on this estimate, the Debtor estimates that approximately $965 may be owed to the Washington Agency as of the Petition Date. The Debtor seeks authorization to pay any amounts owed or that may be payable to the Washington Agency, which relate to the prepetition period, when they come due in the ordinary course of business, up to a maximum of $965.

31.    In sum, the Debtor seeks authorization to, in its sole discretion, pay any prepetition claims arising from or relating to its workers' compensation related obligations for the current and prior coverage years (collectively, the "Workers' Compensation Obligations"), up to the caps specified above. The Debtor submits that the continuance of its Workers' Compensation Programs is appropriate in the ordinary course of business, but out of an

abundance of caution, seeks authority to maintain its workers' compensation insurance in accordance with applicable law postpetition in the ordinary course of business.

### 7.    <u>Vacation and other PTO</u>

32.    The Debtor seeks authorization to honor eligible Employees' accrued vacation time, sick, paid holiday and other leave policies and practices in the ordinary course of business (collectively, "<u>Paid Time Off</u>").

33.    Generally, vacation and sick leave time ("<u>PTO</u>") is provided to eligible Employees and accrual rates vary based on years of service.  More specifically, such Employees with two years' service get 20 PTO days per year, Employees with up to nine years' service get 25 PTO days per year, and Employees with ten years' service get 30 PTO days per year.  Such PTO time that is unused in a given year may be carried over to the following year.  However, Employees may not accrue more than 160 hours total, or as otherwise required by state law[5] (the "<u>PTO Maximum Balance</u>").  An Employee who reaches his or her PTO Maximum Balance will not accrue additional PTO until the Employee's PTO balance drops below the applicable PTO Maximum Balance, and Employees are not given retroactive credit for any period of time in which PTO stops accruing.

34.    The Debtor seeks authorization, in its discretion, to honor eligible Employees' accrued vacation time, sick, paid holiday and other Paid Time Off policies and practices in the ordinary course of business; provided, however, the Debtor does not seek authority to provide any cash-out of prepetition accrued Paid Time Off in excess of the $12,475

---

[5] For instance, under California law, employees may accrue up to 300 hours of paid vacation.

cap on account of unpaid prepetition Wages and any prepetition bonus amount (as discussed below).

**8.    401(k) Savings Plan**

35.    The Debtor maintains a 401(k) plan for the benefit of Employees (the "401(k) Plan"). The 401(k) Plan provides for automatic pre-tax and post-tax salary deductions of eligible compensation up to certain limits set by the Internal Revenue Code. The Debtor does not pay any employer matching contributions to the 401(k) Plan. As of the Petition Date, there are no accrued but unfunded matching contributions with respect to the 401(k) Plan. The Debtor utilizes Tax Sheltered Compensation, Inc. ("TSC") as the administrator. The Debtor pays TSC an approximately $725 quarterly fee plus certain fees for plan documentation, loan originations and other tasks; the Debtor owes TSC $1,711 on account of its prepetition services. All other 401(k) Plan related fees are paid with funds out of the 401(k) Plan, other than the audits (discussed below).

36.    The Debtor pays approximately $11,500 each year for the audit of the 401(k) Plan. An audit for the 2013 plan year is currently in process. Thus, in an abundance of caution, the Debtor requests authority to pay the auditor, Clark Nuber ("401(k) Auditor"), on account of any prepetition claims, up to $10,000.

37.    The Debtor submits its file with 401(k) Plan contributions and loan repayments (collectively, "401(k) Contributions") via a website maintained by American Funds ("American Funds") each payroll period. American Funds debits the Debtor's account to fund the 401(k) Contributions within a few days of submission. Failure to timely remit 401(k) Plan

deductions may be a violation of the Employee Retirement Income Security Act of 1974, as amended, resulting in potential personal liability for a debtor's officers for such amounts. Due to the intervening bank holiday since the January 15th payroll, the Debtor believes that there may be unremitted 401(k) Contributions totaling approximately $17,400.

38.    The Debtor believes that maintaining the 401(k) Plan at this point is important to maintaining Employee morale. Accordingly, the Debtor seeks authority to continue, in its sole discretion, the 401(k) Plan and pay and/or remit (as applicable) any related prepetition amounts described above as may be necessary, including the forwarding of 401(k) Contributions.

