# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIPCRICKET, INC., | ) | Case No. 15-10104 (LSS) |
| | ) | |
| Debtor.[1] | ) | |
| | ) | |

**MOTION PURSUANT TO SECTIONS 105, 363,
1107, AND 1108 OF THE BANKRUPTCY CODE FOR AN ORDER
AUTHORIZING (I) MAINTENANCE OF EXISTING BANK ACCOUNTS,
(II) CONTINUED USE OF EXISTING BUSINESS FORMS, AND (III) CONTINUED
USE OF EXISTING CASH MANAGEMENT SYSTEM**

The debtor and debtor in possession in the above-captioned case ("Hipcricket" or

the "Debtor") hereby submits this motion (the "Motion") for the entry of an order, substantially

in the form annexed hereto as **Exhibit A**, pursuant to sections 105, 363, 1107, and 1108 of title

11 of the United States Code (the "Bankruptcy Code"), authorizing the (i) maintenance of

existing bank accounts, (ii) continued use of existing business forms, and (iii) continued use of

existing cash management system for the Debtor.  In support of this Motion, the Debtor

respectfully states as follows:

**JURISDICTION**

1.    The United States Bankruptcy Court for the District of Delaware (the

"Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the District of*

---

[1]    The last four digits of the Debtor's tax identification number are 2076.  The location of the Debtor's headquarters
and the service address for the Debtor is 110 110th Avenue NE. Suite 410, Bellevue, WA 98004.

DOCKET # 4

DATE 1-21-15

*Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief sought herein are sections 105(a), 363, 1107, and 1108 of the Bankruptcy Code.

<strong><u>BACKGROUND</u></strong>

4.    On January 20, 2015 (the "<u>Petition Date</u>"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in this case, and no official committee has yet been appointed by the Office of the United States Trustee (the "<u>U.S. Trustee</u>").

5.    The factual background regarding the Debtor, including its current and historical business operations and the events precipitating its chapter 11 filing, is set forth in

detail in the *Declaration of Todd Wilson in Support of First Day Motions* (the "Wilson Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

## RELIEF REQUESTED

6.      By this Motion, the Debtor seeks authorization to (1) maintain its existing bank accounts, (2) continue to use its existing business forms, and (3) continue to use its existing cash management system.  Accordingly, the Debtor respectfully requests the entry of an order pursuant to sections 105, 363, 1107 and 1108 of the Bankruptcy Code granting such relief.

## THE DEBTOR'S CASH MANAGEMENT SYSTEM

7.      The Debtor's cash management system (the "Cash Management System") facilitates the timely and efficient collection, management and disbursement of funds used in the Debtor's business.  Because of the disruption to the business that would result if the Debtor was forced to close certain of its existing bank accounts, it is critical that the existing Cash Management System remain in place, subject to certain anticipated modifications as described herein.

8.      The existing Cash Management System consists of the bank accounts listed on **Exhibit B** hereto (the "Bank Accounts"), which are maintained at Silicon Valley Bank ("SVB") and Wells Fargo Bank, N.A. ("Wells Fargo" and, together with SVB, the "Banks").

9.      Substantially all collections from accounts receivable are deposited directly into an account maintained by the Debtor at SVB (the "Collections Account").[3]  As of the Petition Date, deposits in the Collections Account are automatically swept daily by the

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Wilson Declaration.
[3]  One of the Debtor's customers makes direct deposits into the Main Disbursement Account on a quarterly basis.

Debtor's factor, Fast Pay Partners LLC ("Fast Pay"). Of the deposits swept each day, Fast Pay (a) retains (i) interest and processing fees and (ii) a percentage of the Debtor's collections which is applied to reduce the balance of the Debtor's line of credit, and (b) transfers the remaining balance into the Debtor's disbursement account at SVB (the "Main Disbursement Account") for use by the Debtor in its operations. The Debtor makes disbursements from the Main Disbursement Account to third parties and, through two separate accounts at SVB (the "Payroll/FSA/HSA Accounts"), funds payroll and FSA/HSA obligations.

10.     The Debtor also maintains three restricted accounts (the "Restricted Accounts") at the Banks. The Restricted Accounts at SVB are interest-bearing accounts for the purpose of securing the Debtor's obligations with respect to (a) the real property lease for the Debtor's headquarters in Bellevue, Washington; and (b) the outstanding letter of credit to SVB with respect to the Debtor's corporate credit cards. The Restricted Account maintained at Wells Fargo is an interest-bearing account containing a set-aside pursuant to a settlement with Yahoo! Inc.

