**EXHIBIT A-1**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIPCRICKET, INC., | ) | Case No. 15-10104 (LSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S APPLICATION FOR APPOINTMENT OF
## RUST CONSULTING OMNI BANKRUPTCY AS CLAIMS AND NOTICING AGENT

The above-captioned debtor and debtor in possession (the "Debtor"), files this

application (the "Section 156(c) Application") for entry of an order, substantially in the form

attached hereto as **Exhibit A** (the "Retention Order"), appointing Rust Consulting Omni

Bankruptcy, a division of Rust Consulting, Inc. ("Rust Omni") as claims and noticing agent

("Claims and Noticing Agent") in the Debtor's chapter 11 case effective *nunc pro tunc* to the

Petition Date (as defined below).  In support of the Section 156(c) Application, the Debtor

submits the Declaration of Brian Osborne (the "Osborne Declaration"), attached hereto as

**Exhibit B**, and respectfully represent as follows.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the

"Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the District of

Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

DOCKET # 7

DATE 1-21-15

District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection

with this Motion to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III

of the United States Constitution.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The bases for the relief requested herein are section 156(c) of title 28 of

the United States Code (the "Judicial Code"), section 105(a) of title 11 of the United States

Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Local Rule 2002 1(f), and the Court's

Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c),

instituted by the Clerk on February 1, 2012 (the "Claims Agent Protocol").

### Background

4.    On January 20, 2015 (the "Petition Date"), the Debtor filed with this Court

a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is operating

its business and managing its properties as a debtor and debtor in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a

trustee or an examiner in this case, and no official committee has yet been appointed by the

Office of the United States Trustee.

5.    The factual background regarding the Debtor, including its current and

historical business operations and the events precipitating its chapter 11 filing, is set forth in

detail in the Declaration of Todd Wilson, in Support of First Day Motions (the "Wilson Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

## Relief Requested

6.       By this Section 156(c) Application, the Debtor respectfully requests entry of an order appointing Rust Omni as the Claims and Noticing Agent for the Debtor and its chapter 11 case, including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtor's chapter 11 case. The Debtor's selection of Rust Omni to act as the Claims and Noticing Agent has satisfied the Claims Agent Protocol, in that the Debtor has obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtor submits, based on all engagement proposals obtained and reviewed, that Rust Omni's rates are competitive and reasonable given Rust Omni's quality of services and expertise.  The terms of Rust Omni's retention are set forth in the Engagement Agreement attached hereto as **Exhibit C** (the "Engagement Agreement"); provided, however, that Rust Omni is seeking approval solely of the terms and provisions as set forth in this Section 156(c) Application and the proposed Retention Order attached hereto.

## Rust Omni's Qualifications

7.       Rust Omni is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Rust Omni's professionals have experience in noticing, claims administration, solicitation, balloting,

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Wilson Declaration.

and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Rust Omni's professionals are and/or have acted as debtor's counsel and/or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide, including: *In re Ultura (LA), Inc.*, Case No. 14-12382 (KG) (Bankr. D. Del. Oct. 23, 2014); *In re S.B. Restaurant Co.*, Case No. 14-13778 (Bankr. C.D. Cal. July 15, 2014); *In re HDOS Enterprises*, Case No. 14-12028 (Bankr. C.D. Cal. Mar. 19, 2014); *In re American Suzuki Motor Corporation*, Case No. 12-22808 (Bankr. C.D. Cal. Nov. 28, 2012); *In re Allied Sys. Holdings, Inc.*, Case No. 12-11654 (CSS) (Bankr D. Del. June 6, 2012); *In re Perkins & Marie Callender's Inc.*, Case No. 11-11795 (KG) (Bankr. D. Del. June 14, 2011); *In re Innkeepers USA Trust*, Case No. 10-13800 (KG) (Bankr. S.D.N.Y. July 19, 2010); *In re AGT Crunch Acquisition, LLC*, Case No. 09-12889 (Bankr. S.D.N.Y., May 6, 2009); *In re Pacific Energy Res., Ltd.*, Case No. 09-10785 (KJC) (Bankr. D. Del. Mar. 10, 2009); *In re Estate Fin. Mortgage Fund LLC*, Case No. 08-11535 (Bankr. C.D. Cal. Oct. 8, 2008); *In re Mervyn's Holdings, LLC, et al.*, Case No. 08-11586 (KG) (Banks. D. Del. July 29, 2008); *In re ComUnity Lending, Inc.*, Case No. 08- 50030 (Bankr. N.D. Cal. Jan. 22, 2008); *In re Refco Commodity Mgmt., Inc.*, Case No. 06-12436 (Bankr. S.D.N.Y. Nov. 15, 2006); *In re Owens Corning Sales, LLC*, Case No. 00-3837 (KG) (Bankr. D. Del. Oct. 5, 2000), and others. [3]

