# EXHIBIT B

## Sale Order

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIPCRICKET, INC.,[1] | ) | Case No. 15-10104 (LSS) |
| | ) | |
| Debtor. | ) | |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF CERTAIN ASSETS OF DEBTORS' OUTSIDE THE ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (III) AUTHORIZING THE ASSUMPTION, SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the **"Motion"**)[2] of the above-captioned debtor and debtor-in-possession (the **"Debtor"** or **"Seller"**) for an order, under Bankruptcy Code sections 105(a), 363, 365, 503 and 507, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the **"Local Rules"**), authorizing and approving, among other things, (a) the proposed sale of substantially all of the assets (the **"Acquired Assets"**) of the Debtor free and clear of all Liens, Claims, Encumbrances, and Interests other than the Assumed Liabilities; (b) entry into an Asset Purchase Agreement with SITO Mobile, Ltd., a Delaware corporation (collectively with any nominee or designee thereof, the **"Stalking Horse Purchaser"**), dated January 20, 2015, a copy of which is attached hereto as **Exhibit 1** (the **"Stalking Horse**

---

[1] The last four digits of the Debtor's tax identification number are 2076. The location of the Debtor's headquarters and the service address for the Debtor is 110 110th Avenue NE. Suite 410, Bellevue, WA 98004.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or in the Stalking Horse Purchase Agreement, as applicable.

**Purchase Agreement"**); (c) assumption and assignment of those contracts of the Debtor listed on Schedule 2.5(a) of the Stalking Horse Purchase Agreement (the "**Assumed Contracts**") and assignment of the Assumed Contracts to the Stalking Horse Purchaser; and (d) other related relief, and the Court having entered an order approving the bid procedures (the "**Bid Procedures**") and granting related relief on _____, 2015 [Docket No. ____] (the "**Bid Procedures Order**"); an Auction having been conducted pursuant to the terms of the Bid Procedures Order on _____, 2015, the Debtor having identified the bid by the Stalking Horse Purchaser made at the Auction as the highest or otherwise best bid for the Acquired Assets, and the Court having conducted a hearing on the Motion commencing on, _____, 2015 (the "**Sale Hearing**") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having (a) reviewed and considered the Motion, all relief related thereto, the objections thereto and statements of counsel and the evidence presented in support of the relief requested by the Debtor in the Motion at the Sale Hearing and (b) found that, after an extensive marketing process by the Debtor, the Stalking Horse Purchaser has submitted the highest or otherwise best bid for the Acquired Assets; and adequate and sufficient notice of the Bid Procedures, the Stalking Horse Purchase Agreement, and all transactions contemplated thereunder and in this Sale Order were given in the manner directed by the Court in the Bid Procedures Order; and reasonable and adequate notice of the Motion having been provided to all persons required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and jurisdiction existing for the Court to consider the Motion; and after due deliberation thereon; and upon the arguments and statements in support of the Motion presented at the hearing before the Court; and

it appearing that the relief requested in the Motion is in the best interests of the Debtor, their

estates, creditors, and other parties in interest; and it further appearing that the legal and factual

bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted

herein; and after due deliberation thereon; and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[3]

A.      **Jurisdiction and Venue**.  This Court has jurisdiction to consider this Motion

under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue

of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.      **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion

are Bankruptcy Code sections 105(a), 363, 365, 503 and 507, Bankruptcy Rules 2002, 6004 and

6006, 9007, 9008 and 9014, and Local Rule 6004-1.

C.      **Final Order.**  This Sale Order constitutes a final order within the meaning of 28

U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent

necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure,

as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just

reason for delay in the implementation of this Sale Order, and expressly directs entry of

judgment as set forth herein.

D.      **Notice**.  Actual written notice of the Motion and the relief requested therein

(including the assumption and assignment of the Assumed Contracts to the Stalking Horse

Purchaser or its designee and any Cure Amounts related thereto) was provided to the following

parties (the "**Notice Parties**"): (a) the Office of the United States Trustee for the District of

Delaware; (b) all taxing authorities having jurisdiction over any of the assets subject to the sale,

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.  *See* Bankruptcy Rule 7052.

