# EXHIBIT A

**PerkinsCoie**

1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099

☎ +1.206.359.8000
📠 +1.206.359.9000
perkinscoie.com

December 16, 2014

Faith M. Wilson
FWilson@perkinscoie.com
D. +1.206.359.3237
F. +1.206.359.4237

Hipcricket, Inc.
Todd Wilson
Chief Executive Officer
110 110th Avenue NE
Bellevue, WA 98004

Re:   **Legal Representation**

Dear Todd:

Thank you for selecting Perkins Coie LLP ("Perkins Coie," "the Firm," "us" or "we") to represent Hipcricket, Inc. ("Hipcricket," "the Company," "you" or "your") as special corporate counsel in connection with Hipcricket's potential bankruptcy filing. In addition, we currently represent the Company and certain individuals pursuant to our engagement letter dated December 14, 2011 (the "2011 Engagement Letter"). Nothing in this letter modifies our representation with respect to the matters covered by the 2011 Engagement Letter.

A.   **Scope of Work**

Perkins Coie has agreed to represent Hipcricket as special corporate counsel in matters relating to the proposed sale of the Company's assets in connection with the Company's potential Chapter 11 bankruptcy filing (the "Restructuring"). Our representation will not include acting as general bankruptcy counsel for Hipcricket and the Company confirms that it has retained separate counsel for such purpose. Similarly, the Firm does not represent you personally, or Hipcricket's other officers, directors, shareholders, investors or other agents or affiliates or any guarantor of the Company's obligations with respect to the Restructuring. In light of the nature of the outstanding legal issues related to the Company, any person or group described above may need to obtain separate representation with respect to the Restructuring. If you have any questions regarding the scope of our representation, please do not hesitate to discuss it with us.

When the Company files its Chapter 11 petition ("Petition"), it will be required to follow the bankruptcy rules, other applicable law, and orders of appropriate courts. Our advice to the Company may often be designed to ensure compliance with bankruptcy rules and other applicable law. If in our judgment you elect to follow a course of action contrary to bankruptcy rules and other applicable law or our own professional standards despite our advice, you agree that we may withdraw from representing the Company. This agreement does not limit our right to seek withdrawal for lack of payment of fees or for any other proper reason.

Todd Wilson
December 16, 2014
Page 2

### B.    Fees & Retainer

The principal factors in determining our fees will be the time and effort devoted to the matter and the hourly rates of the lawyers and paralegals involved. I will have primary oversight for Perkins Coie's representation of Hipcricket, but we assign other firm lawyers and paralegals when necessary, beneficial or cost-effective and when desirable to meet the time constraints of the matter. My current hourly rate for this matter will be $550. Our hourly rates range from $890 per hour for our most experienced partners to $320 for our most junior associates and $260 to $365 for paralegals, depending on their experience levels. These rates will be effective for this matter through December 31, 2015, and thereafter will be adjusted at least annually, usually on January 1. Services performed after the effective date of the new rates will be charged at the new applicable rates. We expect to issue invoices for our fees and disbursements on this matter on a weekly or monthly basis as described below. Our invoices include detail that most of our clients find sufficient, but please let me know at any time if more detailed information is needed. Please also refer to the enclosed Information for Clients for specifics regarding fees, disbursements, billing, payment, and termination of our representation should payment not be made or other circumstances warrant.

After the Company files its Petition, our compensation is subject to procedures provided under the United States Bankruptcy Code and applicable rules. For example, we may apply funds received to actual payment of compensation only upon approval of the Court. The Court may periodically authorize compensation to the Firm. Notwithstanding this general practice, however, we will ask the Court to approve procedures for payment of fees and expenses on a monthly basis and our holding a minimum $50,000 retainer to ensure payment in full of all fees and expenses, and you have agreed to support that request. The amount approved by the Court is based on a variety of factors that may not limit fees to a strict hourly rate. The post-Petition invoices you receive may not reflect the exact amount of compensation that the Court will allow. If the Court determines, due to extraordinary services or results produced by the Firm, that compensation greater than a strict hourly rate should be allowed to the Firm, you consent to the payment of such a "bonus." Regardless of the Court approval process, we urge you to call promptly should you have any questions regarding any fee statements we forward to you, the nature and scope of representation or any other questions you may have regarding the attorney-client relationship. Frank, timely communication is essential. We retain the right to cease performing legal services and to terminate our representation of you for any reason consistent with ethical rules, including conflicts of interest or delinquency or nonpayment of legal fees and expenses. If it appears that the Company's bankruptcy estate will be unable to timely pay their professionals, you agree that we may withdraw from our representation. We are not agreeing at this time to continue to represent the Company as special corporate counsel post-Petition unless and until an order is entered by the bankruptcy court approving our employment by the Company upon terms satisfactory to the Firm in our sole discretion.

