# EXHIBIT 1

### Engagement Letter

**CANACCORD** Genuity
99 High Street
Boston, MA 02110
United States of America

T: 617.371.3900
F: 617.371.3798
www.canaccordgenuity.com

*CONFIDENTIAL*

January 20, 2014

Hipcricket, Inc
110 110th Avenue NE
Bellevue, WA 98004

Attention:    Mr. Todd Wilson
              Chairman

Ladies & Gentlemen:

This letter agreement (the "Agreement") will confirm our understanding of the terms and conditions under which Canaccord Genuity Inc. (together with its affiliates, control persons, directors, officers, employees, and agents, "Canaccord Genuity") is engaged by Hipcricket, Inc. (together with its subsidiaries and affiliates, the "Company") as its exclusive financial advisor in connection with the Company's review of its strategic and financial alternatives, including one or several possible business combinations, through purchase, sale, merger, joint venture or otherwise and whether in one or more transactions through the purchase of an organization's equity, debt securities or assets, or by means of a merger, consolidation, reorganization, spin-off, tender offer, exchange offer or any other transaction of a like nature involving all or at least 40% of the assets or equity interests of the Company, regardless of form (a "Transaction") with any other person (individually, and together with each such person's respective subsidiaries and affiliates, the "Strategic Partner"); provided, however, that a Transaction shall not include the licensing of products or a collaboration agreement to develop products or other similar commercial contracts entered into in the ordinary course of business. A Transaction in which the Company issues capital stock of the Company representing less than 50% of the Company's equity interests, or in which the Company issues debt securities (convertible into equity or otherwise), for cash, to one or more investors (individually, and together with their respective subsidiaries and affiliates, the "Investors") shall be referred to as a "Financing Transaction."

1. <u>Services</u>. As financial advisor, Canaccord Genuity will if appropriate and if requested:

    (a)    assist you in analyzing and evaluating the business, operations and financial position of the Company and its strategic alternatives;

    (b)    assist you in preparing descriptive materials regarding the Company for distribution and presentation to potential Strategic Partners and/or Investors;

    (c)    assist you in the preparation and implementation of a plan to have discussions with prospective Strategic Partners and/or Investors;

    (d)    assist you in identifying and screening interested prospective Strategic Partners and/or Investors;

    (e)    assist you in coordinating potential Strategic Partners' and/or Investors' due diligence investigations;

*CONFIDENTIAL*

Hipcricket, Inc.
January 20, 2014
Page 2 of 9

    (f)    assist you in evaluating proposals received from potential Strategic Partners and/or Investors;

    (g)    assist you in structuring and negotiating the financial aspects of any Transaction;

    (h)    be available at your request to meet with your Board of Directors to discuss any proposed Transaction and its financial implications; and

    (i)    render an opinion as to the fairness from a financial point of view to Company or its stockholders, as appropriate, of the consideration to be received in a Transaction (the "Opinion").

If Canaccord Genuity is requested to render an Opinion, the nature and scope of our analysis and the form and substance of the Opinion will be such as Canaccord Genuity considers appropriate and will not address the underlying business decision to effect a Transaction. The Opinion may be included in any disclosure document required to be filed by the Company with the Securities and Exchange Commission with respect to a proposed Transaction, provided that it is reproduced in full, and that any description of or reference to Canaccord Genuity, and any summary of the Opinion in the disclosure document, is in a form reasonably acceptable to Canaccord Genuity. It is understood and agreed that the Opinion will be addressed to, and be prepared solely for the use and benefit of the Board, or a committee thereof, if applicable, and, except as set forth above or as required by law, may not be disclosed to any third party (other than the Company's legal counsel and other advisors with whom the Company works on the potential Transaction) or circulated or referred to publicly without the prior written consent of Canaccord Genuity.

The Company will furnish and will request potential Strategic Partners and/or Investors to furnish Canaccord Genuity such information as Canaccord Genuity reasonably requests in connection with the performance of its services hereunder (all such information so furnished is referred to herein as the "Information"). The Company agrees that Canaccord Genuity, in performing its services hereunder, will use and rely upon the Information without assuming any responsibility for independent investigation or verification thereof. Accordingly, Canaccord Genuity shall be entitled to assume and rely upon the accuracy and completeness of all such Information. Canaccord Genuity will assume that any forecasts and projections have been reasonably prepared and reflect the best currently available estimates and judgments of the management of the Company or the potential Strategic Partner or Investor, as the case may be, as to the matters covered thereby.

