## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Hipcricket, Inc.[1] | Case No. 15-10104 (LSS) |
| Debtor. | **Ref. Docket No. 11 ⸓ 43** |

## FINAL ORDER (I) AUTHORIZING THE DEBTOR TO
## (A) OBTAIN POST-PETITION SECURED FINANCING;
## (B) UTILIZE CASH COLLATERAL; AND (C) PAY CERTAIN
## RELATED FEES AND CHARGES; AND (II) SCHEDULING A FINAL HEARING

Upon the motion, dated January 20, 2015 (the "**Motion**"), of above-captioned debtor and debtor-in-possession (the "**Debtor**") for the entry of an order pursuant to sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of emergency interim and final orders, among other things:

   i.   authorizing the Debtor to (A) obtain senior secured post-petition financing in an aggregate maximum principal amount of $3,500,000 (the "**DIP Financing**") on a superpriority basis pursuant to the terms and conditions of that certain Debtor-in-Possession Promissory Note in substantially the form attached hereto as <u>Exhibit A</u>

---

[1] The last four digits of the Debtor's tax identification number are 2076. The location of the Debtor's headquarters and the service address for the Debtor is 110 110th Avenue NE. Suite 410, Bellevue, WA 98004.

(the "**DIP Note**"; together with any additional agreements, documents, instruments and certificates executed by the Debtor or otherwise delivered in connection therewith, the "**DIP Documents**"), between the Debtor as borrower, and SITO Mobile, Ltd. as lender (the "**DIP Lender**");

ii. authorizing the Debtor to execute and deliver the DIP Note and other DIP Documents and to perform such other and further acts as may be necessary or desirable in connection with the DIP Documents;

iii. authorizing the Debtor's use of cash collateral, as defined in Section 363(a) of the Bankruptcy Code (collectively, "**Cash Collateral**"), pursuant to the terms and conditions set forth in the Interim Order, this Final Order and the DIP Note; and

iv. scheduling a final hearing (the "**Final Hearing**") to be held within thirty (30) days of the Petition Date to consider entry of a final order (the "**Final Order**") authorizing the DIP Financing on a final basis, as set forth in the Motion and the DIP Documents filed with this Court.

Due and appropriate notice of the Motion under the circumstances, the relief requested therein and an interim hearing (the "**Interim Hearing**") and Final Hearing on the Motion having been held before this Court; and upon the entire record made at the Interim Hearing and Final Hearing; and this Court having found good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A. Unless otherwise indicated herein, all capitalized terms used but not defined herein shall have the meanings given in the Motion.

B. On January 20, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code. The Debtor is continuing in

possession of its property, and operating and managing its business, as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, official committee of unsecured creditors or any other committee has been appointed in this case.

C.    This Court has jurisdiction over the Debtor's chapter 11 case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue for this chapter 11 case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

D.    The Debtor and Fast Pay Partners, LLC ("Fast Pay") are parties to that certain Financing and Security Agreement dated May 12, 2014, which was amended on June 3, 2014 and again on October 15, 2014 (as amended, modified or supplemented from time to time up to the Petition Date, the "**Fast Pay Agreement**", a copy of which is attached to the Motion as Exhibit B). Pursuant to the Fast Pay Agreement, prepetition, Fast Pay purchased certain accounts receivable from the Debtor (the "**Factored ARs**") and advanced 80% of the gross value of the invoices to the Debtor with respect to Factored ARs purchased on or after about October 15, 2014 and 70% of the gross invoice value with respect to Factored ARs purchased prior to about October 15, 2014, promptly after Fast Pay notified the Debtor that Fast Pay would purchase a particular account receivable. To secure any shortfall, the Debtor granted Fast Pay a first priority security interest in substantially all of the Debtor's assets. On or about May 27, 2014, Fast Pay filed a UCC-1 financing statement (the "**Fast Pay Financing Statement**") covering its collateral (a copy of which is attached to the Motion as Exhibit B).

E.    The Debtor admits, stipulates and agrees as follows (collectively, the "**Admissions/Releases**"):

3

(i)    As of January 22, 2015, the Debtor, without defense, counterclaim or offset of any kind, was indebted and liable to Fast Pay for $1,833,713.13 (which is comprised of principal and accrued interest and financing fees as of such date and includes certain reserves described in and subject to paragraphs 7(b) and (d)) in respect of financial accommodations made by Fast Pay under the Fast Pay Agreement, together with all other obligations due and payable thereunder, including any unpaid accrued interest and financing fees (the "**Prepetition Fast Pay Debt**").

(ii)    As of the Petition Date, the Prepetition Fast Pay Debt was secured by first priority liens (the "**Prepetition Fast Pay Security Interest**") on substantially all of the Debtor's assets, including the Debtor's accounts, chattel paper, inventory, equipment, instruments, investment property, documents, letter of credit rights, commercial tort claims and general intangibles (as further described in the Fast Pay Agreement and Fast Pay UCC-1, the "**Prepetition Fast Pay Collateral**").  The Prepetition Fast Pay Security Interest granted to Fast Pay in the Prepetition Fast Pay Collateral, pursuant to and in connection with the Fast Pay Agreement, including, without limitation, any and all security agreements and other security documents executed by the Debtor in favor of Fast Pay, are valid, binding, perfected and enforceable liens and security interests in the property described in the Fast Pay Agreement.

