# Exhibit 1

## Bidding Procedures

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIPCRICKET, INC.,[1] | ) | Case No. 15-10104 (LSS) |
| | ) | |
| Debtor. | ) | |

## BIDDING PROCEDURES
## FOR THE SALE OF ASSETS

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the sale (the "Sale") of substantially all of the assets (the "Acquired Assets") of Hipcricket, Inc. (the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 case pending in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under Case No. 15-10104 (LSS). Pursuant to the Bid Procedures Order (defined below), the Bankruptcy Court has approved SITO Mobile, Ltd. as the stalking horse bidder (the "Stalking Horse Bidder") for the Acquired Assets, as set forth more fully in that certain Asset Purchase Agreement dated January 20, 2015 (as amended or modified in accordance with its terms, the "Stalking Horse Agreement").[2]

On January 21, 2015, the Debtor filed its *Motion for Order: (A) Approving Bid Procedures for the Sale of Substantially All of Debtor's Assets; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Approving Payment of Break-Up Fee and Expense Reimbursement; and (D) Granting Related Relief* [Docket No. 12] (the "Bid Procedures Motion"), on January 27, 2015, the Debtor filed the *Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f) and 363(m); and (C) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [Docket No. 59] (the "Sale Motion"). On February __, 2015, the Bankruptcy Court entered an order approving the Bidding Procedures set forth herein (the "Bid Procedures Order"). The Bid Procedures Order also set __:__ .m. (prevailing Eastern Time) on _____, 2015 as the date the Bankruptcy Court will conduct a sale hearing (the "Sale Hearing"). At the Sale Hearing, the Debtor shall seek entry of an order from the Bankruptcy Court authorizing and approving the sale of the Assets to the Stalking Horse Bidder or another Qualified Bidder (as defined below) that the Debtor determines to have made the highest or best offer for the Acquired Assets (the "Successful Bidder").

---

[1] The last four digits of the Debtor's tax identification number are 2076. The location of the Debtor's headquarters and the service address for the Debtor is 110 110th Avenue NE. Suite 410, Bellevue, WA 98004.

[2] The Agreement, without schedules and exhibits, is attached as Exhibit A to the Bid Procedures Motion and Sale Motion. All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

### Assets to Be Sold

The Debtor seeks to sell substantially all of its assets in their entirety as a going concern. Notwithstanding the foregoing, however, the Debtor may consider offers for all of the Acquired Assets or for portions thereof in the Debtor's discretion and upon consultation with the Official Committee of Unsecured Creditors (the "Committee") appointed in the Debtor's chapter 11 case. Except as otherwise provided in the Agreement or another Successful Bidder's purchase agreement all of the Debtor's right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of any Liens, Claims, Interests and Encumbrances (collectively, the "Liens, Claims and Encumbrances") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Encumbrances to attach to the net proceeds of the sale of the Acquired Assets with the same validity and priority as such Liens, Claims and Encumbrances applied against the Acquired Assets. The Debtor will evaluate all bids, in its sole discretion and upon consultation with the Committee, to determine which bid constitutes the highest or best offer for the Acquired Assets.

### The Bidding Process

The Debtor and its advisors shall in accordance with the provisions of these Bidding Procedures and the Bid Procedures Order (i) determine whether any person is a Qualified Bidder (as defined below) in accordance with the criteria set forth herein, (ii) coordinate the efforts of Qualified Bidders in conducting their due diligence investigations as set forth herein, (iii) receive offers from Qualified Bidders, and (iv) negotiate any offers made to purchase the Acquired Assets (collectively, the "Bidding Process").

### Participation Requirements

In order to be a Qualified Bidder, any party that may be interested in the Acquired Assets (a "Potential Bidder") must deliver the following to the Debtor at the addresses specified below (unless a particular document has been previously delivered to the Debtor) not later than five (5) days before the Bid Deadline (defined below) (the "Participation Requirements"):

i. An executed confidentiality agreement ("Confidentiality Agreement") in form and substance acceptable to the Debtor, which Confidentiality Agreement shall not be less restrictive than the confidentiality agreement entered into with the Stalking Horse Bidder (unless such Confidentiality Agreement was executed prior to the Petition Date);

ii. A statement of Potential Bidder identifying the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated transaction;

iii. Written disclosure of any connections or agreements with the Debtor, the Stalking Horse Bidder, any other known Potential Bidder or Qualified Bidder, and/or any officer, director, manager or direct or indirect equity security holder of the Debtor; and

iv. Solely to the Debtor, information sufficient to allow the Debtor to determine that the Potential Bidder is reasonably likely to close on the Sale in a timely manner if selected as the Successful Bidder (as defined below).