9.    **Business Expense Reimbursements**

39.    The Debtor customarily reimburses eligible Employees (primarily executives and sales force who incur mileage charges) who incur business related expenses in the ordinary course of performing their duties on behalf of the Debtor. Such expenses typically include, but are not limited to, business-related travel expenses, including air travel, car rental and car mileage, lodging, meal charges, and telephone charges, sample merchandise purchases, certain operational expenses, and miscellaneous other allowed business expenses (the "Expense Reimbursement Obligations"). Expense Reimbursement Obligations are charged by the Employees to their personal credit cards and are reimbursed by the Debtor.

40.    Pursuant to the Debtor's policy, Employees typically submit expense requests within 30 days of incurrence of the charge, subject to manager approval, and the Debtor typically reimburses the Employee within 15-20 days of receipt of the expense request. The reimbursements are funded through ADP and are included in payroll. It is difficult for the

Debtor to determine the exact amount of Expense Reimbursement Obligations that has accrued as of the Petition Date since the expenses incurred by Employees on behalf of the Debtor throughout the year vary on a monthly basis. As one example, as much as approximately $20,000 in a month has been incurred in business expense reimbursements in some months. Additionally, there may be some delay between when an Employee (who does not charge the expense to a corporate credit card) incurs an expense and submits the corresponding expense report for processing. Based on historical experience, the Debtor seeks authority to pay, in its discretion, any prepetition Expense Reimbursement Obligations, up to a total amount of $20,000 and to continue to honor Expense Reimbursement Obligations incurred postpetition in the ordinary course of business.

10.    **Debtor's Employee Bonus Programs**

41.    In the ordinary course of business and as an important component to its wages and compensation structure, certain Employees are eligible to receive bonuses based on certain criteria. Generally, such bonuses are calculated based on sale and/or other operations related criteria. The Debtor's prepetition bonus plans (collectively, the "Bonus Programs") include the following[6]:

(1)    **Sales Representatives and Account Managers Bonus Program ("Sales Rep/Account Mgr. Program"):** This bonus program's objective is to provide the Debtor's salesforce (who are not officers or insiders of the Debtor) special incentive

---

[6] The descriptions above are general summaries only, subject to the specific terms, conditions and criteria of each Bonus Program. Generally, each Bonus Program is discretionary and may be terminated, and the terms and conditions thereof are subject to change by the Debtor.

to perform at optimum levels so as to maximize sales volume. These discretionary bonuses ("Sales Rep/Account Mgr. Bonuses") may be earned each month through achievement of the monthly sales plan and on a quarterly and annual basis based on sales volume benchmarks; the bonus recipient must be, among other things, an active Employee in good standing on the last day of the calendar month to receive that month's bonus payment.[7] Any earned bonus is paid monthly in arrears, during the following month. Up to $25,000 in estimated Sales Rep/Account Mgr. Mgr. Bonuses for December has accrued and has not been paid to the relevant Employees. In addition, as of the Petition Date, the Debtors estimate that approximately $60,000 in such bonuses has accrued for January (which typically would be paid in February) and has not been paid to the relevant Employees. The Sales Rep/Account Mgr. Program is important to incentivizing the sales force to optimize performance, redounding to the benefit of the Debtor's overall business enterprise.

(2)    **Other Employee Bonus Program ("Other Emp. Bonus Program"):** This bonus program's objective is to provide the Debtor's Employees who are not sale representatives or account managers (and who are not officers or insiders of the Debtor) special incentive to perform at optimum levels so as to maximize sales volume. These discretionary bonuses ("Other Emp. Bonuses"), in the amount of $2,000 per eligible Employee, may be earned if the company reaches a margin and revenue goal.

---

[7] For example, if an Employee terminates on January 31, 2015, he or she would not be eligible for the bonus based on January 2015 billing activity. However, if such Employee terminates on February 1, 2015, he or she would be eligible for such bonus.

The Other Emp. Bonuses for the fourth quarter and the annual goal are slated to be paid in March if the performance goals are met. The Other Emp. Bonus Program is important to incentivizing the applicable Employees to maximize performance, for the overall benefit of the Debtor's enterprise.

42.     The Debtor requests the authority, to be exercised in its sole discretion, to continue paying amounts earned by non-insider Employees for bonuses under the Bonus Programs (collectively, the "Non-Insider Bonus Programs"), including any bonus amount that may relate to the prepetition period, in the ordinary course of business, up to the caps set forth in the proposed order, provided that, if and to the extent any of the bonuses accrued prepetition, no applicable Employee will receive more than the priority wage cap on account of unpaid prepetition Wages and any prepetition bonus amount.