11.     The Debtor uses two corporate credit cards to fund certain payments related to the operation of its business: an American Express credit card and corporate credit card accounts with SVB. The SVB credit cards are used to fund certain payments related to the operation of the Debtor's business. Use of the SVB corporate credit cards is critical to the Debtor's ordinary course business operations because it provides additional liquidity on an as-needed basis. The balance on the SVB credit card account is fully collateralized in the amount of $100,000 held by SVB in a restricted account. As such, SVB is a secured creditor of the estate.

As of the Petition Date, the prepetition amount owed to SVB is $96,053.61.  Under section 553 of the Bankruptcy Code, SVB would be entitled to setoff the amount it is owed against the amounts it is holding, which would require the Debtor to post additional collateral under section 364 of the Bankruptcy Code in order to continue doing business with SVB.  Rather than requiring the Debtor to re-post collateral, the DIP Lender has consented to the Debtor paying $40,000 of the pre-petition amounts owing to SVB, as reflected in the DIP Budget, subject to Court approval.  In light of the importance of use of the SVB corporate credit cards, and SVB's status as a fully secured lender, the Debtor requests authority to pay the foregoing pre-petition amounts owing to SVB.

12.    A diagram showing the role of each Bank Account is attached hereto as **Exhibit C**.

13.    The Debtor seeks approval herein to continue using the Bank Accounts in all respects as described above and on **Exhibit C** in the ordinary course after the Petition Date, subject to its right to open or close accounts in accordance with any approved debtor-in-possession ("**DIP**") financing.  Moreover, the Debtor's proposed DIP financing order contemplates that, inter alia, certain proceeds of the DIP financing will be used to pay the balance owing to Fast Pay in full.  Accordingly, the Debtor reserves its right, subject to approval of the DIP financing and payoff of Fast Pay, to instruct SVB to give effect to the termination of Fast Pay's existing automatic daily sweep of the Collections Account and use of funds therein to pay obligations owing to Fast Pay as described above and on **Exhibit C**.

## NEED TO MAINTAIN EXISTING BANK ACCOUNTS

**A.    The Court Should Authorize the Debtor to Maintain Existing Bank Accounts**

14.    The U.S. Trustee for the District of Delaware has established certain operating guidelines for debtors in possession.  One such provision requires a chapter 11 debtor in possession to open new bank accounts and close all existing accounts.  The United States Trustee Guidelines also require that the new bank accounts only be opened in certain financial institutions designated as authorized depositories by the U.S. Trustee.  This requirement, designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, helps to protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

15.    The Debtor seeks a waiver of the U.S. Trustee's requirement that the Bank Accounts be closed and new postpetition bank accounts be opened at depositories authorized by the United States Trustee.  If strictly enforced in this case, the U.S. Trustee's requirement would cause disruption in the Debtor's activities and would impair the Debtor's ability to operate its business for the benefit of its estate and parties in interest during this Case.

16.    Maintenance of the Bank Accounts will greatly facilitate the Debtor's operations in chapter 11.  The Debtor's customers make regular payments to the existing collections account by check or electronic transfers, and closing this account, establishing a new account in its place and instructing customers of the changes will substantially disrupt and delay the Debtor's receipt of payments from its customers and payments to its vendors.  To avoid disruptions and delays in the Debtor's receipt of payments and the Debtor's payment of debts

incurred postpetition, the Debtor should be permitted to continue to maintain the existing Bank Accounts and, if necessary, to open new accounts or close unnecessary existing accounts on an as-needed basis.

17.     To guard against improper transfers resulting from the postpetition honoring of prepetition checks, courts have ordered banks, with limited court-approved exceptions, not to honor any checks drawn on a Debtor's accounts before the Petition Date. Subject to a prohibition against honoring prepetition checks or offsets without specific authorization from this Court, the Debtor requests that the Bank Accounts be deemed debtor-in-possession accounts and that the Debtor be authorized to maintain and continue the use of these accounts in the same manner and with the same account numbers, styles and document forms as those employed prior to the Petition Date.

18.     If the relief requested herein is granted, the Debtor will not pay, and each of its banks where the Bank Accounts are maintained will be instructed not to pay, any debts incurred before the Petition Date, other than as specifically authorized by this Court.