       8.      By appointing Rust Omni as the Claims and Noticing Agent in this chapter 11 case, the distribution of notices and the processing of claims will be expedited, and the Office

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Declaration. Copies of these orders are available upon request to the Debtor's proposed counsel.

of the Clerk of the Bankruptcy Court (the "Clerk") will be relieved of the administrative burden

of processing what may be an overwhelming number of claims.

## Services to be Provided

9.      This Section 156(c) Application pertains only to the work to be performed

by Rust Omni under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local

Rule 5075-1, and any work to be performed by Rust Omni outside of this scope is not covered by

this Section 156(c) Application or by any order granting approval hereof.  Specifically, Rust

Omni will perform the following tasks in its role as Claims and Noticing Agent, as well as all

quality control relating thereto:

a.      prepare and serve required notices and documents in this chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of this chapter 11 case and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of this chapter 11 case;

b.      maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtor's known creditors and the amounts owed thereto;

c.      maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

d.    furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.    maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.    for all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.    process all proofs of claim received, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

h.    maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

i.    implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

j.    record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

k.    relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Rust Omni not less than weekly;

l.    upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

m.   monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

n.   identify and correct any incomplete or incorrect addresses in any mailing or service lists;

o.   assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

p.   if this chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Rust Omni of entry of the order converting the case;

q.   thirty days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing Rust Omni as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

r.   within seven days of notice to Rust Omni of entry of an order closing this chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the chapter 11 case; and

s.   at the close of these chapter 11 case, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064; or (ii) any other location requested by the Clerk's office.

10.   The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Rust Omni.

**Professional Compensation**

11.   The Debtor respectfully requests that the undisputed fees and expenses incurred by Rust Omni in the performance of the above services be treated as administrative

expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Rust Omni agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

12.     Prior to the Petition Date, the Debtor provided Rust Omni a retainer in the amount of $10,000. Rust Omni seeks to first apply the retainer to all prepetition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during this chapter 11 case as security for the payment of fees and expenses incurred under the Engagement Agreement.

### Disinterestedness

13.     Although the Debtor does not propose to employ Rust Omni under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (such retention will be sought by separate application), Rust Omni has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of the Debtor's knowledge, information, and belief, and except as

disclosed in the Osborne Declaration, Rust Omni has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed.

14.    Moreover, in connection with its retention as Claims and Noticing Agent, Rust Omni represents in the Osborne Declaration, among other things, that:

a.    Rust Omni is not a creditor of the Debtor;

b.    Rust Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

c.    by accepting employment in this chapter 11 case, Rust Omni waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

d.    in its capacity as the Claims and Noticing Agent in this chapter 11 case, Rust Omni will not be an agent of the United States and will not act on behalf of the United States;

e.    Rust Omni will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

f.    Rust Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.    in its capacity as Claims and Noticing Agent in this chapter 11 case, Rust Omni will not intentionally misrepresent any fact to any person;

h.    Rust Omni shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

i.    Rust Omni will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.    none of the services provided by Rust Omni as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

k.    Rust Omni will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## Compliance with Claims and Noticing Agent Protocol

15.    This Section 156(c) Application complies with the Claims Agent Protocol and substantially conforms to the standard Section 156(c) Application in use in this Court. To the extent that there is any inconsistency between this Application, the Retention Order and the Engagement Agreement, the Retention Order shall govern.