3

including the Internal Revenue Service; (c) the state/local environmental agencies in the jurisdictions where the Debtor own or lease real property; (d) all parties that have requested special notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of the Bid Procedures Order; (e) all persons or entities known to the Debtor that have or have asserted a lien on, or security interest in, all or any portion of the Acquired Assets; (f) all Contract Parties; (g) counsel to the Stalking Horse Purchaser; (h) all Attorneys General for the states in which the Debtor conduct business; (i) all state, local or federal agencies having jurisdiction over any aspect of the Debtor's business operations; (j) all potential bidders previously identified or otherwise known to the Debtor; and (k) all known creditors of the Debtor. The Sale Notice was also published in the national edition of the USA Today.

E.    Notice of the Sale, the Motion, the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing objections to the Motion (the "**Sale Notice**") was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, the Auction and the Sale Hearing.

F.    As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, Stalking Horse Purchase Agreement, Sale Hearing, Sale and transactions contemplated thereby, has been provided in accordance with the Bid Procedures Order, Bankruptcy Code sections 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008. The Debtor has complied with all obligations to provide notice of the Motion as required by the Bid Procedures Order. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, Stalking Horse Purchase Agreement, Auction or Sale Hearing is or shall be required.

4

The disclosures made by the Debtor concerning the Motion, the Stalking Horse Purchase Agreement, the Auction and Sale Hearing were good, complete, and adequate.

G.     In accordance with the Bid Procedures Order, the Debtor served a notice ("**Cure Notice**") of the potential assumption and assignment of the Assumed Contracts which Cure Notice identifies all defaults and actual pecuniary loss to the non-debtor party resulting from such defaults including, but not limited to, all claims, demands, charges, rights to refunds and monetary and non-monetary obligations that the non-debtor parties can assert under the Assumed Contracts whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to the Assumed Contracts (the foregoing amounts as stated in the Cure Notice, collectively referred to as the "**Cure Amounts**") upon each non-debtor counterparty to an Assumed Contract.   The service and provision of the Cure Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Assumed Contracts or establishing a Cure Amount for the respective Assumed Contract. Non-debtor counterparties to the Assumed Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contract and the Cure Amount set forth in the Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-debtor counterparty from accepting performance by, or rendering performance to, Buyer for purposes of section 365(c)(1) of the Bankruptcy Code). The deadline to file an objection to the stated Cure Amounts (a "**Cure Objection**") has expired and to the extent any such party timely filed a Cure Objection, all such Cure Objections have been resolved, withdrawn, overruled, or continued to a

later hearing by agreement of the parties. To the extent that any such party did not timely file a Cure Objection by 5:00 p.m. (Eastern Time) on _____, 2015 (the "**Cure Objection Deadline**"), such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract and (ii) the proposed Cure Cost, if any, set forth on the Cure Notice.

       H.    **Corporate Authority**. (i) The Debtor has full corporate power and authority to execute the Stalking Horse Purchase Agreement and all other documents contemplated thereby and the Debtor's sale of the Acquired Assets has been duly and validly authorized by all necessary corporate action, (ii) the Debtor has all of the corporate power and authority necessary to consummate the transactions contemplated by the Stalking Horse Purchase Agreement, (iii) the Debtor has taken all corporate action necessary to authorize and approve the Stalking Horse Purchase Agreement and the consummation of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly provided for in the Stalking Horse Purchase Agreement, are required for the Debtor to consummate such transactions.

       I.    The Stalking Horse Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtor nor the Stalking Horse Purchaser is entering into the transactions contemplated by the Stalking Horse Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

       J.    The Debtor are the sole and lawful owner of the Acquired Assets. Subject to Bankruptcy Code sections 363(f) and 365(a), the transfer of each of the Acquired Assets to the Stalking Horse Purchaser, in accordance with the Stalking Horse Purchase Agreement will be, as of the Closing Date (as defined in the Stalking Horse Purchase Agreement), a legal, valid, and

DOCS_LA:285323.2 36480/002

effective transfer of the Acquired Assets, which transfer vests or will vest the Stalking Horse Purchaser with all right, title, and interest of the Debtor to the Acquired Assets free and clear of all Liens, Encumbrances, Claims and Interests (as defined in the Stalking Horse Purchase Agreement) (collectively, "**Liens**"). Claims, as defined in the Asset Purchase Agreement shall include, but not be limited to, all debts arising under, relating to, or in connection with any act of the Debtor or claims liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement applicable law, equity or otherwise (including, without limitation, rights with respect to claims,  Liens, Claims, Encumbrances, and Interests (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtor's or the Stalking Horse Purchaser's interests in the Acquired Assets, or any similar rights, (ii) in respect of taxes owed by the Debtor for periods prior to the Closing Date, including, but not limited to, sales, income, use or any other type of tax; or (iii) in respect of restrictions, rights of first refusal, charges or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) relating to, accruing or arising any time prior to the Closing Date, with the exception of the Assumed Liabilities.