Todd Wilson
December 16, 2014
Page 3

We ask that you pay us a retainer of $60,000 upon execution of this letter, to secure payment of our bills for pre-Petition legal services on this matter. The wire transfer of the advance payment should be sent to my attention at Perkins Coie LLP Trust Account, US Bank, 1420 Fifth Avenue, Seattle, WA 98111-0720, Account Number 1535 9227 1909, ABA/Routing Number 125000105, Reference: Retainer for Hipcricket, Inc., 079228. This money will be put into a trust account, and we will automatically pay ourselves from this account as we issue weekly invoices for our pre-Petition legal services. We will notify you each time that the amount of the retainer has fallen, or upon invoicing of work in process and pending disbursements would fall, below $25,000. You will, by 5:00 p.m. (Pacific time) on the business day following the date of each such notice, replenish the retainer to a minimum balance of $50,000. We reserve the right to immediately stop work on this matter if you do not maintain this trust account with adequate funds, and you agree that we may withdraw from our representation. If our relationship concludes, we will return the excess funds from the retainer to you after payment of all charges.

The payment arrangements set forth herein only apply to Hipcricket's obligations to Perkins Coie for services performed on this matter after the date of this letter. Hipcricket remains liable to Perkins Coie for all amounts due to Perkins Coie for services performed and costs incurred prior to the date of this letter and/or under the 2011 Engagement Letter, including, without limitation, all amounts payable under the Promissory Note dated September 8, 2014.

## C.   Conflicts of Interest

Perkins Coie represents many other companies, individuals and government agencies ("clients"). During the time we are representing Hipcricket we may be asked to represent:

(1)   other present or future clients in transactions, litigation or other disputes directly adverse to Hipcricket that are not substantially related to our representation of Hipcricket; and/or

(2)   parties who are considered directly adverse parties in matters we handle for Hipcricket. Our work for these directly adverse parties would be in matters that are not substantially related to our work for Hipcricket.

We request Hipcricket's consent to allow Perkins Coie to undertake such future representations without the need to obtain any further or separate approval from Hipcricket, as long as those representations described in (1) and (2) above are not substantially related to work Perkins Coie has done, or is doing, for Hipcricket. Your signature below constitutes Hipcricket's consent to such representation(s). We agree not to use any proprietary or other confidential nonpublic information concerning Hipcricket acquired by us as a result of our representation of Hipcricket in connection with any litigation or other matter in which we represent a party directly adverse to Hipcricket.

Todd Wilson
December 16, 2014
Page 4

During our representation of Hipcricket, there may from time to time be issues that raise questions as to our duties under the rules of professional conduct that apply to lawyers. These might include, e.g., conflict of interest issues, and could even include issues raised because of a dispute between us and a client over the handling of a matter. Under normal circumstances when such issues arise we would seek the advice of our Professional Standards Counsel, Loss Prevention partners or Professional Standards Conflicts Attorneys who are experts in such matters. Historically, we have considered such consultations to be attorney-client privileged conversations between firm personnel and the counsel for the firm. In recent years, however, there have been judicial decisions indicating that under some circumstances such conversations involve a conflict of interest between the client and Perkins Coie and that our consultation with Perkins Coie's counsel may not be privileged, unless we either withdraw from the representation of the client or obtain the client's consent to consult with Perkins Coie's counsel.

We believe that it is in our clients' interests, as well as Perkins Coie's interest, that in the event legal ethics or related issues arise during a representation, we receive expert analysis of our obligations. Accordingly, as part of our agreement concerning our representation of Hipcricket, you agree that if we determine in our own discretion during the course of the representation that it is either necessary or appropriate to consult with our firm counsel (either Perkins Coie's internal counsel or, if we choose, outside counsel) we have your consent to do so and that our representation of you shall not, thereby, waive any attorney-client privilege that Perkins Coie may have to protect the confidentiality of our communications with counsel. The costs associated with such legal counsel will be paid by Perkins Coie.