Canaccord Genuity agrees that any non-public information relating to the Company or any potential Strategic Partner and/or Investor received by Canaccord Genuity from or at the direction or request of the Company will be used by Canaccord Genuity solely for the purpose of performing its services hereunder and that Canaccord Genuity will maintain the confidentiality thereof except to the extent (a) such information is or becomes otherwise publicly available without breach of this Agreement; (b) disclosure thereof is required by law or requested by any governmental agency or body (including through a subpoena or other valid legal process); or (c) Canaccord Genuity discloses such information to a party that is bound by a confidentiality agreement acceptable to the Company. These confidentiality provisions will survive the termination and/or expiration of this Agreement.

2.    Fees. In consideration for its services hereunder, the Company shall pay Canaccord Genuity, by wire transfer of immediately available funds at the time due, the following fees:

*CONFIDENTIAL*

Hipcricket, Inc.
January 20, 2014
Page 3 of 9

(a) $75,000, payable upon signing of this Agreement (the "Retainer");

(b) $400,000, payable upon delivery to the Board of the Opinion (the "Opinion Fee");

(c) upon the closing of a Transaction other than a Financing Transaction, a "Success Fee" equal to 2.125% of Aggregate Consideration up to and including $75 million, plus 3.125% of Aggregate Consideration over $75 million;

(d) upon the closing of a Financing Transaction, a Success Fee equal to 6.0% of the gross proceeds received by the Company in such Financing Transaction, but not including proceeds from the exercise of any warrants issued in the Financing Transaction. Notwithstanding the above for up to $5 million of proceeds received by the Company from Investors listed in Annex B to this Agreement that does not close within 60 days of the closing of a subsequent Financing Transaction on substantially the same price and terms, the Success Fee will equal 3.0% of the gross proceeds received by the Company from such Investors listed in Annex B;

provided, that under no circumstances will the Success Fee from a Transaction other than a Financing Transaction be less than $1,250,000 (the "Minimum Fee"); and provided, further, that the Retainer and Opinion Fee paid pursuant to subsection 2(a) and (b) shall be credited against any Success Fee.

For purposes of this Agreement, "Aggregate Consideration" shall mean the cumulative value of the Transaction, representing the total value of the Company implied by the sum of all cash paid or payable and the fair market value of all property or securities transferred or transferable directly or indirectly, in connection with a Transaction, including (i) cash amounts paid or securities issued (or otherwise exchanged or transferred) to holders of shares of capital stock or of any warrants, options or stock appreciation rights, whether or not vested, or other securities convertible or exchangeable for any shares of capital stock; (ii) the total amount of indebtedness for borrowed money or similar non-trade liabilities or obligations (including pension liabilities, guarantees, capitalized leases, deferred compensation and the like) repaid, retired, extinguished or assumed in connection with a Transaction; (iii) the value of any dividends or other distributions to stockholders or affiliates, declared or paid after the date of this Agreement, other than normal recurring cash dividends in amounts not materially greater than currently paid; and (iv) amounts paid by the Company to repurchase any of its securities outstanding on the date hereof. In the case of an acquisition of substantially all of the Company's assets, Aggregate Consideration shall include the net value of any current assets not sold by the Company. Aggregate Consideration also shall include, in the case of a joint venture or similar collaborative undertaking, the total amount of cash and fair market value (on the date of closing) of all property contributed by third parties to the joint venture.

For purposes of calculating Aggregate Consideration: (i) in a Transaction involving the sale or transfer, directly or indirectly, of 50% or more of the outstanding common stock or other equity interest in, or assets of, the Company, Aggregate Consideration shall be calculated as if 100% of the outstanding common stock or other equity interest in, or assets of, the Company were sold or transferred for the same amount paid (and otherwise on the same terms) in such Transaction; (ii) the value of any security (as that term is defined in the Securities Act of 1933, as amended) issuable in connection with a Transaction will be determined, if a publicly-traded security, on the basis of the average of the closing prices for the 20 trading days prior to the closing, or, if the security is not freely tradable (or having no established public market) on the basis of the fair market value of such security at closing as mutually determined in good faith by Canaccord Genuity and the Company; and (iii) the value of any property transferred in connection with a Transaction will be mutually determined on the basis of the fair market value of such property at closing as determined in good faith by Canaccord Genuity and the Company.