(iii)    The Prepetition Fast Pay Debt constitutes the legal, valid and binding obligation of the Debtor, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

(iv)    No portion of the Prepetition Fast Pay Debt or any payments made to Fast Pay or applied to the obligations owing under the Fast Pay Agreement prior to the Petition Date is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim,

4

defense of "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or other applicable law.

(v)    The Debtor hereby waives and releases any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against Fast Pay and its former and current officers, directors, employees, agents, representatives, owners, members, partners, managers, advisors and attorneys (each of the foregoing parties other than Fast Pay acting in its respective capacity as such) (collectively, the "**Releasees**"), whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

(vi)    The Debtor acknowledges and agrees that it has been informed by its attorneys and advisors and that it is familiar with and hereby expressly waives, the provisions of section 1542 of the California Civil Code, and any similar statute, code, law or regulation of any state of the United States, or of the United States, to the fullest extent that they may waive such rights and benefits.  Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Debtor acknowledges and agrees that it is aware that it may hereafter discover claims presently unknown or unsuspected or facts in addition to or different from those which it now knows or believe to be true, as to the matters released herein. Nevertheless, it is the intention of the Debtor through this release, to fully, finally and forever release all such matters, and all claims related thereto, which do now exist, may exist or heretofore have existed.  In furtherance of such intention, the releases herein given shall be and remain in effect as full and complete

5

releases of such matters, notwithstanding the discovery or existence of any such additional or different claims or facts related thereto by any of the parties hereto. In entering into this release, Debtor does not rely upon any statement, representation or promise of any other party hereto or any other person or entity, except as expressly stated herein.

(vii)   The waivers and releases provided for in this paragraph E shall be effective as provided but in all respects subject to the provisions in paragraphs 27, 28 and 29.

F.   The Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a post-petition basis is also not otherwise available pursuant to section 364(c) of the Bankruptcy Code.

G.   Based on the record presented to this Court by the Debtor, including the Wilson Declaration, the DIP Financing and use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtor and the DIP Lender and any credit extended and loans made to the Debtor by the DIP Lender pursuant to the Interim Order, this Final Order, and the DIP Documents (the "**DIP Obligations**") shall be deemed to have been extended, issued or made, as the case may be, in good faith within the meaning of, section 364(e) of the Bankruptcy Code and the DIP Lender shall have all of the protections thereunder.

H.   Based on the record before this Court, it appears that the terms of the Interim Order and this Final Order, including, without limitation, the terms of the DIP Financing and use of Cash Collateral, are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

I.   The Debtor has requested immediate entry of this Final Order. The permission granted herein to use Cash Collateral and obtain funds under the DIP Financing is necessary to

NY 244985742v2

avoid immediate and irreparable harm to the Debtor.  This Court concludes that entry of this Final Order is in the best interests of the Debtor's estates and creditors as its implementation will, among other things, enhance the Debtor's prospects for a successful completion of these cases.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED DETERMINED AND DECREED** that

1.      <u>Motion Granted</u>.  The Motion is granted on the terms and conditions set forth in this Final Order, with the foregoing findings incorporated herein by reference.  Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled.  This Final Order shall be valid and binding on all parties-in-interest and fully effective immediately upon entry.

2.      <u>Authorization</u>.  The Debtor is hereby authorized to execute and enter into the DIP Documents.  The DIP Note, the other DIP Documents and this Final Order shall govern the financial and credit accommodations to be provided to the Debtor by the DIP Lender as described herein; *provided* that in the event of a conflict between the DIP Documents and this Final Order, this Final Order shall control.

3.      The Debtor is hereby authorized to borrow money pursuant to the DIP Note up to an aggregate principal amount of $3,500,000.

4.      The DIP Financing may be used in accordance with the terms of this Final Order and the DIP Note (and subject to the Budget (defined below)) to fund the day-to-day working capital needs and chapter 11 administrative expenses of the Debtor during the pendency of the Chapter 11 Case and to allow the Debtor, if subsequently approved by the Court, to effectuate a

NY 244985742v2

sale of all or substantially all of Debtor's assets in accordance with the Sale Motion (the "**Sale Transaction**").

5.    In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Financing, including, without limitation:

> (i)    the execution, delivery and performance of the DIP Documents, including, without limitation, the DIP Note, any security and pledge agreements, any mortgages contemplated thereby and the letter agreements referred to below;

> (ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtor and the DIP Lender may agree; *provided,* that, the Debtor shall provide written notice of any material modification or amendment to the DIP Documents to counsel to any official committee appointed in the Chapter 11 Case (the "**Committee**"), and the U.S. Trustee, each of whom shall have five (5) days from the date of such notice within which to object in writing to such modification or amendment. If any Committee or the U.S. Trustee timely objects to any such material modification or amendment to the DIP Credit Agreement, such modification or amendment shall only be effective pursuant to an order of this Court; and

> (iii)    the performance of all other acts required under or in connection with the DIP Documents.

6.    Upon execution and delivery of the DIP Note and the other DIP Documents, such DIP Documents shall constitute valid, binding and non-avoidable obligations of the Debtor enforceable against the Debtor in accordance with their respective terms and the terms of this Interim Order for all purposes during the Chapter 11 Case, any subsequently converted case of the Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of any case. No obligation, payment, transfer or grant of security under the DIP Note, the other DIP Documents

or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under Bankruptcy Code sections 502(d), 548 or 549 or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.     Fast Pay Payoff; Reimbursement of Expenses; Indemnification.