A "Qualified Bidder" is a Potential Bidder who meets the Participation Requirements and submits a Qualified Bid (defined below) by the Bid Deadline; provided, that the Stalking Horse Bidder shall be deemed a Qualified Bidder.

## Due Diligence

Only Potential Bidders that meet the Participation Requirements are eligible to receive due diligence access and/or certain non-public information. The Debtor may choose to restrict access to certain information that is competitively sensitive or privileged as to any Potential Bidder. If the Debtor, in consultation with the Committee, determines that a Potential Bidder no longer meets the Participation Requirements, then such Potential Bidder's access to due diligence or other non-public information shall terminate. Except as set forth in any definitive purchase agreement (including the Stalking Horse Agreement), the Debtor is not responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders or Qualified Bidders in connection with the sale of the Acquired Assets.

The Debtor will afford any Potential Bidder that meets the Participation Requirements the time and opportunity to conduct reasonable due diligence; provided, however, that the Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline. The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.

## Bid Deadline

A Potential Bidder that meets the Participation Requirements and desires to make a bid shall deliver written copies of its bid and the Required Bid Materials (defined below) to (i) the Debtor, Hipcricket, Inc. c/o Todd Wilson, Chief Executive Officer, 110 110th Avenue NE, Suite 410, Bellevue, Washington 98005, facsimile: 425-449-4286; (ii) Debtor's counsel, Pachulski Stang Ziehl & Street, 17th Floor, Wilmington, Delaware 19899, Attn: Jamie O'Neill, joneill@pszjlaw.com; Pachulski Jones Stang Ziehl & Jones LLP, 919 North Market, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067, Attn: Ira Kharasch and Linda Cantor, ikharasch@pszjlaw.com and lcantor@pszjlaw.com; and (iii) investment banker to the Debtor, Canaccord Genuity, 350 Madison Ave., New York, New York 10017, Attn: Geoffrey Richards, grichards@canaccordgenuity.com, in each case not later than 4:00 p.m. (prevailing Eastern Time) on _____, 2015 (the "Bid Deadline"). Upon receipt of the Required Bid Materials by the Debtor from any Potential Bidder, the Debtor shall promptly provide a copy of such Required Bid Materials to the Committee and no later than twenty-four (24) hours after receipt provide such Required Bid Materials to the Stalking Horse Bidder.

**Bid Requirements**

A Qualified Bid, other than the Stalking Horse Bid, shall be in writing, include the information and documents set forth below (the "Required Bid Materials"), and meet the following conditions:

i. State that that the Potential Bidder is prepared to enter into a legally binding purchase agreement for the acquisition of the Acquired Assets on terms and conditions no less favorable to the Debtor than the terms and conditions in the Stalking Horse Bid (as determined by the Debtor in its business judgment and taking into account the Bid Protections (as defined below)).

ii. Include a clean and duly executed binding asset purchase agreement (the "Marked Purchase Agreement") reflecting any variations from the Stalking Horse Agreement (including the exhibits and schedules thereto).

iii. Provide for higher or otherwise better consideration than is included in the Stalking Horse Bid by providing value of not less than the sum of (A) the Purchase Price set forth in section 3.1 of the Stalking Horse Agreement, plus (B) $325,000 (on account of the Break-Up Fee and Expense Reimbursement), plus (C) the assumption of the Assumed Liabilities under the Stalking Horse Agreement plus (D) an initial bid increment of $50,000 (the "Minimum Overbid Amount") in cash. In the event a bid provides for a purchase of less than substantially all of the Debtor's assets, the Debtor, in consultation with the Committee, shall have the right to adjust the overbid requirements set forth above to reflect the limited subset of Acquired Assets. For the avoidance of doubt, the sale of a portion of the Acquired Assets shall not affect the amount of the Break-Up Fee and Expense Reimbursement owed to the Stalking Horse Bidder.