**11.    Executive Incentive Plan**

43.     Prior to the Petition Date, the Debtor had in place certain executive incentive plans, which either are equity-based, provide for cash incentive bonuses or contain both elements, including the 2014 Equity Incentive Plan, the 2014 Incentive Compensation Plan, the Hipcricket Transaction Bonus Plan, and the Acquisition Bonus Program Summary Plan (the "Executive Incentive Plans"). The Debtor seeks no specific relief at this time with respect to the Executive Incentive Plans, but reserves its rights to file additional pleadings relating to these matters.

D.      **Summary**

44.     The Debtor seeks authority, in its sole discretion, to continue to honor and

implement the employee related policies and practices as described above and pay Unpaid

Wages, and the various Benefits as described above, including the estimated amounts set forth

below:

| | |
|---|---|
| Unpaid Wages (including Withholding Obligations other than Payroll Related Tax Obligations) | $150,000 |
| Expense Reimbursement Obligations | $20,000 |
| Medical Plan Obligations | $52,000 |
| Debtor-Spending Account Contributions (excluding Employee-funded contributions that are part of Withholding Obligations) | $200 |
| Life/AD&D Insurance, Disability Insurance and Supplemental Insurance | $2,430 |
| Dental and Vision Plans | $5,600 |
| Payroll Related Administrators | $425 |
| 401(k) Auditor | $10,000 |
| Workers' Compensation Obligations | $21,000 |
| Sales Rep/Account Mgr. Bonuses | $85,000 |
| COBRA Administration Fees | $100 |

provided that no Employee will be paid a total distribution of more than the $12,475 statutory

priority cap on account of prepetition Wages, any prepetition bonuses, and accrued Paid Time

Off (if applicable).

## Relief Requested[8]

45.    Pursuant to sections 105(a), and 363(b)(1) and (c)(1) of the Bankruptcy

Code and the "necessity of payment" doctrine, the Debtor seeks authority to pay, remit or honor,

in its sole discretion:

      a.     the Unpaid Wages, including any associated payroll processing related obligations and any prepetition amounts owed under the Non-Insider Bonus Programs;

      b.     all Withholding Obligations;

      c.     the Expense Reimbursement Obligations;

      d.     all prepetition obligations under the Benefits;

      e.     all Workers' Compensation Obligations, including those obligations incurred in or relating to the prepetition period and liquidated postpetition;

      f.     prepetition Paid Time Off, but only to the extent of the statutory priority cap; and

      g.     any other prepetition claims or obligations described in this Motion for which such authority is specifically requested herein.

The Debtor represents that it will not pay any amounts in excess of the caps for a particular

category of prepetition claim identified herein without further order from this Court.

46.    To enable the Debtor to accomplish the foregoing, the Debtor requests that

the Court authorize the Debtor's banks and other financial institutions to receive, process, honor,

and pay all checks presented for payment and electronic payment requests relating to the

foregoing.

## Basis for Relief

47.    Statutory support for the requested relief exists pursuant to

sections 105(a), 363(b)(1) and (c)(1), and 507(a) of the Bankruptcy Code and the "necessity of

---

[8] Nothing in this Motion is intended to or shall convert any prepetition claim into an administrative claim.

payment" doctrine (discussed *infra*).  Bankruptcy Code section 363(b)(1) authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing.  Bankruptcy Code section 363(c) authorizes a debtor in possession to enter into transactions in the ordinary course of business without notice and a hearing.  Bankruptcy Code section 105(a) further provides, in pertinent part, that this Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

48.     The relief requested in this Motion is supported by the well-established "necessity of payment" doctrine.[9]  The "necessity of payment" doctrine, which has been embraced by the Third Circuit, "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus."  *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).  *See also In re Sharon Steel Corp.*, 159 B.R. 730, 737 (Bankr. W.D. Pa. 1993) (embracing "necessity of payment" doctrine and citing *Lehigh & New England Ry. Co.* with approval).  Similarly, the court in *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989), stated that the "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor."  *Id.* at 176.  In that case, the court permitted Eastern Air Lines, Inc., to pay its current employees' prepetition wages, salaries, medical benefits, and business expense claims.  Judge Lifland relied on his