B.     **The Court Should Authorize the Debtor to Continue Its Existing Cash Management System**

19.     The Debtor seeks authority to continue to use its Cash Management System. The Debtor's Cash Management System constitutes a customary and essential business practice and was created and implemented by the management of the Debtor in the exercise of its business judgment. The Cash Management System is similar to that commonly employed by corporate enterprises comparable to the Debtor in size and complexity. The widespread use of such type of Cash Management System, moreover, is attributable to the numerous benefits it

provides, including the ability to (a) control and monitor corporate funds, (b) reduce idle cash balances, (c) ensure cash availability and (d) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate balance and presentment information. In addition, avoiding the unnecessary distractions that inevitably would be associated with a substantial disruption of the Cash Management System will facilitate and enhance the Debtor's efforts to maximize the value of its assets for the benefit of its stakeholders. The relief requested is consistent with the relief provided to debtors in a number of other cases pending in this district.

C.    **The Court Should Grant the Debtor Authority to Use Existing Forms of Checks and Other Business Forms to the Limited Extent Requested Below**

20.    To minimize expense to its estate, the Debtor also requests authority to continue using checks and business forms without reference to its "Debtors in Possession" status for up to two weeks to enable the Debtor to order replacement check stock and business forms, provided that the Debtor shall add the "Debtors in Possession" designation to any checks and business forms after the two-week period expires.

D.    **The Court Should Authorize Payment of Outstanding Routine Prepetition Expenses Relating to the Operation of the Cash Management System Consistent With Any Court-Approved Cash Collateral Budget**

21.    In the ordinary course of the operation and maintenance of the Cash Management System, the Debtor incurs routine bank charges and fees relating to the administration of the Cash Management System. The Debtor seeks authority, in its sole discretion, to pay any such routine prepetition banking fees and credit card returns, chargebacks and processing fees in a manner consistent with any Court-approved budget.

## BASIS FOR RELIEF REQUESTED

**A.    The Continued Use of the Debtor's Cash Management System Is Essential
to the Debtor's Operations, and Approval to Maintain the Status Quo
Is Routinely Granted Under Bankruptcy Code Sections 363 and 105**

22.    Bankruptcy courts routinely grant chapter 11 debtors authority to continue

utilizing existing cash management systems, and treat requests for such authority as a relatively

"simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).    In

*In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an

order authorizing the debtors and forty-three (43) of its subsidiaries "to continue to consolidate

the management of its cash as has been usual and customary in the past, and to transfer monies

from affiliated entity to entity, including operating entities that are not debtors." *Id.* at 620.  The

Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a

creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that

authorizing the debtors to utilize its prepetition "routine cash management system" was "entirely

consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621.

23.    Likewise, in another context, the bankruptcy court in the *Columbia Gas*

chapter 11 case explained that a centralized cash management system "allows efficient utilization

of cash resources and recognizes the impracticabilities of maintaining separate cash accounts for

the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934

(Bankr. D. Del. 1993), *aff'd in part* and *rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied*

*sub nom Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 114 S.

Ct. 1050 (1994).  The Third Circuit agreed, emphasizing that a requirement to maintain all

accounts separately "would be a huge administrative burden and economically inefficient."

*Columbia Gas*, 997 F.2d at 1061. *See also In re Southmark Corp.*, 49 F.3d 111, 114 (5th Cir. 1995) (cash management system allows debtors "to administer more efficiently and effectively its financial operations and assets"); *In re UNR Indus., Inc.*, 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984).

24.     Section 363(c)(1) of the Bankruptcy Code authorizes debtors in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *Medical Malpractice Ins. Ass'n. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2nd Cir. 1997). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtor seeks authority under section 363(c)(1) of the Bankruptcy Code to continue the collection and disbursement of cash pursuant to its Cash Management System as described above.

25.     Additionally the Court may exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Debtor's Cash Management System without interruption is vital to the success of this Case. The Cash Management System is an efficient mechanism whereby the Debtor is able to transfer its revenues toward the payment of its obligations.