## Basis for Relief

16.    Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of bankruptcy courts, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases. It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

17.    In addition, Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter. The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. §

156(c) (which can be found on the Court's website) and shall perform the [Claims and Noticing Services].

Del. Bankr. L.R. 2002-1(f).

18.     The Court has promulgated a protocol "to ensure the use of competitive process in the selection of claims and noticing agents" in instances where the Court has authorized such use under the Claims Agent Protocol. In compliance with the Claims Agent Protocol, the Debtor obtained and reviewed engagement proposals from three court-approved notice and claims agents, including Rust Omni. First, the Debtor provided each court-approved notice and claims agent the basic facts about the Debtor's case and asked each company to submit a written proposal based upon such facts. The Debtor then asked each company case-specific pricing questions. Ultimately, the Debtor chose Rust Omni as its notice and claims agent based on their capability and favorable price terms.

19.     Given the number of creditors and other parties in interest involved in this chapter 11 case, the Debtor seeks an order appointing Rust Omni as the notice and claims agent in this chapter 11 case pursuant to 28 U.S.C. § 156(c) and Local Rule 2002 1(f) to relieve this Court and the Clerk's Office of administrative burdens.

20.     Based on the foregoing, the Debtor submits that it has satisfied the requirements of the Judicial Code, the Local Rules, and the Claims Agent Protocol. Accordingly, the Debtor respectfully requests entry of an order pursuant to section 156(c) of the Judicial Code, Local Rule 2002-1(f), and the Claims Agent Protocol authorizing the Debtor to retain and employ the Claims and Noticing Agent, effective *nunc pro tunc* to the Petition Date.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

21.     Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b).  For the reasons described herein and as supported by the Wilson Declaration, the Debtor submits that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.  To implement the foregoing successfully, the Debtor seeks a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## Notice

22.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel:  (i) the Office of the United States Trustee; (ii) the Debtor's secured lender, Fast Pay, LLC, and (iii) Debtor's proposed purchaser and post-petition lender SITO Mobile, Ltd.  Because the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Delaware Local Bankruptcy Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

23.    The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

24.    No prior request for the relief sought in this Section 156(c) Application has been made to this or any other court.  Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final judgment or order with respect to the Application if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

*[Remainder of page intentionally blank]*

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated:  January 23, 2015

HIPCRICKET, INC.,

By: Todd Wilson
Its: Chief Executive Officer

# EXHIBIT A

## Proposed Order

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIPCRICKET, INC., | ) | Case No. 15-10104 (___) |
| | ) | |
| Debtor. | ) | |

**ORDER AUTHORIZING AND APPROVING THE
RETENTION OF RUST CONSULTING OMNI BANKRUPTCY
AS NOTICE AND CLAIMS AGENT TO THE DEBTOR**

Upon the application (the "Application") of the above-captioned debtor and

debtor in possession (the "Debtor"), for entry of an order (this "Order") authorizing the retention

of Rust Consulting Omni Bankruptcy, a division of Rust Consulting, Inc. ("Rust Omni") as

claims and noticing agent ("Claims and Noticing Agent") pursuant to 28 U.S.C. § 156(c), section

105(a) of the Bankruptcy Code, and Local Rule 2002-1(f) to, among other things, (a) distribute

required notices to parties in interest, (b) receive, maintain, docket, and otherwise administer the

proofs of claim filed in the Debtor's chapter 11 case, and (c) provide such other administrative

services – as required by the Debtor – that would fall within the purview of services to be

provided by the Clerk's office; all as more fully set forth in the Application; and upon the Wilson

Declaration; and upon the Osborne Declaration; and this Court having jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference

from the United States District Court for the District of Delaware, dated February 29, 2012; and

the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that

the Court may enter a final order consistent with Article III of the United States Constitution; and

the Court having found that venue of this proceeding and the Application in this district is proper

the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Application is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the Court having found that notice of and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    Notwithstanding the terms of the Engagement Agreement attached to the Application, the Application is approved solely as set forth in this Order.