   K.    **Sale in Best Interests of the Debtor's Estates**.  Good and sufficient reasons for approval of the Stalking Horse Purchase Agreement and the transactions to be consummated in connection therewith (the "**Sale**") have been articulated, and the relief requested in the Motion is

7

in the best interests of the Debtor, their estates, their creditors and other parties in interest. The Debtor has demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to Bankruptcy Code section 363(b), outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Stalking Horse Purchaser is necessary and appropriate to maximize the value of the Debtor's estates and the Sale will provide the means for the Debtor to maximize creditor recoveries.

L.    The Sale must be approved and consummated promptly in order to preserve the viability of the Debtor's businesses as a going concern and to maximize the value of the Debtor's estates. Time is of the essence in consummating the Sale. Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

M.    The consummation of the Sale and the assumption and assignment of the Assumed Contracts are legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

N.    **Good Faith of Buyer and Seller**. The Stalking Horse Purchase Agreement was negotiated, proposed and entered into by the Debtor and the Stalking Horse Purchaser without collusion, in good faith and from arm's-length bargaining positions and is substantively and procedurally fair to all parties. The Stalking Horse Purchaser is not an "insider" of any of the Debtor, as that term is defined in Bankruptcy Code section 101(31). Neither any of the Debtor,

8

nor the Stalking Horse Purchaser has engaged in any conduct that would cause or permit the Stalking Horse Purchase Agreement to be avoided under Bankruptcy Code section 363(n). Specifically, the Stalking Horse Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders. The Stalking Horse Purchaser is purchasing the Acquired Assets, in accordance with the Stalking Horse Purchase Agreement, in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by such provision, and otherwise has proceeded in good faith in all respects in connection with the Debtor's chapter 11 cases. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bid Procedures Order and, among other things: (a) the Debtor and the Stalking Horse Purchaser complied with the provisions in the Bid Procedures Order; (b) the Stalking Horse Purchaser agreed to subject its bid to the competitive bid procedures set forth in the Bid Procedures Order; (c) the Stalking Horse Purchaser in no way induced or caused the chapter 11 filing by the Debtor; and (d) all payments to be made by the Stalking Horse Purchaser in connection with the Sale have been disclosed.

O.      **Highest or Otherwise Best Offer.**    The Debtor conducted the Auction in accordance with, and have otherwise complied in all material respects with, the Bid Procedures Order. The Auction established in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity was given to any interested party to make a higher or

9

otherwise better offer for the Acquired Assets. The Stalking Horse Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets and will provide a greater recovery for the Debtor's estates than would be provided by any other available alternative. The Debtor's determination that the Stalking Horse Purchase Agreement constitutes the highest and otherwise best offer for the Acquired Assets, is a valid and sound exercise of their fiduciary duty and constitutes a valid and sound exercise of the Debtor's business judgment.

P.    **Consideration**. The consideration provided by the Stalking Horse Purchaser pursuant to the Stalking Horse Purchase Agreement (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Acquired Assets, and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States any state, territory, possession or the District of Columbia. No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtor's estate than the Stalking Horse Purchaser. Approval of the Motion, the Stalking Horse Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtor, their estates, their creditors and other parties in interest.

Q.    **No Successor.** The transactions contemplated under the Stalking Horse Purchase Agreement do not amount to a consolidation, merger, or de facto merger of the Stalking Horse Purchaser and the Debtor and/or the Debtor's estates; there is not substantial continuity between the Stalking Horse Purchaser and the Debtor; there is no continuity of enterprise between the Debtor and the Stalking Horse Purchaser; the Stalking Horse Purchaser is not a mere continuation of the Debtor or their estates; and the Stalking Horse Purchaser is not a successor or

assignee of the Debtor or their estates for any purpose, including but not limited to under any federal, state or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat or unclaimed property laws, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine. Except for the Assumed Liabilities, the (i) transfer of the Acquired Assets to the Stalking Horse Purchaser and (ii) assumption and assignment to the Stalking Horse Purchaser of the Assumed Contracts, do not and will not subject the Stalking Horse Purchaser to any liability whatsoever with respect to the operation of the Debtor's business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

R.    **Free and Clear**.  The conditions of Bankruptcy Code section 363(f) have been satisfied in full; therefore, the Debtor may sell the Acquired Assets free and clear of any Lien, Claim, Encumbrance or Interest in the property, other than the Assumed Liabilities.