### D.    Conclusion

This letter, along with the enclosed Information for Clients, confirms the terms and conditions on which Perkins Coie LLP will provide legal services to Hipcricket. Unless otherwise agreed in writing, the terms of this letter and the enclosed Information for Clients will also apply to any additional matters that we undertake at Hipcricket's request. If this letter correctly sets forth our understanding, please sign and date a copy of this letter and promptly return it to me. If you have any questions about this letter or generally about our services or bills, please call me at any time. We look forward to working with you and thank you for placing your confidence in Perkins Coie.

Sincerely,

*Faith M. Wilson*

Faith M. Wilson
Enclosure: Information for Clients

Todd Wilson
December 16, 2014
Page 5

ACCEPTED AND AGREED:

HIPCRICKET, INC.

By: *Todd E. Wilson* (signature)
Its: Chief Executive Officer
Date: 12-22-14

# Information for Clients

Perkins Coie LLP is pleased to serve you. The following information explains the terms that apply to our engagements (except to the extent that you have reached a different written understanding with us about particular terms) for legal services provided by Perkins Coie LLP. No changes or additions to these terms will be binding unless confirmed in writing sent by us or signed by us. We encourage you to discuss this information with our lawyers at the inception of a matter and whenever you have questions during the course of that matter. Section headings are for convenience of reference only and not intended to affect the interpretation of the provisions of such sections.

**Personnel.** We generally assign one lawyer primary responsibility for seeing that your requests for legal services are met, but additional lawyers may assist in rendering the most appropriate and efficient legal services. We attempt to assign personnel to each matter based on the nature and scope of the issues raised by the matter and our lawyers' experience and expertise.

**Basis for Fees.** We charge for legal services rendered by our firm at applicable hourly rates. Each attorney, paralegal, and other timekeeper records time at assigned billing rates. Because hourly rates vary among personnel, each statement typically reflects a composite of several hourly rates. Those rates are reviewed periodically and change at least annually (usually on January 1) based on economic factors and the changing experience levels of our personnel. Services performed after the effective date of the new rates will be charged at the new rates.

**Disbursements and Other Charges.** In the course of performing legal services for you, various services may be provided by third parties. Examples include messenger and courier charges, filing and recording fees, foreign agent fees, court reporters and transcript costs, expert and other witness fees, charges for outside consultants and research services, and travel expenses. You are responsible for these third-party charges, and we reserve the right to forward their invoices directly to you for payment. For administrative ease, however, we may advance payment to the third-party provider and include the charge on our invoice to you, with no markup for handling. We will retain and not allocate to clients relatively insignificant discounts we receive for prompt payment or volume usage. For patent, trademark and other matters that may involve significant third-party payments, you may be required to maintain a minimum balance in a trust account to fund such payments. You will be advised of any such requirements, and we will not be obligated to request or pay for third-party services not fully covered by such deposits.

We will also charge you for certain internal services we provide in connection with our legal services. As noted below, because we both invest in specialized equipment and commit to long-term contracts with computer research vendors (such as Westlaw), long-distance telephone carriers, and others, we achieve savings in exchange for guaranteed payment, usage or other obligations undertaken at our risk. This allows us to charge our clients for certain computer research services and most long-distance telephone calls at rates discounted below standard rates. However, the payments we receive from clients for these services may exceed our total payments to the vendors. This excess is used to partially offset the costs we incur for related equipment and personnel and the risks we assume in entering into these contracts.

We currently charge specific internal costs in the following manner:

    1. **Photocopying, Printing, and Facsimile.** In our U.S. offices, clients are charged ten cents per page for photocopying. These charges are higher in our non-U.S. offices. We do not charge for facsimiles sent or received.

    2. **Computer Research.** There is no extra charge to clients for our use of the firm's internal work product retrieval system. Clients are charged for computer-assisted research from outside services, other than many Westlaw Services, at the vendors' standard rates. For many services from Westlaw, our primary outside computer-research source, we are able to charge clients just 37% of Westlaw's standard rates as of 2012 because we committed to a long-term contract with monthly minimum payments. We may occasionally be able to pass along other discounted rates for computer-assisted research from outside sources when we can negotiate volume discounts.