*CONFIDENTIAL*

Hipcricket, Inc.
January 20, 2014
Page 4 of 9

Amounts paid into escrow in connection with a Transaction shall be included as part of Aggregate Consideration. Subject to the Minimum Fee which shall be due and payable at the closing of a Transaction other than a Financing Transaction in the event the consideration to be paid in a Transaction may be increased by payments related to future events (including, without limitation, earnout payments), the portion of the Success Fee relating to such contingent payments will be calculated and paid if and when such contingent payments are made.

The Company is not obligated or required to accept any offer to enter into a Transaction by any prospective Stategic Partner and/or Investor, and the Company may refuse, in its sole discretion, to enter into any Transaction and/or accept financing from any potential Investor without any liability to Canaccord Genuity.

If, in connection with a Transaction that is not completed, the Company receives a break-up fee, topping fee, liquidated damages or other termination fee or payment (including, without limitation, any judgment for damages or amount in settlement of any dispute as a result of the failure of such Transaction) (collectively, a "Termination Fee"), the Company will pay Canaccord Genuity a fee equal to the lesser of (i) 10% of such Termination Fee at the time such Termination Fee is received by the Company and (ii) the Minimum Fee.

3. Expenses. In addition to any fees that may be payable to Canaccord Genuity hereunder and regardless of whether any Transaction is proposed or closed, the Company hereby agrees, from time to time upon request, to reimburse Canaccord Genuity for all of its reasonable, documented out-of-pocket expenses arising out of the engagement hereunder (including travel and related expenses, the costs of document preparation, production and distribution (such as printing and binding, and photocopies), and third party research and database services, and the reasonable fees and disbursements of independent counsel retained by Canaccord Genuity); provided, however, that unless the Company otherwise consents in writing in advance, such consent not to be unreasonably withheld, and subject to the provisions of Annex A, such expenses shall not exceed $50,000 in the aggregate (the "Expense Cap"). Canaccord Genuity agrees to notify the Company once expenses exceed $25,000. The Expense Cap will not apply to the reasonable fees and disbursements of independent counsel retained by Canaccord Genuity. Canaccord Genuity expects to bill such expenses periodically with payment due within 30 days after a statement therefor.

4. Indemnification. In consideration of and as a condition precedent to Canaccord Genuity undertaking the engagement contemplated by this letter, the Company agrees to the indemnification provisions and other matters set forth in Annex A, which is incorporated by reference into this Agreement.

5. Termination of Engagement. This Agreement shall have a term of 12 months from the date of this Agreement set forth above, unless earlier terminated under this Section 5. Canaccord Genuity's engagement hereunder, and this Agreement, may be terminated by either party at any time for any reason, upon 10 day's prior written notice to the other party, and may be terminated by the Company immediately for cause. For purposes of this Agreement, cause is defined as the willful misconduct or gross negligence of Canaccord Genuity in the provision of the services hereunder. Upon termination by the Company for cause, Canaccord Genuity will only be entitled to previously incurred expenses, subject to the provisions of Section 3, above. Upon termination of the Agreement by the Company other than for cause, or upon expiration of the engagement, Canaccord Genuity will be entitled to its full fee under Section 2 hereof in the event that (i) at any time prior to the expiration of 12 months after such termination or expiration a Transaction is consummated with a Strategic Partner or Investor; or (ii) the Company enters into an agreement during the term of this Agreement or during such subsequent 12 month period contemplating a

*CONFIDENTIAL*

Hipcricket, Inc.
January 20, 2014
Page 5 of 9

Transaction with a Strategic Partner or Investor and such Transaction is ultimately consummated; provided, however, once the Company consummates one or more Financing Transactions with aggregate gross proceeds received by the Company of at least $10,000,000, then with respect to a Financing Transaction, the 12 month period referred to above shall be deemd to be six months for all purposes.

6. Reliance on Others. Canaccord Genuity does not provide accounting, tax or legal advice. The Company confirms that it will rely on its own independent counsel and independent accountants for such advice.