(a)     Pursuant to the Interim Order, the Debtor was authorized to immediately pay off its obligations to Fast Pay from the DIP Financing. On January 26, 2015, the Debtor satisfied the Debtor's payoff of its obligations to Fast Pay as set forth in the Budget (the "**Fast Pay Payoff**"); therefore, as of January 26, 2015, (a) the Fast Pay Agreement shall be deemed terminated and of no further force and effect, except for the rights of Fast Pay reserved and the obligations of Debtor as provided herein, (b) FastPay was obligated to re-convey the "Purchased Accounts" (as such term is defined in the FastPay Agreement) to the Debtor, and (c) all liens, claims and interests of FastPay in the Purchased Accounts and in the "Collateral" (as defined in the FastPay Agreement) were extinguished.   Further, FastPay will cooperate with the Debtor in terminating (i) the Deposit Account Control Agreement by and among FastPay, the Debtor and Silicon Valley Bank ("**SVB**") governing SVB bank account ending in numbers 3381, and (ii) the Blocked Deposit Account Control Agreement by and among FastPay, Debtor and SVB governing bank account ending in numbers 4003. FastPay will promptly turn over to the Debtor any amounts FastPay receives that are otherwise subject to the DIP Lender's priority lien granted hereunder or otherwise property of the Debtor.

(b)     To the extent permitted under the Fast Pay Agreement and the Budget, Fast Pay shall be entitled to reimbursement by the Debtor of all of Fast Pay's reasonable

attorneys' and other professional fees, as well as all reasonable costs and expenses, incurred in connection with the actions of Fast Pay specified in, or otherwise required of Fast Pay in connection with, this paragraph 7. The Fast Pay Payoff provided for in the Budget includes a reserve in the amount of $50,000.00 (inclusive of $25,000 already withheld by Fast Pay) for costs, expenses and legal fees (the "**Fast Pay Expense Reserve**"). To the extent such costs, expenses and legal fees exceed the Fast Pay Expense Reserve, Fast Pay shall present such costs, expenses and legal fees to the Debtor for payment and the Debtor, subject to the Budget, shall pay such costs, expenses and legal fees. None of such amounts due for cost, expenses and attorney's fees hereunder shall be subject to approval by this Court, and no recipient of any such payment shall be required to file with respect thereto any fee application with this Court. Copies of any such invoices shall be provided to counsel to the Debtor, counsel to the Committee, the U.S. Trustee and counsel to the DIP Lender. Any excess of such reserve, if not so applied, shall be returned to the Debtor on the date that is no more than 10 days after the Challenge Period Termination Date. If no objection to payment is made within ten (10) calendar days thereafter, the Debtor shall promptly pay such invoices to Fast Pay or other applicable party. If an objection to payment is timely made and such objection cannot be resolved within five (5) business days of service of such objection, the objecting party shall file and serve on such professional an objection with the Court limited to the issue of the reasonableness of the disputed fees and expenses and whether such fees and expenses are authorized to be paid hereunder, provided, further, that the Debtor shall timely pay in accordance with this Final Order the undisputed fees, costs and expenses reflected on any invoice to which such an objection has been timely filed.

(c)    To the extent permitted under the Fast Pay Agreement, Fast Pay shall be, and hereby is, indemnified by the Debtor from and against any and all claims, debts, dues,

10

accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs and other assertions of liability arising out of Fast Pay's good faith exercise of actions in connection with the actions of Fast Pay specified in, or otherwise required of Fast Pay in connection with, this paragraph 7.

        (d)      Debtor shall remain liable for Avoidance Claims as defined in the Fast Pay Agreement and bounced checks. Debtor shall provide Fast Pay with, and the payoff amount will include the sum of $75,000.00 to be held as an Avoidance Claim Reserve as security for the Avoidance Claims and bounced checks.  At 120 days past payoff, Fast Pay shall search each Account Debtor who made payments on account during the 90 days prior to the payoff to see whether they filed bankruptcy.  Fast Pay will notify the Debtor of any account debtor that filed bankruptcy within 90 days of the payoff and hold in reserve the amount of the payments received from that account debtor from the Avoidance Claim Reserve. Additionally, Fast Pay shall be entitled to charge the Avoidance Claim Reserve for any checks returned because of non-sufficient funds or stop payment notices to the extent such funds were forwarded to the Debtor after Fast Pay received the payoff described herein.  Any unreserved remaining Avoidance Claims Reserve will be returned at 150 days after the payoff or sooner.  If the amount of payments received within 90 days of the Payoff is greater than the Avoidance Claim Reserve, Fast Pay will notify the Debtor and Debtor will pay such amount to Fast Pay to hold and use toward the Avoidance Claim liability.

        (e)      Upon Debtor's receipt of a demand from Fast Pay for indemnity of any Avoidance Claim, Debtor shall have ten (10) days to either pay the amount of the demand or assume the defense of such Avoidance Claim at Debtor's expense.  Any amount not paid or defense not assumed shall become a priority administrative claim in favor of Fast Pay in the

11

Debtor's estate.  Debtor's obligation to indemnify Fast Pay for Avoidance Claims shall be assumed by the purchaser of the Debtor's assets.