iv. Provide for a purchase of all or substantially all of the Acquired Assets, provided however, the Debtor may consider offers for portions thereof in the Debtor's discretion and upon consultation with the Official Committee. For the avoidance of doubt, the sale of a portion of the Acquired Assets shall not affect the amount of the Break-Up Fee and Expense Reimbursement owed to the Stalking Horse Bidder.

v. Include a letter stating and agreeing that the offer is irrevocable until the earlier of (i) the second business day after the Acquired Assets have been sold pursuant to the closing of the sale or sales or (ii) up to and including the close of business on the date that is three (3) Business Days after the Termination Date of the applicable asset purchase agreement, and that such offer will serve as a Backup Bid (as defined below).

vi. Provide (a) a commitment to close within the same (or shorter) time period set forth in the Stalking Horse Agreement; (b) a representation that the Potential Bidder will, if applicable, (1) make all necessary filings under any applicable regulatory filing, and pay the fees associated with such filings and (2) submit all

        necessary regulatory filings within the same (or shorter) time period, if any, set forth in the Stalking Horse Agreement.

vii.    Be accompanied by a cash deposit in the amount of ten percent (10%) of the purchase price provided in the bid, in the form of a wire transfer, certified check or such other form acceptable to the Debtor (the "Bid Deposit"), which shall be placed in an escrow account or other segregated account acceptable to the Debtor (the "Escrow Account").

viii.    Include a representation of the Potential Bidder and written evidence acceptable to the Debtor that the Potential Bidder has the financial wherewithal to consummate the proposed transaction, provided that if a bid is based partly or completely on financing, (provided such financing shall not be a condition to Closing) written evidence of the commitment for financing and the appropriate contact information for such financing source must be provided. The financial information shall demonstrate to the Debtor's satisfaction that such Potential Bidder has the wherewithal to provide the adequate assurance of future performance required under section 365 of the Bankruptcy Code.

ix.    The bid shall not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, termination or similar type of fee or payment, and shall include an acknowledgement and representation of the Potential Bidder that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Acquired Assets, the financial performance of the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the Marked Agreement.

x.    The bid shall not contain any due diligence, financing, or regulatory contingencies of any kind (other than a condition that any applicable waiting period under any regulatory agency (if applicable) shall have expired or been terminated), though the bid may be subject to the satisfaction of specific conditions in all material respects at Closing, which conditions shall be no less favorable to the Debtor than those contained in the Stalking Horse Agreement.

xi.    The bid shall fully disclose the identity of each entity that will be bidding for the Acquired Assets or otherwise participating in connection with such bid, and the complete terms of any such participation.

xii.    The bid shall state that the offering party consents to the core jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Auction and the construction and enforcement of the Potential Bidder's contemplated transaction documents.

xiii. The bid shall provide that the Potential Bidder shall be bound as a "Backup Bidder" as provided below.

xiv. The bid shall include evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the submitted purchase agreement of the bidder.

xv. Be accompanied by a list of any executory contracts or unexpired leases that are to be assumed and/or assigned under such bid to the extent such list is not included in the Marked Agreement.

xvi. Set forth the anticipated timeframe for consummating the proposed transactions.

xvii. Include a written acknowledgment that such Potential Bidder agrees to the terms of the Bidding Procedures.

xviii. Provide for a closing date which shall be no later than 15 days after the date of the Sale Hearing.

A bid received from a Potential Bidder that meets the Participation Requirements, includes all of the Required Bid Materials and otherwise meets the conditions set forth above to the satisfaction of the Debtor in its discretion, and is received by the Bid Deadline is a "Qualified Bid." A Potential Bidder submitting a Qualified Bid shall be a "Qualified Bidder". Notwithstanding the foregoing, the Stalking Horse Bid will be a Qualified Bid. The Debtor reserves the right, in consultation with the Committee, to determine the value of any Qualified Bid, and which Qualified Bid constitutes the highest or best offer (subject to Bankruptcy Court approval). The Debtor shall notify the Stalking Horse Bidder within 24 hours after the Bid Deadline if one or more Qualified Bids are received and the identity of the bidders making any such Qualified Bids shall provide the Stalking Horse Bidder with a copy of any Marked Agreement and all other Required Bid Materials constituting a Qualified Bid.