---

[9]  The doctrine was first articulated by the Supreme Court in railroad reorganization cases, *see Miltenberger v. Logansport Ry.*, 106 U.S. 286 (1882), and it has been held to be equally applicable to non-railroad debtor cases. *See, e.g., Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (hotel); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (airline).

equitable powers under Bankruptcy Code section 105(a) and, in particular, the "necessity of

payment" doctrine to authorize such payments, recognizing that the debtor had to make the

payments in order to retain its current employees and maintain positive employee moral--two

factors that he deemed critical to the rehabilitation of an operating debtor. *Id.* at 176-77 (*citing*

H.R. Rep. No. 595 95th Cong. 1st Sess. 16 (1977)). Other courts also have found that the

"necessity of payment" doctrine applies to the payment of prepetition employee compensation

and benefits. *See In re Chateaugay Corp.*, 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987) (under the

"necessity of payment" doctrine, bankruptcy court should defer to the debtor's business

judgment in permitting payment of certain workers' compensation claims).

       49.     This Court similarly has approved the payment of prepetition claims of

employees for wages, salaries, expenses, and benefits on the grounds that the payment of such

claims was necessary to effectuate a successful reorganization or liquidation. *See, e.g., In re Deb*

*Stores Holding LLC*, Case No. 14-12676 (KG) (Bankr. D. Del. Dec. 5, 2014); *In re Ablest, Inc.*,

Case No. 14-10717 (KJC) (Bankr. D. Del. April 2, 2014); *In re iBAHN Corporation*, Case No.

13-12285 (PJW) (Bankr. D. Del. Sept. 9, 2013; *.In re Revstone Industries, LLC*, Case No. 12-

13262 (BLS) (Bankr. D. Del. Jan. 10, 2013); *In re Digital Domain Media Group, Inc., et al.*,

Case No. 12-12568 (BLS) (Bankr. D. Del. Oct. 22, 2012); *In re Prince Sports, Inc., et al.*, Case

No. 12-11439 (KJC) (Bankr. D. Del. May 2, 2012); *In re Summit Business Media Holding Co.*,

Case No. 11-10231 (PJW) (Bankr. D. Del. Jan. 28, 2011).

       50.     The "necessity of payment" doctrine authorizes the Debtor to pay the

amounts it seeks authority to pay pursuant to this Motion because the Debtor's Employees are

critical assets necessary both to the Debtor's operations and the successful prosecution of this chapter 11 case.

51.    Pursuant to sections 507(a)(4) of the Bankruptcy Code, claims of Employees of the Debtor for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status to the extent of $12,475 per Employee. The Debtor does not seek to pay Unpaid Wages to any Employee in excess of $12,475. When combined, Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the Unpaid Wages to priority treatment. To confirm a chapter 11 plan, the Debtor must pay priority claims in full. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including vacation, severance, and sick pay earned by an individual, and (b) contributions to an employee benefit plan). Thus, granting the relief sought herein affects only the timing of payments to Employees, and does not negatively affect recoveries for general unsecured creditors. Indeed, the Debtor submits that payment of Employee claims at this time enhances value for the benefit of all interested parties.

52.    Many Employees live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. These Employees may be exposed to significant financial and healthcare related problems if the Debtor is not permitted to pay and/or honor the Unpaid Wages and Benefits, and the expenses associated therewith, in the ordinary course of the Debtor's business. Moreover, the Debtor believes that if it is unable to honor accrued Unpaid Wages and

Benefits described above, Employee morale and loyalty will be jeopardized at a time when support by the remaining Employees is critical.

53.    The Payroll Related Tax Obligations and certain other amounts either voluntarily or involuntarily withheld from Employee paychecks do not constitute property of the Debtor's estate and principally represent employee earnings that governments (in the case of taxes), and judicial authorities (in the case of involuntary Withholding Obligations), have designated for deduction from Employee paychecks. The failure to transfer these withheld funds could result in hardship to certain Employees. The Debtor expects inquiries from garnishers regarding the Debtor's failure to submit, among other things, child support and alimony payments, which are not the Debtor's property but, rather, have been withheld from Employee paychecks. Moreover, if the Debtor cannot remit these amounts, the applicable Employees may face legal action due to the Debtor's failure to submit these payments.