26.    In other cases in this District, this Court has granted relief similar to that requested in this Motion. *See, e.g., In re Deb Stores Holding LLC*, Case No. 14-12676 (KG) (Bankr. D. Del. Dec. 5, 2014) (authorizing debtors' continued use of cash management system and bank accounts); *In re Mineral Park, Inc.*, Case No. 14-11996 (KJC) (Bankr. D. Del. Aug. 27, 2014) (same); *In re Ablest, Inc.*, Case No. 14-10717 (KJC) (Bankr. D. Del. Apr. 2, 2014) (same); *In re Dolan Co.*, No. 14-10614 (Bankr. D. Del. May 25, 2014) (BLS) (Bankr. D. Del. Mar. 25, 2014) (same); *In re FAH Liquidating Corp. f/k/a Fisker Auto. Holdings, Inc.*, No. 13-13087 (KG) (Bankr. D. Del. Dec. 13, 2013) (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (same); *In re AES Energy, L.P.*, Case No. 14138 (KJC) (Bankr. D. Del. Jan. 26, 2012) (same).[4]

## REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY

27.    Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtor seeks immediate entry of an order granting the Debtor (a) the authority to continue to pay bank fees and credit card returns, chargebacks and processing fees, and (b) a waiver of any stay of the effectiveness of such an order.

28.    Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtor's estate, the

---

[4]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

Court may allow the Debtor to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

29.    The continued use of the Bank Accounts, Cash Management System and checks and the payment of bank fees and credit card returns, chargebacks and processing fees are necessary to prevent the immediate and irreparable damage to the Debtor's estate. Accordingly, the Debtor submits that ample cause exists to justify: (a) the immediate entry of an order granting the relief sought herein pursuant to Bankruptcy Rule 6003(b); and (b) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## NOTICE

30.    The Debtor has provided notice to the following parties or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) the Debtor's secured lender, Fast Pay, LLC, and (iii) Debtor's proposed purchaser and post-petition lender SITO Mobile, Ltd. Because the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Delaware Local Bankruptcy Rule 9013-1(m). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

31.     No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**: (i) authorizing the Debtor to maintain the Bank Accounts, subject to the Debtor's ability, in its discretion, to close any unnecessary Bank Accounts throughout this Case; (ii) authorizing the Debtor to continue to use its existing checks without reference to the Debtor in Possession status, to the extent provided herein; and (iii) authorizing the Debtor to continue to employ its existing Cash Management System; and (iv) granting such other and further relief as the Court deems appropriate.

Dated:  January 20, 2015          PACHULSKI STANG ZIEHL & JONES LLP


Ira D. Kharasch (CA Bar No. 1090840
Linda F. Cantor (CA Bar No. 153762)
James O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone:  302/652-4100
Facsimile:  302/652-4400
E-mail:      joneill@pszjlaw.com

[Proposed] Counsel for the Debtor and Debtor in Possession

# EXHIBIT A

## Proposed Order

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIPCRICKET, INC., | ) | Case No. 15-10104 (___) |
| | ) | |
| Debtor. [1] | ) | |
| | ) | |

### ORDER PURSUANT TO SECTIONS 105, 363, 1107, AND 1108 OF THE BANKRUPTCY CODE AUTHORIZING (I) MAINTENANCE OF EXISTING BANK ACCOUNTS, (II) CONTINUED USE OF EXISTING BUSINESS FORMS, AND (III) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM

Upon consideration of the Motion (the "Motion") filed by the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case, seeking the entry of an order under sections 105, 363, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") authorizing the (i) maintenance of existing bank accounts, (ii) continued use of existing business forms, and (iii) continued use of existing cash management system for the Debtor; and it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O); and due and adequate notice of the Motion having been given under the circumstances; and after due deliberation and cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

---

[1] The last four digits of the Debtor's tax identification number are 2076. The location of the Debtor's headquarters and the service address for the Debtor is 110 110th Avenue NE. Suite 410, Bellevue, WA 98004.

1.    The Motion is granted as provided herein.

2.    The Debtor is authorized, but not directed, in the reasonable exercise of its business judgment, (i) to designate, maintain and continue to use, with the same account numbers, all of the bank accounts in existence on the Petition Date identified on Exhibit B to the Motion (the "Bank Accounts"), (ii) to use, in their present form, checks and other documents related to the Bank Accounts and (iii) to treat the Bank Accounts for all purposes as accounts of the Debtor as Debtor in Possession.