2.    The Debtor is authorized to retain Rust Omni as Claims and Noticing Agent effective *nunc pro tunc* to the Petition Date under the terms of the Engagement Agreement, and Rust Omni is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in this chapter 11 case, and all related tasks, all as described in the Application.

3.    Rust Omni shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this chapter 11 case and is

2

authorized and directed to maintain the official claims register for the Debtor and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.     Rust Omni is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

5.     Rust Omni is authorized to take such other action to comply with all duties set forth in the Application.

6.     The Debtor is authorized to compensate Rust Omni in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Rust Omni and the rates charged for each, and to reimburse Rust Omni for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Rust Omni to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.     Rust Omni shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtor, the office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party in interest who specifically requests service of the monthly invoices.

8.     The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; provided, however, that the parties may seek resolution of the matter from this Court if resolution is not achieved.

3

9.    Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Rust Omni under this Order shall be an administrative expense of the Debtor's estate.

10.    Rust Omni may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, Rust Omni may hold its retainer under the Engagement Agreement during the chapter 11 case as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.    In the event Rust Omni is unable to provide the services set out in this Order, Rust Omni will immediately notify the Clerk and the Debtor's attorney and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's attorney.

12.    The Debtor may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Rust Omni but is not specifically authorized by this Order.

13.    The Debtor and Rust Omni are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

14.    Notwithstanding any term in the Engagement Agreement to the contrary, this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

4

15. Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

16. Rust Omni shall not cease providing claims processing services during the chapter 11 case for any reason, including nonpayment, without an order of this Court.

17. In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

18. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21. Notwithstanding anything to the contrary contained hereon, any payment to be made, or authorization contained hereunder, shall be subject to the requirements imposed on the Debtor pursuant to any DIP Facility as approved by the DIP Order and as set forth in the DIP Budget.

22. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2015

_____
United States Bankruptcy Judge

5

<u>**EXHIBIT B**</u>

**Osborne Declaration**

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIPCRICKET, INC., | ) | Case No. 15-10104 (___) |
| | ) | |
| Debtor. | ) | |

## DECLARATION OF BRIAN OSBORNE IN SUPPORT OF DEBTOR'S APPLICATION FOR APPOINTMENT OF RUST CONSULTING OMNI BANKRUPTCY AS CLAIMS AND NOTICING AGENT

I, Brian Osborne, under penalty of perjury, declare as follows:

1.      I am the President of Rust Consulting Omni Bankruptcy, a division of Rust Consulting, Inc. ("Rust Omni"), a data processing company specializing in the administration of large bankruptcy cases with offices located at 5955 DeSoto Avenue, Suite 100, Woodland Hills, CA. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the *Application for Appointment of Rust Omni Bankruptcy as Claims and Noticing Agent* (the "Application"), which was filed contemporaneously herewith by the above-captioned debtor (the "Debtor").[1]

3.      Rust Omni is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Rust Omni's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this

---

[1]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

size and complexity. Rust Omni's professionals are and/or have acted as debtor's counsel and/or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide, including: *In re Ultura (LA), Inc.*, Case No. 14-12382 (KG) (Bankr. D. Del. Oct. 23, 2014); *In re S.B. Restaurant Co.*, Case No. 14-13778 (Bankr. C.D. Cal. July 15, 2014); *In re HDOS Enterprises*, Case No. 14-12028 (Bankr. C.D. Cal. Mar. 19, 2014); *In re American Suzuki Motor Corporation*, Case No. 12-22808 (Bankr. C.D. Cal. Nov. 28, 2012); *In re Allied Sys. Holdings, Inc.*, Case No. 12-11654 (CSS) (Bankr D. Del. June 6, 2012); *In re Perkins & Marie Callender's Inc.*, Case No. 11-11795 (KG) (Bankr. D. Del. June 14, 2011); *In re Innkeepers USA Trust*, Case No. 10-13800 (KG) (Bankr. S.D.N.Y. July 19, 2010); *In re AGT Crunch Acquisition, LLC*, Case No. 09-12889 (Bankr. S.D.N.Y., May 6, 2009); *In re Pacific Energy Res., Ltd.*, Case No. 09-10785 (KJC) (Bankr. D. Del. Mar. 10, 2009); *In re Estate Fin. Mortgage Fund LLC*, Case No. 08-11535 (Bankr. C.D. Cal. Oct. 8, 2008); *In re Mervyn's Holdings, LLC, et al.*, Case No. 08-11586 (KG) (Banks. D. Del. July 29, 2008); *In re ComUnity Lending, Inc.*, Case No. 08- 50030 (Bankr. N.D. Cal. Jan. 22, 2008); *In re Refco Commodity Mgmt., Inc.*, Case No. 06-12436 (Bankr. S.D.N.Y. Nov. 15, 2006); *In re Owens Corning Sales, LLC*, Case No. 00-3837 (KG) (Bankr. D. Del. Oct. 5, 2000), and others.[2]