S.    The Stalking Horse Purchaser would not have entered into the Stalking Horse Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale to the Stalking Horse Purchaser and the assumption of any Assumed Liabilities by the Stalking Horse Purchaser were not free and clear of all Liens, Claims, Encumbrances or Interests other than the Assumed Liabilities. The Debtor may sell the Acquired Assets free and clear of

11

any Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever because in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each entity with a Lien, Claim, Encumbrance or Interest in the Acquired Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, Encumbrance or Interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of Liens, Claims, Encumbrances or Interests who did not object to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to Bankruptcy Code section 363(f)(2). All holders of Liens, Claims, Encumbrances or Interests are adequately protected by having their Liens, Claims, Encumbrances or Interests attach to the cash proceeds received by the Debtor that are ultimately attributable to the property against or in which such Liens, Claims, Encumbrances or Interests are asserted, subject to the terms of such Liens, Claims, Encumbrances or Interests with the same validity, force and effect, and in the same order of priority, which such Liens, Claims, Encumbrances or Interests now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtor or their estates, as applicable, may possess with respect thereto.

T.    **Cure/Adequate Assurance**. The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the Stalking Horse Purchase Agreement and is in the best interests of the Debtor and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor. Payment of the Cure Amounts shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and

12

365(f)(2)(A), and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A).    The Stalking Horse Purchaser's financial wherewithal to consummate the transactions contemplated by the Stalking Horse Purchase Agreement and the evidence presented at the Sale Hearing demonstrating the Stalking Horse Purchaser's ability to perform the obligations under the Assumed Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).

U.    Any objections to the assumption and assignment of any of the Assumed Contracts by the Stalking Horse Purchaser in accordance with the Stalking Horse Purchase Agreement are hereby overruled.  To the extent that any counterparty failed to object to the proposed Cure Amounts timely, such counterparty is deemed to have consented to such Cure Amounts and the assumption and assignment of its respective Assumed Contract(s) to the Stalking Horse Purchaser in accordance with the Stalking Horse Purchase Agreement.

V.    **Personally Identifiable Information**.  The Transaction may include the transfer of Personally Identifiable Information, as defined in Bankruptcy Code section 101(41A).  No Consumer Privacy Ombudsman need be appointed under Code section 363(b)(1) because the Stalking Horse Purchaser has agreed to adhere to any privacy policies applicable to the Debtor.

NOW, THEREFORE, IT IS ORDERED THAT:

1.    **Motion is Granted**.  The Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein.

DOCS_LA:285323.2 36480/002

2.  **Objections Overruled**.  Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or by representation by the Debtor in a separate pleading, and all reservations of rights included therein, if any, hereby are denied and overruled on the merits with prejudice.

3.  **Approval**.  The Stalking Horse Purchase Agreement, and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved in all respects.  Pursuant to Bankruptcy Code sections 363(b) and 363(f), the Debtor are hereby authorized to (a) execute the Stalking Horse Purchase Agreement, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Stalking Horse Purchase Agreement, provided that such additional documents do not materially change its terms adversely to the Debtor's estates; (b) consummate the Sale in accordance with the terms and conditions of the Stalking Horse Purchase Agreement and the instruments to the Stalking Horse Purchase Agreement contemplated thereby; and (c) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the Stalking Horse Purchase Agreement, including the assumption and assignment to the Stalking Horse Purchaser (in accordance with the Stalking Horse Purchase Agreement) of the Assumed Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Stalking Horse Purchase Agreement and the Sale.  The Stalking Horse Purchaser shall not be required to seek or obtain relief from the automatic stay under Bankruptcy Code section 362 to enforce any of its remedies under the Stalking Horse Purchase Agreement or any other Sale-related document.  The automatic stay imposed by

14

Bankruptcy Code section 362 is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order.