3. **Telecommunications.** We do not charge for local calls or for any email communications. In the United States, where we have been able to install special equipment and negotiate volume discounts, we share our savings with clients by charging long-distance calls at 50% of the AT&T tariff for direct-dial long-distance calls, plus applicable taxes. In our non-U.S. offices, long-distance calls are charged at the carrier's tariff for such calls, plus applicable taxes. Credit card and cell phone calls necessitated by work on your matters are charged at our actual cost.

4. **Mail/Messengers.** In our larger offices, we may use firm messengers whenever appropriate to shorten delivery times and offer greater flexibility. Charges for such internal messengers are equal to or below rates charged by outside messengers for similar services. We do not charge for regular mail. Bulk mailings, packages, overnight deliveries, and special postal services are charged at our actual cost.

5. **Overtime.** Clients are charged for staff overtime, meals, and transportation only when (a) the client specifically requests after-hours effort or (b) the nature of the work necessitates overtime and such work could not have been done during normal work hours.

6. **Document Services and Database Hosting.** Certain matters, particularly large-scale litigation, may require optical character recognition ("OCR") services. We currently charge 5 cents per page for OCR. Clients may also require hosting and support of discovery databases. We currently charge $10/GB per month to host discovery databases on internal firm servers.

**Invoices and Payment.** We typically bill monthly, and payment is due upon receipt of the invoice. Payment of an invoice will reflect your agreement to the amount charged on that invoice, and you must bring any misbilling or other charge that you believe is inappropriate to our attention within 45 days of presentation of the invoice. To the fullest extent permitted by law, you agree that we have an attorneys' lien (including, without limitation, in the results of our services) to secure payment of the obligations owed us and that we may take steps to inform others of any attorneys' lien rights we might have. For accounts not paid within 30 days of the invoice date, we add a late payment charge of 1% per month (or such lower rate as required by applicable law) on unpaid balances from the invoice date. Unless otherwise agreed upon, we may apply payments first to our own attorneys' fees and costs of collection, second to our late charges, third to our invoiced fees, and finally to our invoiced disbursement charges. Our election not to exercise any rights or not to require punctual performance of each provision of this agreement will not be construed as a waiver or relinquishment of our rights. We do not and cannot guarantee the outcome of any matter or particular results, and payment of our fees and disbursements is not conditioned on any particular outcome. If we are required to bring an action or proceeding to collect fees or disbursements due us, we will also be entitled to recover certain fees and costs. These include, but are not limited to, our own outside attorneys' fees, expert witness fees, other costs of collection billed to us, and the value of legal services Perkins Coie's own attorneys perform in analyzing or prosecuting a collection action if such circumstances arise on your account. You consent to venue and jurisdiction wherever we have an office with attorneys who worked on your behalf. Also, if we are required to testify, produce documents, or respond to other requests in connection with litigation or other proceedings commenced by third parties that relate to our representation of you, you will pay us our reasonable fees and costs incurred in connection with such activities. For matters handled by our New York lawyers, the client may have a right to arbitrate fee disputes under Part 137 of the Rules of the Chief Administrator of the New York Supreme Court, Appellate Division.

**Insurance Coverage.** You may have insurance policies relating to a matter for which you engage us that might cover, among other things, reimbursement of attorneys' fees and costs. If coverage is potentially available, including coverage for our fees and costs, your appropriate insurance company must be notified as soon as possible. We can advise you on the availability of insurance coverage only if you expressly and timely request that we do so, we do not have a conflict of interest, and we agree to undertake such additional work. You would then need to furnish us copies of all relevant insurance policies and related documents. Regardless whether, when, and to what the extent insurance coverage might be available to reimburse all or a portion of our fees and costs, you nevertheless remain primarily obligated for amounts owed us, including any late charges that accrue during any delay in payment by others.

**Advance Payments and Estimates.** We may require advance payments before working or continuing work on a matter. Of course, the amount of work we are called upon to perform may subsequently exceed our prior expectations. Regardless of whether you make an advance payment, you agree that any budget, estimate, or similar range for potential charges is nothing more than a forecast based on then-current assumptions, and any such forecast may be high or low due to changed or unforeseen circumstances. We reserve the right, as a condition of providing additional services, to require an increase in any advance payment.