7. No Rights in Shareholders, etc. Canaccord Genuity has been engaged only by the Company, and this engagement of Canaccord Genuity is not intended to confer rights upon any shareholder, partner or other owner of the Company or any other person not a party hereto. Unless otherwise expressly agreed, no one other than the Company is authorized to rely on any statements, advice, opinions or conduct by Canaccord Genuity. Any opinions or advice rendered by Canaccord Genuity to the Board or the Company's management in the course of this engagement are for the purpose of assisting the Board or the Company's management, as the case may be, in evaluating the Transaction contemplated hereby and such opinions or advice do not constitute a recommendation to any shareholder of the Company concerning action that such shareholder might or should take in connection with a Transaction. Canaccord Genuity's role herein is that of an independent contractor and nothing contained herein is intended to create or shall be construed as creating a fiduciary relationship between Canaccord Genuity and the Company or its security holders, employees or creditors.

8. Other Activities. Canaccord Genuity is a full service securities firm engaged, either directly or through its affiliates, in various activities, including securities trading, investment management, financing and brokerage activities. Canaccord Genuity may agree or arrange to provide any prospective Strategic Partner with, or otherwise assist them in retaining all or a portion of the financing they may require in connection with a proposed Transaction. In the ordinary course of its business, Canaccord Genuity and its affiliates may actively trade the securities (or related derivative securities) of the Company and other companies which may be the subject of the engagement contemplated by this letter for their own account and for the accounts of their customers and may at any time hold long and short positions in such securities. In addition, Canaccord Genuity has adopted policies and procedures designed to preserve the independence of its research analysts, whose views may differ from those of Canaccord Genuity's investment banking department.

9. Miscellaneous. Nothing in this Agreement is intended to obligate or commit Canaccord Genuity to provide any services other than as set forth above. This Agreement may be executed in counterparts, each of which shall be deemed an original, but which together shall be considered a single instrument. This Agreement (including Annex A and Annex B) constitutes the entire agreement between the parties hereto, and supersedes all prior agreements and understandings (both written and oral) of the parties hereto with respect to the subject matter hereof, and cannot be amended or otherwise modified except in writing executed by the parties hereto. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company and Canaccord Genuity. Canaccord Genuity may refer to the Transaction, after it is public knowledge, in traditional "tombstone" announcements or any of its other professional promotional materials. In connection therewith Canaccord Genuity may use the Company's corporate logo in such advertising or promotional materials (including electronic versions thereof). Canaccord Genuity shall provide the Company with a draft of any announcement that it proposes to place and shall make such revisions to the announcement as the Company may reasonably request.

**CONFIDENTIAL**

Hipcricket, Inc.
January 20, 2014
Page 6 of 9

If you are in agreement with the foregoing, please sign where indicated below and return to the undersigned, whereupon the Agreement shall become effective as of the date hereof.

Sincerely,

CANACCORD GENUITY INC.

By: _____
Andrew Pojani  *David I stock*
Managing Director

ACCEPTED AND AGREED:

HIPCRICKET, INC.

By: _____

Todd E. Wilson
Chairman

99999-6718/LEGAL.29067884.2

*CONFIDENTIAL*

Hipcricket, Inc.
January 20, 2014
Page 7 of 9

### *ANNEX A*

In the event that Canaccord Genuity Inc. or any of its affiliates ("Canaccord Genuity"), the respective shareholders, directors, officers, agents or employees of Canaccord Genuity, or any other person controlling Canaccord Genuity (collectively, together with Canaccord Genuity, "Indemnified Persons") becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person, including stockholders of Hipcricket, Inc. (the "Company"), in connection with or as a result of the engagement contemplated by the letter agreement to which this Annex A is attached (the "engagement"), the Company will reimburse such Indemnified Person for its legal and other expenses (including without limitation the reasonable out-of-pocket costs and expenses incurred in connection with investigating, preparing for and responding to third party subpoenas) incurred in connection therewith as such expenses are incurred; *provided, however,* that if it is finally determined by a court or arbitral tribunal in any such action, claim, suit, investigation or proceeding that any loss, claim damage or liability of Canaccord Genuity or any other Indemnified Person has resulted from the gross negligence or willful misconduct of Canaccord Genuity in performing the services that are the subject of the engagement, then Canaccord Genuity will repay such portion of reimbursed amounts that is attributable to expenses incurred in relation to the act or omission of Canaccord Genuity or any other Indemnified Person which is the subject of such determination. The Company will also indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages or liabilities (including actions or proceedings in respect thereof) (collectively, "Losses") related to or arising out of the engagement, except to the extent any such Losses are finally determined by a court or arbitral tribunal to have resulted from the willful misconduct or gross negligence of Canaccord Genuity in performing the services that are the subject of the engagement.