(f)    Nothing herein shall obligate the DIP Lender to fund any amounts in excess of the Budget related to Fast Pay's claims or otherwise.

8.    Borrowing; Use of Cash Collateral.  Subject to the budget attached to the DIP Note as Exhibit A (as modified from time to time in accordance with the DIP Note, the "**Budget**") and solely in compliance therewith and subject further to the terms and conditions of this Final Order and the DIP Documents, (a) the DIP Lender will provide the DIP Financing in accordance with the terms of the DIP Documents, and (b) the Debtor is authorized to use Cash Collateral in accordance with the terms of this Final Order.

9.    Subject to paragraph 12, the automatic stay under section 362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to permit the DIP Lender to retrieve, collect and apply payments and proceeds in respect of the DIP Collateral (defined below), as applicable, in accordance with the terms and provisions of this Final Order and the DIP Documents.

10.    Interest, Fees, Costs and Expenses.  The DIP Obligations shall bear interest at 13% per annum payable monthly as provided in the DIP Note.  The DIP Lender shall be entitled to recover all of its reasonable attorneys' fees and other professional fees as well as all costs and expenses incurred in connection with the DIP Financing, as and to the extent provided in the Budget.  In consideration for providing the DIP Financing, the DIP Lender shall be paid all fees specified in the DIP Documents in accordance with the terms therein for such payment; provided, however, that none of such fees hereunder shall be subject to approval by this Court or the U.S. Trustee, and no recipient of any such payment shall be required to file with respect

12

thereto any final fee application with this Court. Copies of any such invoices shall be provided

to the U.S. Trustee, counsel to the Debtor, the DIP Lender, and counsel to the Committee. If no

objection to payment is made within ten (10) calendar days thereafter, the Debtor shall promptly

pay such invoices. If an objection to payment is timely made and such objection cannot be

resolved within five (5) business days of service of such objection, the objecting party shall file

and serve on such professional an objection with the Court (the "**Fee Objection**") limited to the

issue of the reasonableness of the disputed fees and expenses and whether such fees and

expenses are authorized to be paid hereunder, provided, further, that the Debtor shall timely pay

in accordance with this Final Order the undisputed fees, costs and expenses reflected on any

invoice to which a Fee Objection has been timely filed.

11.    Event of Default.[2]  Each of the following events shall constitute an "**Event of**
**Default**"):

(i)    Borrower (A) fails to pay any payment (whether principal, interest, or
otherwise) when such amount becomes due and payable under the DIP
Note or (B) Borrower defaults in the due performance or observance by it
of any other term, covenant, or agreement contained in the DIP Note (and,
if such default is capable of being remedied, it has not been remedied
within the cure period set forth in the DIP Note or, if no such cure period
is provided, it has not been remedied to the reasonable satisfaction of the
DIP Lender) two (2) business days following the occurrence of such event
of default);

(ii)   any representation, warranty, or statement made by or on behalf of
Borrower herein or in the DIP Note or in any certificate delivered in
connection with the DIP Note shall prove to be untrue in any material
respect on the date on which made or deemed made;

---

[2] Capitalized but otherwise undefined terms used in this section shall have the meaning ascribed to such term in the
DIP Note.

13

(iii)    the security interest granted to the DIP Lender shall cease to be in full force and effect, or shall cease to create a perfected security interest in, and lien on, the Collateral purported to be created thereby;

(iv)    the DIP Note is, or becomes, invalid or ineffective or unenforceable against Borrower, in whole or in part, or Borrower so asserts or at any time denies its liability or Obligations under the DIP Note;

(v)    prior to the closing of the Sale, the Bankruptcy Court shall enter an order with respect to Borrower dismissing its Chapter 11 Case or converting it to a case under chapter 7 or any other chapter of the Bankruptcy Code, or appointing a trustee in its Chapter 11 Case or appointing a responsible officer or an examiner with enlarged powers relating to the operation of Borrower's business (beyond those set forth in sections 1106(a)(3) or (4)) under Bankruptcy Code section 1106(b), in each case, without the consent of the DIP Lender;

(vi)    prior to closing of the Sale, entry of any order of the Bankruptcy Court dismissing the Bankruptcy Case, unless as a condition thereto the Obligations are irrevocably paid in cash in full;

(vii)    the Bankruptcy Court shall enter an order granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder of any lien (other than liens in favor of the DIP Lender) or any assets of Borrower having an aggregate value in excess of $50,000;

(viii)    the Borrower shall seek to, or shall support any other person's motion to, disallow in whole or in part the Obligations or to challenge the validity, priority, or enforceability of the DIP Lender's liens and superpriority claims hereunder;

(ix)    a DIP Order shall be entered in form and substance that is not acceptable to the DIP Lender in its sole discretion or, from and after the date of entry thereof, any DIP Order shall cease to be in full force and effect or shall have been vacated, stayed, reversed, modified or amended (or the Borrower shall take any step to accomplish any of the foregoing) without the consent of the DIP Lender;

(x)    prior to the closing of the Sale, the Borrower shall make any payments on any indebtedness which arose before the Petition Date other than as provided in any of the "first day" orders entered in the Chapter 11 Case or otherwise consented to by the DIP Lender;