### Bid Protections for Stalking Horse Bidder

Recognizing the Stalking Horse Bidder's expenditure of time, energy and resources, the Debtor has agreed to provide certain bidding protections to the Stalking Horse Bidder. As a result, the Debtor has agreed, subject to the terms of the Stalking Horse Agreement, to provide the Stalking Horse Bidder with the following: (i) a Break-Up Fee in the amount of $225,000, and (ii) Expense Reimbursement in the amount of $100,000 (collectively, the "Bid Protections"). The Bid Protections shall be payable to the Stalking Horse Bidder pursuant to the terms and conditions of the Stalking Horse Agreement. The Stalking Horse Bidder shall be permitted to credit bid the Break-Up Fee and Expense Reimbursement in each round of bidding.

In addition, additional bid increments shall be in the amount of $50,000 (the "Minimum Bid Increment") shall after the initial bid increment.

### Backup Bidder

Upon a determination by the Debtor, in consultation with the Committee, that the Stalking Horse Bidder or other Successful Bidder either fails to consummate the purchase of the Acquired Assets pursuant to its Marked Agreement (or the Stalking Horse Agreement in the case of the Stalking Horse Bidder) on or before the Closing Deadline, breaches its Marked Agreement (or the Stalking Horse Agreement in the case of the Stalking Horse Bidder), or otherwise fails to perform, the Debtor may, without further order of the Court, deem such Stalking Horse Bidder or Successful Bidder a "Defaulting Purchaser". In such event, the Debtor will be authorized, but not required, to consummate a sale transaction with the party (the "Backup Bidder") submitting the next highest and best Qualified Bid (the "Backup Bid") on the terms and conditions set forth in the Backup Bid without further order of the Court (the "Backup Purchase"). On an as-needed basis, the Debtor will determine an alternative closing deadline for the consummation of the Backup Purchase; provided, that such alternative closing deadline shall be no later than April 3, 2015. Stalking Horse Bidder consents to serve as a Backup Bidder.

The Debtor shall be entitled to (i) retain the Deposit of the Defaulting Purchaser as part of its damages resulting from the breach or failure to perform by the Defaulting Purchaser and (ii) seek all available damages from such Defaulting Buyer occurring as a result of such Defaulting Purchaser's failure to perform, up to the same damage amounts provided under the Agreement (if any).

**No Qualified Bids**

If no Qualified Bid is submitted by the Bid Deadline other than the Stalking Horse Bid, no Qualified Bid is deemed by the Debtor as a higher or otherwise better bid than the Stalking Horse Bid or all Qualified Bids other than the Stalking Horse Bid that have been submitted have been withdrawn by the Bid Deadline or prior to the Auction Date (defined below), then the Debtor shall cancel the Auction and accept the Stalking Horse Bid (in which case, the Successful Bid shall be the Stalking Horse Bid, and the Successful Bidder shall be the Stalking Horse Bidder).

**The Auction**

If a Qualified Bid other than that submitted by the Stalking Horse Bidder has been received by the Debtor by the Bid Deadline, the Debtor may conduct an auction (the "Auction") of the Acquired Assets. The Debtor shall provide the Qualified Bidders that submitted Qualified Bids and the Stalking Horse Bidder with a copy of the asset purchase agreement(s) relating to the other Qualified Bids at least twenty-four (24) hours prior to the Auction. The Auction shall be conducted at the offices of Pachulski, Stang, Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017-2024 (the "Auction Site") at 10:00 a.m. (prevailing Eastern Time) on _____, 2015 (the "Auction Date"), or upon the consent of the Stalking Horse Bidder, at such other place and time as the Debtor shall notify all Qualified Bidders including the Stalking Horse Bidder who have submitted Qualified Bids and expressed their intent to participate in the Auction as set forth above.

The Auction shall be governed by the following procedures:

i. All Qualified Bids made at the Auction shall be made and received on an open basis, and all material terms of each subsequent bid shall be fully disclosed to all other Qualified Bidders including the Stalking Horse Bidder. The Debtor shall maintain a transcript of all bids made and announced at the Auction, including the opening bid, all subsequent bids, and the Successful Bid.