54.    Finally, the Debtor submits that with respect to the wage-related taxes that constitute "trust fund" taxes, the payment of such taxes will not prejudice other creditors of the estate given that the relevant taxing authorities would have a priority claim under section 507(a)(8) of the Bankruptcy Code in respect of such obligations. Moreover, the monies payable for trust fund taxes, as well as the other funds that are held in trust for the benefit of third parties, and the withheld funds with respect to the 401(k) Plan, are not property of the Debtor's estate. *See, e.g., Begier v. IRS*, 496 U.S. 53 (1990) (withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtors' estates).

55.     Generally, the Employees are critical components to the success of this chapter 11 case.  Deterioration in the morale and welfare of the Employees at this critical time undoubtedly would adversely impact the Debtor and its ability to maximize the value of its assets.  Satisfaction of the Unpaid Wages and Benefits, as described herein, is necessary to maintain the Employees' morale during the case and to ensure continued, efficient operation in order to maximize value for all creditors.

**B.     Satisfaction of Bankruptcy Rule 6003 and Waiver of Bankruptcy Rule 6004**

56.     Finally, pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, which became effective December 1, 2007, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b).  For the reasons described more fully above and as supported by the Wilson Declaration, the Debtor submits that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

57.     To implement the foregoing successfully and insure the wages and benefits owed to Employees are not interrupted, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

**Request for Authority for Banks and Other Financial Institutions
to Honor Checks Issued to Pay Wages and Benefits, to Honor All
Fund Transfer Requests Relating to the Foregoing, and to Pay All
Processing Fees Associated with Payment of Employee Wages and Benefits**

58.     The Debtor requests that all applicable banks and other financial

institutions be authorized to receive, process, honor, and pay all checks presented for payment

and to honor all fund transfer requests made by the Debtor to Employees and/or on account of

any Benefits, whether such checks were presented or fund transfer requests were submitted prior

to, on, or after the Petition Date.  The Debtor represents that it has (or will have) sufficient

postpetition funding to pay promptly all Unpaid Wages and honor Benefits, to the extent

described herein, on an ongoing basis and in the ordinary course of business.  Nothing contained

in this Motion, however, shall constitute a request for authority to assume any agreements,

policies, or procedures relating to Unpaid Wages and Benefits.  Further, the Debtor seeks to

retain the discretion to decide which Unpaid Wages and Benefits they will pay and honor, and

nothing in this Motion shall be deemed an admission by the Debtor that any Unpaid Wages and

Benefits will in fact be paid or honored.

59.     Finally, the Debtor requests authority to pay all of the processing fees

associated with payment of the Unpaid Wages and Benefits as described in this Motion.

### Notice

60.     Notice of this Motion has been given to the following parties or, in lieu

thereof, to their counsel:  (i) the Office of the United States Trustee; (ii) the Debtor's secured

lender, Fast Pay, LLC, and (iii) Debtor's proposed purchaser and post-petition lender SITO

Mobile, Ltd.  Because the Motion is seeking "first day" relief, within two business days after the

hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Delaware Local Bankruptcy Rule 9013-1(m).

61.     The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

62.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Court should authorize, but not require, the Debtor to pay and honor all of the Unpaid Wages and Benefits described in this Motion, including prepetition wages, salaries, non-insider bonuses, and other compensation, benefits withholdings, payroll and benefits administrative fees, and reimbursable employee expenses, and authorize banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, and grant such other and further relief as is just and proper.

Dated:  January 20, 2015            PACHULSKI STANG ZIEHL & JONES LLP

Ira D. Kharasch (CA Bar No. 109084)
Linda F. Cantor (CA Bar No. 153672)
James O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:      ikharasch@pszjlaw.com
             lcantor@pszjlaw.com
             joneill@pszjlaw.com

[Proposed] Counsel for the Debtor and Debtor in Possession

# Exhibit A

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIPCRICKET, INC., | ) | Case No. 15-10104 (___) |
| | ) | |
| Debtor.[1] | ) | |

**ORDER (I) AUTHORIZING DEBTOR TO (A) PAY WAGES, SALARIES, AND CERTAIN OTHER COMPENSATION, WITHHOLDINGS, AND BENEFITS CONTRIBUTIONS; (B) PAY RELATED ADMINISTRATIVE OBLIGATIONS; AND (C) PAY REIMBURSABLE EMPLOYEE EXPENSES; AND (II) AUTHORIZING BANKS AND OTHER FINANCIAL INSTITUTIONS TO PAY ALL CHECKS AND ELECTRONIC PAYMENT REQUESTS MADE BY THE DEBTOR RELATING TO THE FOREGOING**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (i) authorizing, but not requiring, the Debtor to all the relief requested in the Motion, including to pay prepetition (a) wages, salaries, and other compensation, withholdings and benefits contributions, (b) related administrative obligations, and (c) reimbursable employee expenses; and (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing; and the Court having found that jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334 as is venue pursuant to 28 U.S.C. §§ 1408 and 1409; this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); the relief requested is proper under 11 U.S.C. §§ 105(a), 507(a)(4) and (5), and 541(d); the relief requested is in the best interests of the Debtor's estate, its creditors, and other parties-in-interest; such relief is necessary to avoid