3.    The banks at which any Bank Account is maintained (the "Banks") are hereby authorized to continue to service and administer such Bank Account as an account of the Debtor as a Debtor in Possession without interruption and in the usual and ordinary course of business, and to receive, process, honor and pay any and all checks and drafts drawn on the Bank Account after the Petition Date by the holders or makers thereof, as the case may be; provided, however, that any check that has been drawn or issued by the Debtor before the Petition Date may be honored by any bank only if specifically authorized by order of this Court.

4.    Certain existing arrangements between the Debtor and the Banks with respect to the Bank Accounts and with respect to the transfers to and from the Bank Accounts shall continue to govern the postpetition cash management relationship between the Debtor and each of the Banks.

5.    The Debtor and each of the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank

accounts, including without limitation the Bank Accounts described in the Motion, with notice to the U.S. Trustee, counsel for the Debtor's prepetition and postpetition lenders, and counsel for any official committee appointed in the Case, and, in the course of providing cash management services to the Debtor, each Bank is authorized, without further order of this Court, to continue to deduct from the appropriate accounts of the Debtor, the Bank's customary fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtor.

6.      Each Bank that maintains a disbursement account of the Debtor shall implement reasonable handling procedures designed to effectuate the terms of this Order, and no Bank that implements such handling procedures and then honors a prepetition check or other item drawn on any account that is the subject of this Order either (i) at the direction of the Debtor to honor such prepetition check or item, (ii) in good faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite implementation of such handling procedures, shall be deemed to have violated this Order.

7.      The Debtor may continue to fund its business and operations through the Bank Accounts and to pay related bank fees and credit card returns, chargebacks and processing fees.

8.      The Debtor shall maintain detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Debtor's Cash Management System in connection with the ongoing utilization of its Cash Management System.

9.    Nothing contained herein shall prevent the Debtor from opening any new bank accounts or closing any existing bank accounts, including without limitation the Bank Accounts described in the Motion, as they may deem necessary and appropriate, with notice to the U.S. Trustee, counsel for the Debtor's prepetition lenders, and counsel for any official committee appointed in this Case; provided, however, that any new account shall be with a bank that is insured by the Federal Deposit Insurance Corporation and organized under the laws of the United States or any state therein and willing to execute a Uniform Depository Agreement with the U.S. Trustee's Office for the District of Delaware.

10.    The Debtor is authorized to continue utilizing its Cash Management System to manage its cash, in a manner consistent with its prepetition practice.

11.    Within fifteen (15) days from the date of entry of this Order the Debtor shall (a) contact each bank, (b) provide the bank with each of the Debtor's employer identification numbers, and (c) identify each of its accounts held at such banks as being held by a Debtor in Possession.

12.    The Debtor may continue using checks and business forms without reference to its "Debtors in Possession" status for up to two weeks, provided that the Debtor shall add the "Debtors in Possession" designation to any checks and business forms after the two-week period expires.

13.    The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

14.    Notwithstanding anything to the contrary contained hereon, any payment to be made, or authorization contained hereunder, shall be subject to the requirements imposed on the Debtor pursuant to any DIP Facility as approved by the DIP Order and as set forth in the DIP Budget.

15.    This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the 14-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

16.    The Debtor shall cause a copy of this Order to be served on each Bank at which a Bank Account is maintained within five (5) business days of the date hereof.

17.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____, 2015                    _____

United States Bankruptcy Judge

# EXHIBIT B

## Bank Accounts

## Bank Accounts

| Bank | Account Name (Type) | Account Number |
|---|---|---|
| Silicon Valley Bank | Operating Account (Disbursement) | xxxxxx3381 |
| Silicon Valley Bank | Lockbox Account | xxxxxx4003 |
| Silicon Valley Bank | Payroll Account (Disbursement) | xxxxxx3991 |
| Silicon Valley Bank | FSA and HSA (Disbursement) | xxxxxx3987 |
| Wells Fargo Bank, N.A. | Restricted Account | xxxxxx0097 |
| Silicon Valley Bank | Restricted Account | xxxxxx9800 |
| Silicon Valley Bank | Restricted Account | xxxxxx9815 |

# EXHIBIT C

## Cash Management System

In re Hipcricket, Inc.
Exhibit C – Cash Management System



* Substantially all collections from accounts receivable are deposited directly into the Collections Account maintained by the Debtor at Silicon Valley Bank. However, one of the Debtor's customers makes direct deposits into the Disbursement Account on a quarterly basis.

DOCS_LA:285096.1 36480/001