    4.    As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Rust Omni will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "Clerk"), the services specified in the Section 156(c) Application and the Engagement Agreement, and, at the Debtor's request, any related administrative, technical and support services

---

[2] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Declaration. Copies of these orders are available upon request to the Debtor's proposed counsel.

2

as specified in the Section 156(c) Application and the Engagement Agreement.  In performing

such services, Rust Omni will charge the Debtor the rates set forth in the Engagement Agreement,

which is attached as **Exhibit C** to the Application.

5.   Rust Omni represents, among other things, the following:

a.   Rust Omni is not a creditor of the Debtor;

b.   Rust Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

c.   by accepting employment in this chapter 11 case, Rust Omni waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

d.   in its capacity as the Claims and Noticing Agent in this chapter 11 case, Rust Omni will not be an agent of the United States and will not act on behalf of the United States;

e.   Rust Omni will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

f.   Rust Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.   in its capacity as Claims and Noticing Agent in this chapter 11 case, Rust Omni will not intentionally misrepresent any fact to any person;

h.   Rust Omni shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

i.   Rust Omni will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.   none of the services provided by Rust Omni as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

3

6.      Although the Debtor does not propose to retain Rust Omni under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in this chapter 11 case. The list of Potential Parties in Interest was provided by Debtor and included the names of the Debtor, the Debtor's lenders, the Debtor's current and former officers and directors, and the Debtor's proposed restructuring and other related professionals. The results of the conflict check were compiled and reviewed by Rust Omni professionals under my supervision. At this time, Rust Omni is not aware of any relationship that would present a disqualifying conflict of interest. Should Rust Omni discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Rust Omni will use reasonable efforts to file promptly a supplemental declaration.

7.      To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither Rust Omni nor any of its professionals, has any materially adverse connection to the Debtor, its creditors, or other relevant parties. Rust Omni may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which Rust Omni serves or has served in a neutral capacity as Claims and Noticing Agent and/or Administrative Advisor for another chapter 11 debtor.

8.      Rust Omni has and will continue to represent clients in matters unrelated to this chapter 11 case. In addition, Rust Omni has and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest

that may be involved in the Debtor's chapter 11 case in matters unrelated to this case. Rust Omni may also provide professional services to entities or persons that may be creditors or parties in interest in this chapter 11 case, which services do not directly relate to, or have any direct connection with, this chapter 11 case or the Debtor.

9.      Rust Omni and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms, and financial advisors. Such firms engaged by Rust Omni or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest. All engagements where such firms represent Rust Omni or its personnel in their individual capacities are unrelated to this chapter 11 case.