    4.    This Sale Order shall be binding in all respects upon the Debtor, their estates, all creditors of, and holders of equity interests in, the Debtor, any holders of Liens, Claims, Encumbrances or Interests or other interests in, against or on all or any portion of the Acquired Assets (whether known or unknown), the Stalking Horse Purchaser and all successors and assigns of the Stalking Horse Purchaser, the Acquired Assets and any trustees, if any, subsequently appointed in the Debtor's chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's cases.  This Sale Order and the Stalking Horse Purchase Agreement shall inure to the benefit of the Debtor, their estates and creditors, the Stalking Horse Purchaser and the respective successors and assigns of each of the foregoing.

    5.    **Transfer of Acquired Assets Free and Clear of Liens, Claims, Encumbrances or Interests**.  Pursuant to Bankruptcy Code sections 105(a), 363(b) and 363(f), the Debtor are authorized to transfer the Acquired Assets to the Stalking Horse Purchaser in accordance with the Stalking Horse Purchase Agreement and such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets and shall vest the Stalking Horse Purchaser with title in and to the Acquired Assets and, other than the Assumed Liabilities, the Stalking Horse Purchaser shall take title to and possession of the Acquired Assets free and clear of all Liens, Claims, Encumbrances, and Interests and other interests of any kind or nature whatsoever, including but not limited to successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, with all such Liens, Claims, Encumbrances, and Interests to attach to the cash proceeds received by the Debtor that are ultimately attributable to the property against or in which such Liens, Claims, Encumbrances or Interests  are asserted, subject to the

terms of such Liens, Claims, Encumbrances or Interests with the same validity, force and effect, and in the same order of priority, which such Liens, Claims, Encumbrances or Interests now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtor or their estates, as applicable, may possess with respect thereto.

6.     Unless otherwise expressly included in the definition of "Assumed Liabilities" in the Stalking Horse Purchase Agreement, the Stalking Horse Purchaser shall not be responsible for any Liens, Claims, Encumbrances or Interests  including in respect of the following: (a) any labor or employment agreements; (b) any mortgages, deeds of trust and security interests; (c) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtor; (d) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, (___) state discrimination laws, (___) state unemployment compensation laws or any other similar state laws, or (___) any other state or federal benefits or claims relating to any employment with the Debtor or any of its respective predecessors; (e) any bulk sales or similar law; (f) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended or any state or local tax laws; (g) any escheat or unclaimed property laws; (h) to the extent not included in the foregoing, any of the Excluded Liabilities under the Stalking Horse Purchase Agreement;  and (i) any theories of successor or transferee liability.

7.     All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Stalking Horse Purchaser in accordance with the Stalking Horse Purchase Agreement on the Closing Date.   On the Closing Date, each of the Debtor's creditors is

16

authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims, Encumbrances, and Interests or other interests in the Acquired Assets, if any, as such Liens, Claims, Encumbrances, and Interests may have been recorded or may otherwise exist.

8.     If any person or entity which has filed statements or other documents or agreements evidencing Liens or Encumbrances on, Claims against, or Interests in, all or any portion of the Acquired Assets (other than statements or documents with respect to the Assumed Liabilities) shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens, Encumbrances, Claims, Interests or other interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtor are hereby authorized, and the Stalking Horse Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

9.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer to the Stalking Horse Purchaser of the Debtor's interests in the Acquired Assets. This Sale Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims, Encumbrances, Interests or other interest of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date, other than the Assumed Liabilities, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected. This Sale Order shall be binding upon and govern the acts of all

17

persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse Purchase Agreement. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record except those assumed as Assumed Liabilities.

10. **Prohibition of Actions Against Buyer**. Except with respect to the Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the Stalking Horse Purchase Agreement, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims, Encumbrances or Interests or other interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Acquired Assets, the operation of the Debtor's businesses prior to the Closing Date or the transfer of the Acquired Assets to the Stalking Horse Purchaser in accordance with the Stalking Horse Purchase Agreement, hereby are forever barred, estopped and permanently enjoined from asserting against the Stalking Horse

18

Purchaser, its successors or assigns, its property or the Acquired Assets, such persons' or entities' Liens, Claims, Encumbrances or Interests in and to the Acquired Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Stalking Horse Purchaser, its successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Stalking Horse Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Lien, Claim, Encumbrance or Interest against the Stalking Horse Purchaser, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Stalking Horse Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

11.     To the greatest extent available under applicable law, the Stalking Horse Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Stalking Horse Purchaser as of the Closing Date.