**Legal Service Provider.** We provide strictly legal services to you in connection with this agreement. You are not relying on us for any services other than legal services, and we are specifically not providing any business, investment, insurance, or accounting advice or any investigation of the character or credit of persons with whom you may be dealing.

**Identity of Client.** You confirm that we are being engaged by you and not any of your subsidiaries, affiliates, equityholders, employees, members of your family, or other persons (collectively, "Affiliates"), unless we separately and explicitly undertake such representation. You also expressly confirm that, as our representation is limited to you and does not include acting as counsel for your Affiliates, we may represent other clients adverse to your Affiliates without disclosing those matters to you or obtaining your consent. If in the future we agreed to expand our representation of you to include one or more of your Affiliates, you, and Affiliate(s), agree that the terms, conditions and consents contained in our engagement letter with you will apply to such representation(s).

**Conflicts of Interest.** We have performed a search of our other clients to determine whether representing you might create a potential conflict of interest with any other clients. That check was done using your name and any other names you gave us. Please inform us immediately if you use other names or have affiliated companies that we should enter into our conflicts system.

**Cooperation/Reliance on Accurate Information.** To enable us to represent you effectively, you will cooperate fully with us in your matter(s). You and your agents will fully and accurately disclose to us all facts and documents that may be relevant to a matter we undertake or which we may otherwise request. This information will form the basis of our legal advice.

**Email Communication Disclaimer.** Many of our legal professionals receive hundreds of email messages per day (in addition to spam). Although email is an efficient method for many communications, it can also be delayed in transit or otherwise missed (e.g., blocked by our anti-spam software). You cannot assume that each email message copied or sent to one of our legal professionals was actually opened and read by him or her unless you receive a non-automated reply message indicating that he or she read the substance of your message.

**Termination of Services.** We retain the right to cease performing legal services and to terminate our legal representation for any reason consistent with ethical rules, including conflicts of interest or your failure to pay our legal fees and expenses when due. Our representation in any matter will also cease on completion of our work on that matter unless you ask us to perform additional work that we agree to undertake. Performing additional services for you on the same or any other matter is subject to these terms and conditions, our mutual concurrence and clearance of conflicts, if any. We are unable to assure you that matters for other clients will not conflict us out of additional matters you might later ask us to undertake. On completion of a matter, we may close our files and, absent a specific written undertaking to do so, will not thereafter be obligated to docket milestones, make additional or continuation filings, pursue appeals, take other steps on your behalf on the matter, or monitor or advise you with respect to changes in the law or circumstances that might bear upon or adversely affect the completed matter. If you wish to have us return material from your files after the conclusion of a particular matter, we will provide you such material at your request and expense. We will have no obligation to retain client files more than one year after the conclusion of a particular matter or our representation. Our representation of you will be deemed concluded at the time that we have rendered our final bill for services on the matter described in our engagement letter or any such additional matters that are clearly undertaken by us. Whether we will undertake any further matters and form an attorney-client relationship again will depend upon your request, our performance of a conflicts check and our expression to you of our willingness to accept any further matters.

91004-2112/LEGAL124517856.1
Perkins Coie LLP

**Alliances/Other Counsel.** Many of our clients also have international or other legal needs we cannot fulfill. This causes us from time to time to establish ongoing working relationships or strategic alliances with law firms in other jurisdictions. While our close relationships with our legal colleagues at these firms have helped us provide coordinated representation for many of our clients, these firms (and other firms we may recommend to our clients) are separate from and independent of Perkins Coie. We do not share personnel or fees, do not have common operations beyond occasional joint seminars and presentations, and must check any other firm's conflicts of interest before that firm's lawyers may jointly represent any of our clients. Under rules in certain jurisdictions where we practice, we must advise you that you may consult independent counsel to advise you regarding these documents governing our relationship, and we encourage you to do so if you like. Also, you retain the right to consult with independent counsel at any time while we represent you. However, we are not responsible for any advice an independent counsel may give you, and such consultation will be entirely at your expense.

**Questions.** We endeavor to deliver legal services effectively and efficiently and to render accurate and understandable billings. Please direct any questions about services or billing practices to your client service lawyer. Questions regarding the billing or payment status of your account may also be directed to the Client Accounting Department in our Seattle office at 1-800-261-3143 (206-359-3143 in the Seattle area).