If such indemnification is for any reason not available or insufficient to hold an Indemnified Person harmless (except by reason of the gross negligence or willful misconduct of Canaccord Genuity), the Company and Canaccord Genuity shall contribute to the Losses involved in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by Canaccord Genuity, on the other hand, with respect to the engagement or, if such allocation is determined by a court or arbitral tribunal to be unavailable, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of the Company on the one hand and of Canaccord Genuity on the other hand; *provided, however,* that in no event shall the amounts to be contributed by Canaccord Genuity exceed the fees actually received by Canaccord Genuity in the engagement. Relative benefits to the Company, on the one hand, and Canaccord Genuity, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by the engagement, bears to (ii) all fees actually received by Canaccord Genuity in the engagement.

The Company also agrees that neither Canaccord Genuity nor any other Indemnified Person shall have any liability to the Company or any person asserting claims on behalf or in right of the Company in connection with or as a result of the engagement or any matter referred to in the engagement, except to the extent that any Losses incurred by the Company are finally determined by a court or arbitral tribunal to have resulted from the willful misconduct or gross negligence of Canaccord Genuity in performing the services that are the subject of the engagement. In no event shall Canaccord Genuity or any other Indemnified Person be responsible for any indirect, special or consequential damages, even if advised of the possibility thereof.

In the event that an Indemnified Party is requested or required to appear as a witness in any action brought by or on behalf of or against the Company relating to the engagement in which such Indemnified Party is not named as a defendant, the Company agrees to promptly reimburse Canaccord on a monthly basis for all reasonable out-of-pocket expenses incurred by it in connection with such Indemnified Party's appearing and

*CONFIDENTIAL*

Hipcricket, Inc.
January 20, 2014
Page 8 of 9

preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel.

Prior to entering into any agreement or arrangement with respect to, or effecting, any merger, statutory exchange or other business combination or proposed sale or exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth herein, the Company will notify Canaccord Genuity in writing thereof (if not previously so notified) and, if requested by Canaccord Genuity, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth herein upon terms and conditions reasonably satisfactory to Canaccord Genuity.

The Company's obligations hereunder shall be in addition to any rights that any Indemnified Person may have at common law or otherwise. The letter to which this Annex A is attached, including this Annex A, and any other agreements relating to the engagement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, applicable to contracts made and to be performed therein and, in connection therewith, the parties hereto consent to the exclusive jurisdiction of the state and federal courts of the Commonwealth of Massachusetts. Notwithstanding the foregoing, solely for purposes of enforcing the Company's obligations hereunder, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim subject to this Annex A is brought by or against any Indemnified Person. CANACCORD GENUITY HEREBY AGREES, AND THE COMPANY HEREBY AGREES ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS SECURITY HOLDERS, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTER-CLAIM OR ACTION ARISING OUT OF THE ENGAGEMENT OR CANACCORD GENUITY'S PERFORMANCE OF SERVICES THAT ARE THE SUBJECT THEREOF.

The provisions of this Annex A shall apply to the engagement (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the completion or termination of the engagement. If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

*CONFIDENTIAL*

Hipcricket, Inc.
January 20, 2014
Page 9 of 9

## ANNEX B

List of Investors:

Aspire
Diker
Lincoln Park
New Frontier
RedComb
Twin Oaks

**CANACCORD** Genuity

101 Montgomery Street
Suite 2000
San Francisco, CA 94104

T : 415-229-7171
F : 415-229-7194
www.canaccordgenuity.com

**CONFIDENTIAL**

**Amendment No. 1 to Agreement**

December 11, 2014

Hipcricket, Inc.
110 110th Avenue NE
Bellevue, WA 98004

Attn:   Mr. Todd E. Wilson
        Chairman and Chief Executive Officer

Ladies & Gentlemen:

Reference is made to that certain letter agreement dated January 20, 2014 (the "Agreement") between Canaccord Genuity Inc. ("Canaccord Genuity") and Hipcricket, Inc. (the "Company") pursuant to which the Company engaged Canaccord Genuity as its exclusive financial advisor in connection with the Company's review of its strategic and financial alternatives. Capitalized terms used in this Amendment No. 1 to Agreement (this "Amendment") and not defined in this Amendment shall have the meanings ascribed to them in the Agreement.