(xi)    the Sale Motion shall have been withdrawn or is no longer being pursued or the Borrower shall be in breach or shall fail to comply with the terms of the DIP Order, the Bid Procedures Order or the Stalking Horse Agreement in any material respect;

14

(xii)    actual cash receipts from operations for any two consecutive week budget period are less than 80% of such receipts projected in the Budget or on a cumulative basis from the Petition Date; provided, that the Borrower shall not be in default hereunder if the foregoing revenue test is not met during the first three calendar weeks of the Chapter 11 Case;

(xiii)    The (A) Bid Procedures Motion is not filed within five (5) days of the Petition Date, (B) the Sale Motion is not filed within seven (7) days of the Petition Date, (C) Bid Procedures Order is not entered within 22 days of the Petition Date, (D) the Sale Order is not entered within 50 days of the Petition Date, and (E) the Sale has not closed by 15 days after the hearing on the Sale Motion;

(xiv)    one or more judgments or decrees shall be entered against Borrower involving in the aggregate a post-Petition Date liability (not paid or fully covered by insurance or otherwise considered permitted Indebtedness) of $50,000 or more, and all such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within the time required by the terms of such judgment;

(xv)    the DIP Note or any related document shall cease, for any reason, to be in full force and effect or the Borrower shall so assert in writing, or any such document shall cease to be effective to grant a perfected lien on any material item of Collateral described therein with the priority purported to be created thereby;

(xvi)    an application or motion shall be filed by the Borrower for the approval of a superpriority Claim in the Bankruptcy Case or the Bankruptcy Court shall have granted superpriority status to any claim in the Bankruptcy Case, in each case, that is senior to the claims of DIP Lender against Borrower hereunder, without the prior written consent of the DIP Lender; or

(xvii)    the Final DIP Order shall not be entered by the Bankruptcy Court by the date that is 30 days from the Petition Date

NY 244985742v2

12.     Upon the occurrence of an Event of Default and after five (5) days' written notice to the Debtor, the Committee and the U.S. Trustee (the "**Default Notice Period**"), the automatic stay shall terminate, and the DIP Lender shall be permitted to exercise any remedies permitted by law, or including any of the following actions, unless the Court determines during the Default Notice Period that an Event of Default has not occurred:

(i)     declare all or any portion of the outstanding Obligations due and payable, whereupon the same shall become, forthwith due and payable without presentment, demand, protest or notice of any kind, all of which are hereby waived by Borrower;

(ii)    enforce all liens and security interests in the Collateral;

(iii)   institute proceedings to enforce payment of such Obligations;

(iv)    terminate the obligation of the DIP Lender to make Loans; and

(v)     exercise any other remedies and take any other actions available to it at law, in equity, under the DIP Note, the Bankruptcy Code, other applicable law or pursuant to any DIP Order.

Notwithstanding the foregoing, the DIP Lender shall continue to fund the Debtor's operations, pursuant to the Budget, through the Default Notice Period.

13.     Termination of the DIP Financing and Use of Cash Collateral.  Except with respect to the payment of the Carve-Out (as defined herein), the DIP Lender's agreement to provide the DIP Financing in accordance with the DIP Documents and the Debtor's use of Cash Collateral shall immediately and automatically terminate (except as the DIP Lender may otherwise agree in writing in its sole discretion), and all DIP Obligations shall be immediately due and payable in cash upon the earliest to occur of any of the following (each, a "**Termination Date**"):

(i)     April 3, 2015;

16

(ii)    One (1) Business Day following the Final Hearing Date (as defined below) if a Final Order has not been entered by the date that is thirty (30) days from the Petition Date;

(iii)    the date of final indefeasible payment and satisfaction in full in cash of the DIP Obligations;

(iv)    the entry of an order by the Court granting a motion by the Debtor to obtain additional financing from a party other than DIP Lender under section 364 of the Bankruptcy Code unless the proceeds from such financing are used to immediately repay in cash the DIP Obligations or unless such financing is subordinate to the DIP Obligations and consented to in writing by the DIP Lender;

(v)    the dismissal of any of the chapter 11 cases or the conversion of any of the chapter 11 cases into a case under chapter 7 of the Bankruptcy Code;

(vi)    upon and following the entry of an order authorizing the appointment in any of the Debtor's chapter 11 cases of a trustee or an examiner with enlarged powers (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code), relating to the operation of the business of the Debtor without the prior written consent of the DIP Lender (which consent may be withheld, or, if given revoked, by the DIP Lender in its sole discretion), or if any Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the  DIP Lender (which consent may be withheld in its sole discretion);

(vii)    the Interim Order or the Final Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lender (which consent may be withheld in its sole discretion);  or

(viii)    upon three (3) days written notice of any "Event of Default" under any of the DIP Documents, the Interim Order, or Final Order occurring after the date hereof.

14.    <u>Superpriority Claims</u>.  Pursuant to Bankruptcy Code section 364(c)(l), all of the DIP Obligations shall constitute allowed senior administrative expense claims against the Debtor (the "**Superpriority Claims**") with priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) or 507(b), and over any and

17

all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546, 726, 1113 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of Bankruptcy Code section 1129(a)(9)(A) be considered administrative expenses allowed under Bankruptcy Code section 503(b), and which shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, excluding, however, the proceeds of all Avoidance Actions (as defined below), subject only to the Carve-Out to the extent specifically provided for herein.