ii. Except with respect to subsections (v) and (vi) below, the Debtor, may, in consultation with the Committee, conduct the Auction, in the manner that it determines, in its business judgment and may adopt rules for the Auction at the Auction that, in the Debtor's business judgment will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures Order or the Stalking Horse Agreement. All such rules will provide that: (i) the Auction procedures must be fair and open, and not intended to cause any participating Qualified Bidder (including the Stalking Horse Bidder) to be disadvantaged in any material way as compared to any other participating Qualified Bidder, and (ii) all participating Qualified Bidders (including the Stalking Horse Bidder) shall be entitled to be present for all bidding with the understanding that the true identity of each bidder (i.e., the principals submitting each bid) shall be fully disclosed to all other participating Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other bidders throughout the entire Auction. Each bid by a Qualified Bidder at the Auction, if not inconsistent with the provisions of these Bid Procedures, shall be deemed to constitute a Qualified Bid.

iii. The Debtor will arrange for the actual bidding at the Auction to be transcribed.

iv. Each Qualified Bidder (including the Stalking Horse Bidder) participating in the Auction will be expected to confirm at the Auction that it has not engaged in any collusion regarding these Bidding Procedures with any other Qualified Bidder, the Auction or any proposed transaction relating to the Acquired Assets.

v. At the Auction, the first bid for the Acquired Assets other than the offer of Stalking Horse Bidder set forth in the Stalking Horse Agreement shall be considered only if its value to the Debtor's estate exceeds the purchase price set forth in the Stalking Horse Agreement by a minimum of (i) the amount that would be owed if the Debtors would be required to pay the Bid Protections to the Stalking Horse Bidder plus (ii) cash consideration in an amount not less than $50,000. Subsequently, bidding will continue in minimum increments of at least $50,000, with the specific increments for each round of bidding to be announced on the record at the Auction.

vi. The Stalking Horse Bidder shall be permitted to credit bid the Bid Protections in each round of bidding.

vii. All Qualified Bidders (including the Stalking Horse Bidder) shall have the right to, at any time, request that the Debtor announce, subject to any potential new bids, the then current highest or best bid and, to the extent requested by any Qualified Bidder, use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the Debtor's announcement of the then current highest or best bid.

viii. Upon conclusion of the bidding, the Auction shall be closed.

ix. Representatives of (1) the Debtor, (2) the Committee, (3) the Stalking Horse Bidder and (4) other Qualified Bidders, shall be entitled to be present at the Auction. Creditors of the Debtor may attend the Auction pursuant to Local Rule 6004(c)(ii)(C). Creditors wishing to attend the Auction should provide written notice of intent to attend to the Debtor no later than 12:00 p.m. on the day preceding the Auction.

x. Only the Stalking Horse Bidder and other Qualified Bidders shall be entitled to make any subsequent bids at the Auction. Pursuant to Local Rule 6004-1 (c)(ii)(B), the Stalking Horse Bidder and each Qualified Bidder participating at the auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

xi. The Auction shall continue until the Debtor determines, and subject to Bankruptcy Court approval, that the Debtor has received (a) the highest or otherwise best Qualified Bid or Bids for the Acquired Assets (as determined by the Debtor in consultation with the Committee) from among the Qualified Bidders (including the Stalking Horse Bidder) submitted at the Auction (the "<u>Successful Bid</u>"), and (b) the Backup Bid.

The Debtor, in consultation with the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; <u>provided</u> that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith and provided no substantive changes shall be made without the prior approval of the Stalking Horse Bidder. After closing of the Auction, but prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made. Bids made after the close of the Auction shall not be considered by the Debtor. At the Sale Hearing, the Debtor shall present the Successful Bid(s) and Backup Bid(s) to the Bankruptcy Court for approval.

**<u>Break-Up Fee and Expense Reimbursement</u>**

To compensate the Stalking Horse Bidder (i) for performing the substantial due diligence and incurring the expenses necessary and (ii) entering into the Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process and (iii) to provide an incentive to participate in a competitive process, subject to the terms of the Agreement, the Debtor has agreed, pursuant to the Agreement, to pay the Stalking Horse Bidder

a break-up fee in the amount of $225,000 (the "Break-Up Fee") and expense reimbursement up to $100,000 (the "Expense Reimbursement"), subject to the terms and conditions set forth in the Agreement. The Debtor will take into account the Break-Up Fee and Expense Reimbursement in each round of bidding.

The Break-Up Fee and Expense Reimbursement were material inducements for, and conditions of, the Stalking Horse Bidder's entry into the Agreement. The Break-Up Fee and Expense Reimbursement shall be payable as set forth herein, in the Bid Procedures Order, and in the Agreement.