---

[1] The last four digits of the Debtor's tax identification number are 2076.  The location of the Debtor's headquarters and the service address for the Debtor is 110 110th Avenue NE. Suite 410, Bellevue, WA 98004.

[2]  Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.

immediate and irreparable harm meaning that the requirements of Rule 6003 of the Federal Rules

of Bankruptcy Procedure have been satisfied; proper and adequate notice of the Motion has been

given and that no other or further notice is necessary; and after due deliberation thereon; and

good and sufficient cause appearing therefore

IT IS HEREBY:

ORDERED that the Motion is GRANTED; and it is further

ORDERED that, pursuant to sections 507(a), 363(b) and 105(a) of the Bankruptcy

Code, the Debtor is authorized, but not directed, to pay and/or honor the Unpaid Wages and

Benefits, all costs and/or expenses related thereto as set forth in the Motion, in accordance with

the Debtor's policies in the ordinary course of business and as provided in the Motion, subject to

the following caps:

| | |
|---|---|
| Unpaid Wages (including Withholding Obligations other than Payroll Related Tax Obligations) | $150,000 |
| Expense Reimbursement Obligations | $20,000 |
| Medical Plan Obligations | $52,000 |
| Debtor-Spending Account Contributions (excluding Employee-funded contributions that are part of Withholding Obligations) | $200 |
| Life/AD&D Insurance, Disability Insurance and Supplemental Insurance | $2,430 |
| Dental and Vision Plans | $5,600 |
| Payroll Related Administrators | $425 |
| 401(k) Auditor | $10,000 |

| | |
|---|---|
| Workers' Compensation Obligations | $21,000 |
| Sales Rep/Account Mgr. Bonuses | $85,000 |
| COBRA Administration Fees | $100 |

and it is further

ORDERED that the Debtor and any other third parties administering Withholding Obligations on behalf of the Debtor, are authorized, but not directed, to make payments to applicable third parties with respect to the Payroll Related Tax Obligations, other Withholding Obligations and/or other Benefits, as set forth in the Motion, and the costs associated therewith, in accordance with the Debtor's ordinary course of business and stated policies, as set forth in the Motion; and it is further

ORDERED that notwithstanding any other provision of this Order, no payments to any individual Employee shall exceed the amounts set forth in 11 U.S.C. sections 507(a)(4) and 507(a)(5); and it is further

ORDERED that in accordance with this Order and any other order of this Court, the banks and financial institutions at which the Debtor maintains its accounts are authorized to honor all fund transfer requests made by the Debtor related hereto, to the extent that sufficient funds are on deposit in such accounts; and it is further

ORDERED that the Debtor is authorized to pay all processing and administrative fees associated with the Unpaid Wages and Benefits, as set forth in the Motion; and it is further

ORDERED that nothing in the Motion or this Order shall be construed as directing or requiring the Debtor to pay any such amounts, or impairing the Debtor's rights to contest the validity or amount of any Unpaid Wages and/or Benefits; and it is further

ORDERED that nothing in the Motion shall be deemed a request by the Debtor for authority to assume, and nothing in this Order shall be deemed authorization to assume, any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code or create an administrative obligation for any prepetition wages or benefits or other amounts or obligations set forth in the Motion; and it is further

ORDERED that the requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order; and it is further

ORDERED that notwithstanding the possible applicability of Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure, the terms and conditions of this Order shall be immediately effective and enforceable; and it is further

ORDERED that notwithstanding anything to the contrary contained hereon, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtor pursuant to any DIP Facility as approved by the DIP Order and as set forth in the DIP Budget; and it is further

ORDERED that the Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and Rule 9013-1(m) of the Local Rules of the United States Bankruptcy Court for the District of Delaware are satisfied by such notice; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____, 2015

_____
United States Bankruptcy Judge