10.      To the best of my knowledge, neither Rust Omni nor any of its partners or employees represents any interest materially adverse to the Debtor's estate with respect to any matter upon which Rust Omni is to be engaged. Based on the foregoing, I believe that Rust Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 20th day of January, 2015 at Woodland Hills, CA

Brian Osborne

## EXHIBIT C

**Engagement Agreement**



January 12, 2015

<u>**VIA EMAIL**</u>

Todd Wilson
Chief Executive Officer
Hipcricket, Inc.
110 110th Avenue NE, Suite 410
Bellevue, WA 98004

Re:    **Rust Consulting Omni Bankruptcy
        <u>Retention letter</u>**

Dear Mr. Wilson:

This letter (the "Agreement") will acknowledge that you have requested Rust Consulting Omni Bankruptcy ("Rust Omni") to provide services to the Hipcricket, Inc. (the "Debtor") in connection with the Debtor's potential chapter 11 filing (the "Chapter 11 Case"). Rust Omni will make itself available to the Debtor, as requested, for the purposes of assisting the Debtor with case administration matters including preparation and management of the creditor matrix, preparation of schedules of assets and liabilities and statement of financial affairs, noticing, claims management, an informational website, 800# and any other services as may be requested by the Debtors.

The services to be rendered by Rust Omni will be billed at discounted hourly rates and will range from $20.00 to $125.00 per hour, as per the attached rate sheet. Rates are adjusted annually on January 2nd of each year, and are subject to increases not to exceed ten (10%) percent per annum. Increases greater than ten (10%) percent per annum will be discussed with you, and be subject to your prior approval, before becoming effective.

For this engagement Rust Omni shall require a general retainer of $10,000. Rust Omni shall be compensated on a monthly basis for those services performed by Rust Omni during the preceding calendar month. Invoices are payable upon submission.

Each of Rust Omni and the Debtor, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided,

Todd Wilson
January 12, 2015
Page 2

however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

The parties understand that the software programs and other materials furnished by Rust Omni pursuant to this Agreement and/or developed during the course of this Agreement by Rust Omni are the sole property of Rust Omni. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Debtor agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement. The Debtor further agrees that any ideas, concepts, know-how or techniques relating to data processing or Rust Omni's performance of its services developed during the course of its Agreement by Rust Omni shall be the exclusive property of Rust Omni. Upon Debtor's request at any time or times while this Agreement is in effect, Rust Omni shall immediately deliver to the Debtor and/or the Debtor's retained professionals, at the Debtor's expense, any or all of the non-proprietary data and records held by Rust Omni pursuant to this Agreement, in the form requested by the Debtor.

This Agreement is terminable at will by the parties hereto upon thirty (30) days written notice. In the event that this Agreement is terminated, regardless of the reason for such termination, Rust Omni shall cooperate with the Debtor to maintain an orderly transfer of all records, data and information and record keeping functions, and shall provide all necessary staff, services and assistance required for an orderly transfer. The Debtor agrees to pay for such services in accordance with Rust Omni's then existing prices for such services.

Todd Wilson
January 12, 2015
Page 3


    Please acknowledge the above by signing and returning a copy of this letter.
Should you have any questions regarding the above, please do not hesitate to call me.

                                    Sincerely,

                                    Brian Osborne

Enc.
cc:    Eric Schwarz


                                    Hipcricket, Inc.


Date:  1/12/15                      By: Todd E. Wilson
                                        Todd Wilson,
                                        Chief Executive Officer



# Rate Sheet
**WWW.OMNIMGT.COM**

## ▲ Hourly Rates for Standard and Custom Services

| | RATE/COST |
|---|---|
| Clerical Support | $20.00 per hour |
| Project Specialists | $45.00 per hour |
| Project Supervisors | $65.00 per hour |
| Consultants | $80.00 per hour |
| Technology/Programming | $90.00 per hour |
| Senior Consultants | $125.00 per hour |

## ▲ Printing and Noticing Services

| | |
|---|---|
| Copy | $.08 per image |
| Document folding and insertion | No Charge |
| Labels/Envelope printing | No Charge |
| E-mail noticing | Waived |
| Certified email | Quote upon request |
| Facsimile noticing | $.10/image |
| Postage | At cost *(Advance payment required for postage charges over $10,000)* |
| Envelopes | Varies by size |

## ▲ Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

## ▲ Claims Management

| | |
|---|---|
| Inputting proofs of claim | Hourly rates (No per claim charges) |
| Scanning | $.10/image |
| Remote Internet access for claims management | |
|     Setup | No charge |
|     Access | No Charge |