12.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and

transfer the Acquired Assets to the Stalking Horse Purchaser in accordance with the terms of the Stalking Horse Purchase Agreement, and this Sale Order.

13.    The Stalking Horse Purchaser has given substantial consideration under the Stalking Horse Purchase Agreement for the benefit of the Debtor, their estates, and creditors. The consideration given by the Stalking Horse Purchaser shall constitute valid and valuable consideration for the releases of any potential Liens, Claims, Encumbrances or Interests pursuant to this Sale Order which releases shall be deemed to have been given in favor of the Stalking Horse Purchaser by all holders of Liens or Encumbrances against or Interests in, or Claims against any of the Debtor or any of the Acquired Assets, other than with respect to the Assumed Liabilities. The consideration provided by the Stalking Horse Purchaser for the Acquired Assets under the Stalking Horse Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

14.    Notwithstanding the foregoing, nothing herein shall prevent (i) the Debtor from pursuing an action against the Stalking Horse Purchaser arising under the Stalking Horse Purchase Agreement or the related documents, or (ii) any administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state and local officials from properly exercising their police and regulatory powers.

15.    **Assumption and Assignment of Contracts.**  The Debtor are hereby authorized, in accordance with Bankruptcy Code sections 105(a) and 365, to (a) assume and assign to the Stalking Horse Purchaser, in accordance with the Stalking Horse Purchase Agreement, effective upon the Closing Date, the Assumed Contracts free and clear of all Liens, Claims, Encumbrance and Interests and other interests of any kind or nature whatsoever (other than the Assumed Liabilities) and (b) execute and deliver to the Stalking Horse Purchaser such

20

documents or other instruments as the Stalking Horse Purchaser deems may be necessary to assign and transfer the Assumed Contracts, and the Assumed Liabilities to the Stalking Horse Purchaser in accordance with the Stalking Horse Purchase Agreement.

16.    With respect to the Assumed Contracts: (a) each Assumed Contract is an executory contract or unexpired lease under Bankruptcy Code section 365; (b) the Debtor may assume each of the Assumed Contracts in accordance with Bankruptcy Code section 365; (c) the Debtor may assign each Assumed Contract in accordance with Bankruptcy Code sections 363 and 365, and any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtor and assignment to the Stalking Horse Purchaser of each Assumed Contract, in accordance with the Stalking Horse Purchase Agreement have been satisfied; (e) the Assumed Contracts shall be transferred and assigned to, and following the Closing Date remain in full force and effect for the benefit of, the Stalking Horse Purchaser in accordance with the Stalking Horse Purchase Agreement, notwithstanding any provision in any such Assumed Contract (including those of the type described in Bankruptcy Code sections 365(b)(2) and (f)) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Bankruptcy Code section 365(k), the Debtor shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Stalking Horse Purchaser in accordance with the Stalking Horse Purchase Agreement; and (f) upon the Closing Date, in accordance with Bankruptcy Code

21

sections 363 and 365, the Stalking Horse Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract.

17.    All defaults or other obligations of the Debtor under the Assumed Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code section 365(b)(2)) shall be cured on the Closing Date or as soon thereafter as practicable by payment of the Cure Amounts. To the extent that any counterparty to an Assumed Contract did not object to its Cure Amount by the Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignment of its respective Assumed Contract(s) to the Stalking Horse Purchaser in accordance with the Stalking Horse Purchase Agreement.

18.    Unless otherwise represented by the Debtor in a separate pleading, in open court at the Sale Hearing, or pursuant to a contract or lease amendment entered into by the Debtor, the Stalking Horse Purchaser, and the appropriate contract or lessor counterparty (any such amendment being deemed approved by this Sale Order), the Cure Notice reflects the sole amounts necessary under Bankruptcy Code section 365(b) to cure all monetary defaults under the Assumed Contracts, and no other amounts are or shall be due in connection with the assumption by the Debtor and the assignment to the Stalking Horse Purchaser of the Assumed Contracts in accordance with the Stalking Horse Purchase Agreement.