The Company and Canaccord Genuity hereby acknowledge that the Agreement is hereby amended by this Amendment as follows.

1. **Definition of Transaction.** The term "Transaction" as it is defined in the Agreement shall be replaced by the following definition: "any transaction or series of transactions, whether accomplished pursuant to a Plan (as defined below) or otherwise, involving (a) an acquisition, merger, consolidation or other transaction with another party through which assets of the Company are, directly or indirectly, combined with or transferred to another party outside of the ordinary course of business; (b) the acquisition, directly or indirectly, by a buyer or buyers of equity interests or options, or any combination thereof constituting a majority or controlling portion of the stock of the Company or possessing a majority or controlling portion of the voting power of the Company; (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of a majority or controlling portion of the securities or other interests (through tender offer, merger, sale, exchange or otherwise) or any portion of the assets of the Company outside of the ordinary course of business; (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purposes of affecting a transfer of a majority or controlling interest in the Company to a third party; (e) the conversion to common or other equity, or any other security or instrument, of any portion of the Company's indebtedness; or (f) any combination of the foregoing."

2. **Definition of Financing Transaction.** The term "Financing Transaction" as it is defined in the Agreement shall be replaced by the following definition: "a financing for any portion of the Company, whether in the form of secured, unsecured, subordinated or senior debt, equity or equity equivalents."

Hipcricket, Inc.
December 11, 2014
Page 2

3. <u>Services to Be Rendered.</u> In addition to the services to be rendered under the Agreement, Canaccord Genuity will perform the following additional service if requested and if appropriate:

   a. In the event the Company determines to commence one or more cases under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in order to pursue a Transaction or otherwise, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and arising in connection with any Transaction or any proposed Plan

   b. Section 1(i) of the Agreement shall be deleted.

   c. The following language in Section 1 of the Agreement shall be deleted: "If Canaccord Genuity is requested to render an Opinion, the nature and scope of our analysis and the form and substance of the Opinion will be such as Canaccord Genuity considers appropriate and will not address the underlying business decision to effect a Transaction. The Opinion may be included in any disclosure document required to be filed by the Company with the Securities and Exchange Commission with respect to a proposed Transaction, provided that it is reproduced in full, and that any description of or reference to Canaccord Genuity, and any summary of the Opinion in the disclosure document, is in a form reasonably acceptable to Canaccord Genuity. It is understood and agreed that the Opinion will be addressed to, and be prepared solely for the use and benefit of the Board, or a committee thereof, if applicable, and, except as set forth above or as required by law, may not be disclosed to any third party (other than the Company's legal counsel and other advisors with whom the Company works on the potential Transaction) or circulated or referred to publicly without the prior written consent of Canaccord Genuity.

4. <u>Fees.</u>

   a. In addition to the fees set forth in the Agreement, the Company shall pay Canaccord Genuity, by wire transfer of immediately available funds at the times due the following fees:

      i. <u>Monthly Fees.</u> Upon the execution of this Amendment, a fee due, earned and fully payable in advance in the amount of $35,000 and, on the first business day of each month thereafter, a fee in the amount of $35,000 (collectively, the "Monthly Fees").

   b. Section 2(c) of the Agreement shall be replaced with "upon the closing of a Transaction other than a Financing Transaction, a fee (the "M&A Fee") equal to the greater of (i) $500,000 and (ii) 5% of the Aggregate Consideration (as defined below) up to and including $15 million, plus 4% of the Aggregate Consideration over $15 million up to and including $20 million, plus 3% of the Aggregate Consideration over $20 million (so, for instance, if Aggregate Consideration equals $18 million, the fee would be $870,000 (($15 million * 5%) + ($3 million * 4%));"