15.    <u>Carve-Out</u>.  The liens and claims of or granted to the DIP Lender shall be subject and subordinate to the payment, without duplication, of the following fees and claims (the amounts set forth below, together with the limitations set forth therein, collectively, the "**Carve-Out**"):  (a) all allowed fees and expenses of attorneys, investment bankers and financial advisors (collectively, the **"Estate Professionals"**) (i) employed by the Debtor pursuant to sections 327, 328, 1102 and 1103 of the Bankruptcy Code which are accrued prior to the Termination Date to the extent set forth in (and limited by) the Budget and (ii) employed by the Committee pursuant to sections 327, 328, 1102 and 1103 of the Bankruptcy Code and any disbursement of any member of the Committee which, in each case, are accrued prior to the Termination Date (A) to the extent set forth in (and limited by) the Budget plus (B) an additional incremental $40,000 for each of the weeks ending February 13, 2015, February 20, 2015, February 27, 2015, March 6, 2015 and March 13, 2015 (for a total of an additional $200,000 in the aggregate); provided, that following the Termination Date, the Carve-Out shall be limited to the allowed fees and disbursements of Estate Professionals incurred or accrued after such Termination Date by the Estate Professionals in an aggregate amount not to exceed $100,000 plus the fees and expenses

18

of Estate Professionals incurred or accrued prior to the Termination Date to the extent provided in clauses (i) and (ii) above, and as reduced in accordance with Paragraph 16, and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court or to the Debtor's appointed claims agent.

16.     Following entry of the Final Order and on a weekly basis thereafter, the Debtor shall be authorized to transfer funds to the Pachulski Stang Ziehl & Jones LLP Client Trust Account (the "**Expense Reserve Account**") in the amounts set forth in the Budget for fees and expenses of the Estate Professionals. Such funds shall be held in the Expense Reserve Account for the benefit of the Estate Professionals, respectively, to be applied *pro rata* to the fees and expenses of such Estate Professionals approved for payment pursuant to one or more orders of the Bankruptcy Court (the "**Segregated Funds**"), provided, however, that for the avoidance of doubt, fees and expenses payable to the Estate Professionals shall be paid first out of the Expense Reserve Account, and all amounts deposited in the Expense Reserve Account shall reduce, on a dollar for dollar basis, the obligation to fund the Carve-Out, and provided further that there shall be no requirement that any amounts in respect of any success fees that may be earned by any Estate Professional be deposited into the Expense Reserve Account. Without in any way limiting the Debtor's ability to use the Segregated Funds to pay fees payable to the Office of the United States Trustee and the Clerk of the Court and the fees and expenses of the Estate Professionals, the Segregated Funds in the Expense Reserve Account shall remain encumbered by and subject to the DIP Liens, and the Superpriority Claim, in their respective order of priority; provided, however, that such liens and claims shall be subordinate to the Carve-Out. Notwithstanding the foregoing, none of the Carve-Out, proceeds from the DIP Financing or Cash Collateral may be used (1) to investigate or challenge in any respect the validity,

19

perfection, priority, extent or enforceability of the DIP Liens, (2) to delay, challenged or impede any rights of the DIP Lender under any of the DIP Documents, the Interim Order or this Final Order, or (3) to pursue any claims or causes of action of any kind against the DIP Lender. Nothing herein shall restrict the ability of the Committee or any other party to investigate or object to the Bid Procedures Motion or Sale Transaction, and the Carve-Out, proceeds from the DIP Financing and/or Cash Collateral may be used to pay approved fees and expenses of Estate Professionals employed by the Committee in connection therewith.

17.    Subject to the terms of this Final Order, the Debtor shall be permitted to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals allowed and payable under sections 328, 330 or 331 of the Bankruptcy Code, as the same may be due and payable, that constitute pre-Termination Date expenses and such payments shall not reduce or be deemed to reduce the post-Termination Date fees and expenses.

18.    <u>Liens to Secure the DIP Obligations</u>.    As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the Debtor or the DIP Lender of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender of or over any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtor to the DIP Lender for its benefit (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "**DIP Collateral**"), subject, only in the event of the occurrence and during the continuance of an Event of Default (as defined in the DIP Note), to the payment of the Carve-Out (all such liens and security interests granted to the DIP Lender for its benefit pursuant to this Interim Order and the DIP Documents, the "**DIP Liens**"):

20

(a)    *First Lien on Unencumbered Property.*  Pursuant to Bankruptcy Code section 364(c)(2), a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtor or its estate, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "**Unencumbered Property**"), including, without limitation, any such unencumbered cash of the Debtor and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, commercial tort claims, equity interests, and the proceeds of all the foregoing.  For purposes of this Final Order, Unencumbered Property shall expressly exclude the proceeds of the Debtor's claims and causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550, and 553 and any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), which Avoidance Actions shall not be subject to the DIP Liens, Superpriority Claims or any other liens or superpriority claims.

(b)    *Liens Junior to Certain Other Liens.*  Pursuant to Bankruptcy Code section 364(c)(3), a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all pre- and post-petition property of the Debtor (other than the property described in clauses (a) or (c) of this paragraph 18, as to which the liens and security interests in favor of the DIP Lender will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section

21

546(b), which security interests and liens in favor of the DIP Lender are junior to such valid, perfected and unavoidable liens (collectively, the "**Permitted Liens**").