### Acceptance of Qualified Bids

The Debtor shall sell the Acquired Assets or any portion thereof to any Successful Bidder (or the party who submitted the Backup Bid ("Backup Bidder") should such bidder become the Successful Bidder as described below) only upon the approval of such bidder's bid by the Bankruptcy Court after the Sale Hearing. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the Qualified Bid. The Debtor will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

### Sale Hearing

A Sale Hearing is scheduled for __:__ __.m. (prevailing Eastern Time) on _____, 2015, in the Bankruptcy Court. Objections to the Sale must be filed on or before _____, 2015 at 4:00 p.m. (prevailing Eastern Time). Following the approval of the sale of all or substantially all of the Acquired Assets to any Successful Bidder(s) at the Sale Hearing, if the Successful Bidder(s) fails to consummate an approved sale within the time period set forth in the applicable asset purchase agreement, the Debtor shall be authorized, but not required, to deem the Backup Bid(s), as identified at the Sale Hearing, the Successful Bid(s), and the Debtor shall be authorized to consummate the sale with the Backup Bidder(s) submitting such bid(s) without further order of the Bankruptcy Court. The Backup Bid(s) shall remain open until thirty (30) days after conclusion of the Auction; provided, that, nothing herein shall require the Stalking Horse Bid to remain open past any Termination Date contained in the Stalking Horse Agreement.

### Return of Bid Deposits

The Bid Deposits shall not be subject to the claims, liens, security interests, or encumbrances of Debtor's creditors. The Bid Deposits of Qualified Bidders (others than the Stalking Horse Bidder) shall be disbursed from the Escrow Account only as follows: (i) if the Qualified Bidder becomes the Successful Bidder, its Bid Deposit will be released to the Debtor or applied as provided under any asset purchase agreement between the Debtor and such Successful Bidder; and (ii) if such Qualified Bidder is not the Successful Bidder at the Auction, then its Bid Deposit shall treated as set forth below.

Other than the Bid Deposits of the Successful Bidder and the Backup Bidder(s), Bid Deposits of all other Qualified Bidders shall be returned as soon as practicable after entry of the order approving the sale of the Acquired Assets. In addition to any other remedies available to

the Debtor, the Debtor may retain the Bid Deposit of any Qualified Bidder who breaches or fails to perform any of its obligations pursuant to these Bidding Procedures or its Qualified Bid.

**"As Is, Where Is"**

The sale of the Acquired Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or its estate except to the extent set forth in the Stalking Horse Agreement or the purchase agreement of another Successful Bidder.

**Free and Clear of Liens**

To the extent provided in the Agreement or another Successful Bidder's asset purchase agreement and pursuant to the order entered by the Bankruptcy Court approving the sale, all of the Debtor's right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of Liens, Claims and Encumbrances in accordance with Bankruptcy Code § 363(f), with such Liens, Claims and Encumbrances to attach to the net proceeds of the sale of the Acquired Assets.

**Modifications**

Notwithstanding anything to the contrary provided herein, the Debtor, in consultation with the Committee, shall have the right to amend the rules set forth herein for the bidding/auction process (including, without limitation, extending the Bid Deadline) or impose such other terms and conditions for the bidding/auction process which the Debtor determines, in its business judgment, will better promote the goals of the bidding/auction process and the discharge of the Debtor's fiduciary duties and which are not inconsistent with any Bankruptcy Court order, including the Bid Procedures Order; provided, however, that nothing in these Bidding Procedures should be construed to permit the Debtor to (i) accept any Qualified Bid that does not, subject to the terms hereof, equal or exceed the Minimum Overbid Amount, (ii) impose any terms and conditions upon the Stalking Horse Bidder that are contradictory to or in breach of the terms of the Agreement, or (iii) amend the Bid Procedures in a manner that would substantively impact the Stalking Horse Bidder without prior approval of the Stalking Horse Bidder.

**Miscellaneous**

The Auction and Bidding Procedures are solely for the benefit of the Debtor's estate and the Stalking Horse Bidder, and nothing contained in the Bid Procedures Order or Bidding Procedures shall create any rights in any other person or bidder (including, without limitation, rights as third party beneficiaries or otherwise) other than the rights expressly granted to a Successful Bidder under the Bid Procedures Order.

Except as provided in the Bid Procedures Order and Bidding Procedures, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Bid Procedures Order.