## ▲ Creditor Database

| | |
|---|---|
| Data storage | Waived |
| Per image storage | No charge |

## ▲ Informational Website

| | |
|---|---|
| Creation, configuration, and initial setup | No charge |
| Data entry/information updates | $45.00 per hour |
| Programming and customization | $90.00 per hour |
| Debtor website hosting | No charge |
| Committee website hosting | No charge |
| Shareholder website hosting | No charge |
| Scanning | $.10/image |

## ▲ Virtual Data Rooms

Quote upon request



# Rate Sheet

**WWW.OMNIMGT.COM**

### ▲ Call Centers / Dedicated Line

| | |
|---|---|
| | No charge |
| Creation, configuration and initial setup | $5.50 per month |
| Hosting fee | $.0825 per minute |
| Usage | $45.00 per hour |
| Service rates (actual talk and log-entry time) | |

### ▲ Case Docket / Claims Register

No charge

### ▲ Solicitation and Tabulation

| | |
|---|---|
| | Quoted prior to printing |
| Plan and disclosure statement mailings | Standard hourly rates apply |
| Ballot tabulation | |

### ▲ Public Debt and Equities Securities and/Rights Offerings Services

| | |
|---|---|
| | Standard hourly rates apply |
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | |

### ▲ Schedules / SoFA

| | |
|---|---|
| Preparation and updating of schedules and SoFAs | $20.00 - $125.00 per hour |

### ▲ Pre-Petition Consulting Services

| | |
|---|---|
| (*e.g.*, preparation of cash flow, analysis of cash management system, evaluation of insurance coverage, assist with payroll, assist procurement and distribution of cashiers checks) | Standard hourly rates apply |

### ▲ UST Reporting Compliance

| | |
|---|---|
| (*e.g.*, assist debtors to meet satisfy jurisdictional requirements, preparation of monthly operating and post-confirmation reports) | Standard hourly rates apply |

### ▲ Liquidating / Disbursing Agent

| | |
|---|---|
| (*e.g.*, comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations) | Standard hourly rates apply |

### ▲ Miscellaneous

| | |
|---|---|
| | At cost |
| Telephone charges | At cost |
| Delivery | $40.00 per copy |
| Archival DVD/CD-Rom | |

### ▲ Real-Time Reports



# Rate Sheet

**WWW.OMNIMGT.COM**

| | |
|---|---|
| Claims dashboard | No charge |
| Claim reports | $25.00 |
| Solicitation dashboard | No charge |
| Tabulation dashboard | No charge |
| Solicitation reports | $25.00 |
| Service list manager | $0.05 per party, per generated list |



# Statement

5955 DESOTO AVENUE, SUITE 100
WOODLAND HILLS, CA  91367
P  818.906.8300   I   F  818.783.2737

DATE:                          12/23/14

MATTER #:                          4419

TO:  Todd Wilson
     Hipcricket, Inc.
     110 110th Avenue NE, Suite 410
     Bellevue, WA 98004

| PROJECT |
| --- |
| *Abbey Companies, LLC* |

INVOICES:

| Date | Invoice # | Amount | Payments | Balance |
| --- | --- | --- | --- | --- |
| Retainer | | 10,000.00 | | 10,000.00 |
| AMOUNT DUE | | | $ | 10,000.00 |

**Total Due**                          $          **10,000.00**

PAYMENT TERMS: NET DUE UPON RECEIPT

**WIRE INFORMATION**
ACCOUNT #: 8093434387
ACCOUNT NAME: Rust Consulting, Inc.
FBO: Omni Management Group
ABA/ROUTING # WIRE or ACH: 111014325
BANK: BANK OF TEXAS, DALLAS, TX 75225
BANK CONTACT: MAYRA LANDEROS  214.987.8817
REFERENCE: INVOICE NUMBER

**PAYMENT MAILING ADDRESS**
PO BOX 142589
DRAWER #9094
IRVING, TX  75014-2589