19.    Upon the Debtor's assignment of the Assumed Contracts to the Stalking Horse Purchaser under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Amounts as set forth herein, no default shall exist under any Assumed Contract, and no counterparty to any Assumed Contract shall be permitted (a) to declare a default by the Stalking Horse Purchaser under such Assumed Contract or (b) otherwise take action

22

against the Stalking Horse Purchaser as a result of Debtor's financial condition, bankruptcy or failure to perform any of their obligations under the relevant Assumed Contract.  Each non-debtor party to an Assumed Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtor or the Stalking Horse Purchaser, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities or, against the Stalking Horse Purchaser, any counterclaim, defense, setoff, recoupment or any other Claim asserted or assertable against the Debtor; and (ii) imposing or charging against the Stalking Horse Purchaser any rent accelerations, assignment fees, increases or any other fees as a result of the Debtor's assumption and assignment to the Stalking Horse Purchaser of any Assumed Contract in accordance with the Stalking Horse Purchase Agreement. The validity of such assumption and assignment of each Assumed Contract shall not be affected by any dispute between the Debtor and any non-Debtor party to an Assumed Contract relating to such contract's respective Cure Amounts.

20.     Except as provided in the Stalking Horse Purchase Agreement or this Sale Order, after the Closing, the Debtor and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such Liens, Claims, Encumbrances, and Interests are forever barred and estopped from asserting such Claims against the Debtor, their successors or assigns, their property or their assets or estates.

21.     The failure of the Debtor or the Stalking Horse Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtor's and the Stalking Horse Purchaser's rights to enforce every term and condition of the Assumed Contracts.

DOCS_LA:285323.2 36480/002

22.     Notwithstanding anything herein to the contrary and subject to the Stalking Horse Purchase Agreement, the Stalking Horse Purchaser may remove any Contract from the list of Assumed Contracts (and thereby exclude such Contract from the definition of Assumed Contracts) pursuant to the procedures set forth in the Stalking Horse Purchase Agreement.

23.     **Good Faith**.    The transactions contemplated by the Stalking Horse Purchase Agreement are undertaken by the Stalking Horse Purchaser without collusion and in good faith, as that term is used in Bankruptcy Code section 363(m) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts) with the Stalking Horse Purchaser, unless such authorization is duly stayed pending such appeal. The Stalking Horse Purchaser is a good faith purchaser of the Acquired Assets, and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m).

24.     **Failure to Specify Provisions**.    The failure specifically to include any particular provisions of the Stalking Horse Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Stalking Horse Purchase Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Stalking Horse Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order. Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Sale Order shall control.

25.    **Non-material Modifications**.  The Stalking Horse Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estates.

26.    **Retention of Jurisdiction**.  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Stalking Horse Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtor to the Stalking Horse Purchaser in accordance with the Stalking Horse Purchase Agreement, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to  (a) interpret, implement and enforce the provisions of this Sale Order and the Stalking Horse Purchase Agreement;  (b) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale;  (c) protect the Stalking Horse Purchaser against any Liens, Claims, Encumbrances or Interests or other interests in the Debtor or the Acquired Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Assumed Contracts.

27.    **Amounts Payable by Debtor.**  Any amounts payable by any Debtor under the agreements or any of the documents delivered by any Debtor in connection with the Stalking Horse Purchase Agreement shall be paid in the manner provided in the Stalking Horse Purchase Agreement and the Bid Procedures Order, without further order of this Court, shall be allowed

25

administrative claims in an amount equal to such payments in accordance with Bankruptcy Code sections 503(b) and 507(a)(2), shall have the other protections provided in the Bid Procedures Order, and shall not be discharged, modified, or otherwise affected by any reorganization plan for the Debtor, except by an express agreement with the Stalking Horse Purchaser, its successors, or assigns.

28.    **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in the Debtor's cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the Stalking Horse Purchase Agreement or this Sale Order.

29.    **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Sale Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.  Time is of the essence in closing the transactions referenced herein, and the Debtor and the Stalking Horse Purchaser intend to close the Sale as soon as practicable.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

30.    **Calculation of Time.**  All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

31.    **Further Assurances**.  From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions

as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the Stalking Horse Purchase Agreement including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in the Stalking Horse Purchaser its right, title and interest in and to the Acquired Assets.


Dated: Wilmington, Delaware
_____ \_\_, 2015


                                                  _____

                                                  The Honorable Laurie Selber Silverstein
                                                  United States Bankruptcy Judge

# EXHIBIT 1

STALKING HORSE PURCHASE AGREEMENT

DOCS_LA:285323.2 36480/002

See Exhibit A To The Motion