Hipcricket, Inc.
December 11, 2014
Page 3

    c. Section 2(b) of the Agreement shall be deleted.

    d. Section 2(d) of the Agreement shall be amended by deleting "6.0%" and replacing it with "3.0%".

    e. The following language in section 2 of the Agreement shall be deleted "provided, that under no circumstances will the Success Fee from a Transaction other than a Financing Transaction be less than $1,250,000 (the "Minimum Fee"); and provided, further, that the Retainer and Opinion Fee paid pursuant to subsection 2(a) and (b) shall be credited against any Success Fee" and replaced with "<u>provided</u>, that if a proposed buyer provides debtor in possession financing as part of a contemplated sale transaction, and such sale transaction is consummated with that proposed buyer, then Canaccord Genuity shall earn only the M&A Fee and not any Success Fee on account of a Financing Transaction."

    f. The following language shall be included for purposes of calculating "Aggregate Consideration:"

        i. Aggregate Consideration shall also mean the value of any performance payments, equity incentives, cash bonus plans or other similar arrangements established in connection with, and payable after the consummation of, a Transaction (other than ordinary course base salary and bonuses consistent with past practice).

        ii. Aggregate Consideration also shall include, in the case of a joint venture or similar collaborative undertaking, the total amount of cash and fair market value (on the date of closing) of all property contributed by third parties to the joint venture.

        iii. The phrase "capitalized leases" shall be deleted from section (ii) within the definition of Aggregate Consideration.

5. <u>Application for Retention of Canaccord Genuity</u>. In the event the Company determines to commence chapter 11 proceedings in order to pursue a Transaction or otherwise, the Company shall apply promptly to the Bankruptcy Court pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Canaccord Genuity's retention by the Company under the terms of this Agreement, nunc pro tunc to the date the Company commences its chapter 11 case, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use its best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in section 330 of the Bankruptcy Code. The Company shall supply Canaccord Genuity and its counsel with a draft of such application and any proposed order authorizing Canaccord Genuity's retention sufficiently in advance of the filing of such application and proposed order to enable Canaccord Genuity and its counsel to review and comment thereon. Canaccord Genuity shall have no obligation to provide any services under this Agreement unless and until Canaccord Genuity's

Hipcricket, Inc.
December 11, 2014
Page 4

retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court in form and substance acceptable to Canaccord Genuity. Subject to being so retained, Canaccord Genuity agrees that during the pendency of any such proceedings, it shall continue its obligations under this Agreement pursuant to the provisions of this Agreement so long as the Company is using its best efforts to seek Canaccord Genuity's retention under section 328(a) of the Bankruptcy Code.

Canaccord Genuity acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section, payment of Canaccord Genuity's fees and expenses shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any order approving Canaccord Genuity's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications; provided, however, that Canaccord Genuity shall not be required to maintain time records. In the event that Canaccord Genuity's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Canaccord Genuity hereunder as promptly as practicable in accordance with the terms hereof and the orders governing Canaccord Genuity's interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any.

With respect to Canaccord Genuity's retention under section 328(a) of the Bankruptcy Code, the Company acknowledges and agrees that Canaccord Genuity's industry and restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Canaccord Genuity's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Canaccord Genuity's services hereunder could not be measured merely by reference to the number of hours to be expended by Canaccord Genuity's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties hereto in anticipation that a substantial commitment of professional time and effort will be required of Canaccord Genuity and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Canaccord Genuity and that the actual time and commitment required of Canaccord Genuity and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, the Company believes that given the numerous issues which Canaccord Genuity may be required to address in the performance of its services hereunder, Canaccord Genuity's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Canaccord Genuity's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

[SIGNATURE PAGE FOLLOWS]

Hipcricket, Inc.
December 11, 2014
Page 5

Please indicate your acceptance of this Amendment by signing in the space provided below and returning the same to Canaccord Genuity along with the $35,000 payment via wire transfer.

| Sincerely, | ACCEPTED & AGREED: |
|---|---|
| CANACCORD GENUITY INC. | HIPPCRICKET, INC. |
| By: *[signature]* | By: *Todd E. Wilson* |
| David Istock | Name: Todd E. Wilson |
| Managing Director | Title: Chairman and Chief Executive Officer |