(c)     *Liens Senior to Certain Other Liens*.    The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under Bankruptcy Code section 551, (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor to the extent permitted by applicable non-bankruptcy law or (iii) any intercompany or affiliate liens of the Debtor.

19.     <u>Perfection of DIP Liens</u>.    The DIP Liens shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; <u>provided</u>, <u>however</u>, that notwithstanding the provisions of section 362 of the Bankruptcy Code, (i) the DIP Lender, may, at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtor's expense, any such UCC financing statements, notices of liens and security interests, mortgages, amendments to mortgages and/or other similar documents or instruments as the DIP Lender may require, and (ii) the DIP Lender, may require the Debtor to deliver to the DIP Lender, any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the Debtor is directed to cooperate and comply therewith.    If the DIP Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such

22

notices, financing statements, mortgages, amendments to mortgages or other documents or instruments with respect to such security interests and liens, or if the DIP Lender, in accordance with the DIP Documents or this Interim Order, elects to take possession of any DIP Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements, mortgages, amendments to mortgages or similar documents or instruments or taking possession shall be deemed to have been filed or recorded or taken in these cases as of the commencement of these cases but with the priorities as set forth herein. The DIP Lender may (in its sole discretion), but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall constitute further evidence of the DIP Lender's interest in the DIP Collateral.

20.    <u>Preservation of Rights Granted Under this Final Order</u>.  No claim or lien having a priority superior to or *pari passu* with those granted by the Interim Order or this Final Order to the DIP Lender shall be granted or allowed until the occurrence of (i) the payment in full in cash or immediately available funds of all of the DIP Obligations or the application of all of the DIP Obligations to the consideration paid by the DIP Lender to purchase the Debtor's assets, (ii) the termination or expiration of all commitments to extend credit to the Debtor under the DIP Documents, and (iii) the cash collateralization in respect of any asserted claims, demands, actions, suits, proceedings, investigations, liabilities, fines, costs, penalties, or damages for which the DIP Lender may be entitled to indemnification by the Debtor ("**Paid in Full**"). While any portion of the DIP Financing (or any refinancing thereof) or the DIP Obligations remain outstanding and the commitments thereunder have not been terminated, the DIP Liens shall not be (x) subject or junior to any lien or security interest that is avoided and preserved for the

23

benefit of the Debtor's estate under Bankruptcy Code section 551 or (y) subordinated to or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise.

21.    Unless all DIP Obligations shall have indefeasibly been Paid in Full, the Debtor shall not seek, and it shall constitute an Event of Default (as defined in the DIP Note) and terminate the right of the Debtor to use Cash Collateral if the Debtor seeks, or if there is entered, (i) any modification or extension of this Final Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence, or (ii) an order converting or dismissing the Chapter 11 Case.

22.    If an order dismissing the Chapter 11 Case under Bankruptcy Code section 1112 or otherwise is entered at any time prior to the DIP Obligations being Paid in Full, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that (i) the Superpriority Claims, security interests and replacement security interests granted to the DIP Lender shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations shall have been indefeasibly paid in cash in full (and that such Superpriority Claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

23.    If any or all of the provisions of the Interim Order or this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay,

24

modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Documents with respect to any DIP Obligations. To the extent permitted by applicable law, notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral or DIP Obligations incurred by the Debtor to the DIP Lender prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of the Interim Order and this Final Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in Bankruptcy Code section 364(e), the Interim Order and this Final Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral and the DIP Obligations.

24.     Except as expressly provided in this Final Order or in the DIP Documents, or until the DIP Obligations are Paid in Full, the DIP Liens, the Superpriority Claims, and all other rights and remedies of the DIP Lender granted by the provisions of the Interim Order and this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7, or dismissing the Chapter 11 Case or (ii) the entry of an order confirming a plan of reorganization in the Chapter 11 Case and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtor has waived any discharge as to any remaining DIP Obligations.  The terms and provisions of the Interim Order and this Final Order and the DIP Documents shall continue in the Chapter 11 Case, or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, and the Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are Paid in Full.

25

25.    <u>Limitation on Use of DIP Financing Proceeds and Collateral</u>.  Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, Cash Collateral, DIP Collateral, DIP Indebtedness, or proceeds of the DIP Financing or any part of the Carve-Out may be used for any of the following without the prior written consent of the DIP Lender:  (a) to object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, or the liens or claims granted under the Interim Order, this Final Order, the DIP Documents, (b) investigate any claims, defenses or causes of action that may exist under law, equity or otherwise against the DIP Lender or its respective agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Documents, the Interim Order or this Final Order, (d) seek to modify any of the rights granted to the DIP Lender hereunder or under the DIP Documents, or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted to be paid under the DIP Documents.  Nothing herein shall restrict the ability of the Committee or any other party to investigate or object to the Bid Procedures Motion or Sale Transaction, and the Carve-Out, and proceeds from the DIP Financing and/or Cash Collateral may be used to pay approved fees and expenses of Estate Professionals employed by the Committee in connection therewith.

26.    <u>Right to Credit Bid</u>.  Subject to Section 363(k) of the Bankruptcy Code and entry of this Final Order, the DIP Lender shall have the right to "credit bid" the full amount of its claims in connection with any sale of all or any portion of the Debtor's assets, including, without limitation, the Sale Transaction or included as part of any restructuring plan subject to confirmation under Section 1129(b)(2)(A)(iii) of the Bankruptcy Code; <u>provided</u>, that in the

event the DIP Lender is also the purchaser of the Debtor's assets and agrees to assume the DIP

Financing, the DIP Financing shall not be double counted as purchase consideration.

27.    <u>Admissions/Releases Relating to Fast Pay</u>.  The Admissions/Releases set forth in

paragraphs D and E above shall be deemed effective upon entry of the Interim Order, subject

only to the rights set forth in paragraph 28 below.  The Debtor forever and irrevocably releases,

discharges, and acquits the Releasees as set forth in paragraph E above.

28.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>

<u>Against Fast Pay</u>.  Notwithstanding any other provision herein, the Admissions/Releases set forth

in paragraphs D and E and 27 above, shall be binding upon the Debtor upon entry of the Interim

Order and upon each other party in interest, including the Committee, unless the Committee or

any such other party in interest having standing (or if this chapter 11 case is converted to a case

under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7

trustee in such successor case), commences, by March 31, 2015 (subject to extension by written

consent of the parties or order of the Court, such timeframe shall be referred to as the

"**Challenge Period**," and the date that is the next calendar day after the termination of the

Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised

during the Challenge Period or (ii) with respect only to those parties who properly and timely file

a Challenge, such Challenge is fully and finally adjudicated, which date shall be referred to as

the "**Challenge Period Termination Date**"):

(A)    a contested matter, adversary proceeding, or other action or claim (as

defined in the Bankruptcy Code) (i) challenging or otherwise objecting to any of the

Admissions/Releases, or (ii) otherwise seeking to avoid or challenge (whether pursuant to

chapter 5 of the Bankruptcy Code or otherwise) any transfer made by the Debtor to Fast

27

Pay prior to the Petition Date; or

(B) a contested matter, adversary proceeding, or other action or claim (as defined in the Bankruptcy Code) against any Releasee relating to any pre-Petition Date act, omission or aspect of the relationship between such Releasee and the Debtor ((A) and (B) being, collectively, the "**Challenges**" and, each individually, a "**Challenge**"),

Upon the Challenge Period Termination Date and for all purposes in this chapter 11 case and any successor case, (i) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred and (ii) the Admissions/Releases set forth in paragraphs E and D above shall be binding on all parties in interest, including the Committee.

29.    Effect of Stipulations on Third Parties.    Each stipulation, admission and agreement contained in the Interim Order and this Final Order, shall be binding upon the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all claims against the DIP Lender as of the date of entry of this Interim Order.    Subject to paragraphs 27 and 28, each stipulation, admission and agreement contained in the Interim Order and this Final Order shall also be binding upon all other parties in interest, including, without limitation, the Committee, under all circumstances and for all purposes.

30.    Upon approval of this Final Order, notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtor's leased premises that an Event of Default has occurred and is continuing, the DIP Lender shall be entitled to the Debtor's rights and privileges under such lease(s) without interference from such landlord, including, if applicable, the right to enter upon such leased premises for the purpose of exercising any right or

remedy with respect to the collateral located thereon; *provided* that such DIP Lender shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by such DIP Lender, calculated on a per diem basis and any such amount paid shall be deemed to be DIP Obligations, as applicable.

31.    <u>Financial Reporting</u>.  The Debtor shall provide any reporting provided for under the DIP Note.

32.    <u>Covenants</u>.  Unless otherwise modified pursuant to this Final Order, the Debtor acknowledges and agrees that the Debtor shall timely comply with all of the covenants set forth in this Final Order and the DIP Documents.

33.    <u>Effect of Modification of Order</u>.  The Debtor shall not, without the DIP Lender's prior written consent (which shall be given or refused in their sole discretion), seek to modify, vacate or amend this Final Order or any DIP Documents.  If any provisions of this Final Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court without the prior written consent of the DIP Lender (which consent may be given or refused in its sole discretion), then such event shall constitute an immediate Termination Date under this Final Order and an Event of Default under the DIP Documents.

34.    <u>Binding Effect on Successors and Assigns</u>.    The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, including, without limitation, the DIP Lender, the Committee and the Debtor and its successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to Bankruptcy Code section 1104 or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of

29

the DIP Lender and the Debtor and its successors and assigns, *provided, however*, that the DIP Lender shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor.  In determining to make any loan (whether under the DIP Credit Agreement, promissory notes or otherwise) or permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the DIP Lender shall not (i) be deemed to be in control of the operations of the Debtor, (ii) owe any fiduciary duty to the Debtor, its creditors, shareholders or estate or (iii) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C.  §§ 9601, et seq., as amended, or any similar federal or state statute).

35.    Effectiveness.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

36.    Objections Overruled or Withdrawn.  All objections to the entry of this Final Order have been withdrawn or are hereby overruled.

37.    Controlling Effect of Order.  To the extent any provisions in this Final Order conflict with any provisions of the Motion, the Interim Order, or any DIP Loan Document the provisions of this Final Order shall control.

38.    <u>Order Effective</u>.  This Final Order shall be effective as of the date of signature by the Court notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(h), 7062, 9014 or otherwise.

DATED: February __, 2015

Honorable Laurie Selber Silverstein
United States Bankruptcy Judge

31