IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HIPCRICKET, INC.,[1]<br><br>　　　　　　　　Debtor. | Case No. 15-10104 (LSS)<br><br>Chapter 11<br><br>**Hearing Date: [TBD]**<br>**Objection Deadline: [TBD]** |

**MOTION OF DEBTOR FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN
REPLACEMENT POSTPETITION SECURED FINANCING; (B) UTILIZE
CASH COLLATERAL; AND (C) PAY CERTAIN RELATED FEES AND CHARGES;
(II) SCHEDULING A FINAL HEARING; AND (III) GRANTING RELATED RELIEF**

Hipcricket, Inc., the above-captioned debtor and debtor in possession (the "**Debtor**") files

this motion (the "**Motion**") for the entry of an emergency interim order (the "**Interim Order**"),

substantially in the form attached hereto as **Exhibit A**, and a final order (the "**Final Order**" and,

together with the Interim Order, the "**Orders**") (a) authorizing the Debtor to obtain replacement

postpetition financing (the "**ESW DIP Facility**") and continue use of cash collateral; (b)

granting liens and superpriority claims with respect to such replacement postpetition financing;

(c) modifying the automatic stay to the extent necessary to effectuate the terms and conditions of

this Interim Order; (d) prescribing the form and manner of notice and setting the time for the

final hearing on this Motion (the "**Final Hearing**"); and (e) granting related relief.  In further

support of this Motion, the Debtor respectfully states as follows.[2]

**JURISDICTION AND VENUE**

1.　　　The United States Bankruptcy Court for the District of Delaware (the "**Court**")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[1]　　The last four digits of the Debtor's tax identification number are 2076. The location of the Debtor's headquarters and the service address for the Debtor is 110 110th Avenue NE, Suite 410, Bellevue, WA 98004.

[2]　　The facts and circumstances supporting this Motion are set forth, in part, in the *Declaration of Todd E. Wilson in Support of First Day Motions* (the "Wilson Declaration") [Docket No. 2].

*Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, and 507 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2002-1(b) and 4001-2.

## PRELIMINARY STATEMENT

4.  The Debtor requires immediate access to liquidity to (a) repay its prior postpetition financing facility, which terminated on March 9, 2015 (the "**SITO DIP Termination Date**"); (b) fund ordinary course working capital needs and chapter 11 administrative expenses; and (c) effectuate a restructuring of the Debtor via a plan of reorganization.

5.  On January 20, 2015, the Debtor filed this chapter 11 case with a postpetition financing facility (the "**SITO DIP Facility**") sponsored by the Debtor's stalking horse bidder, SITO Mobile, Ltd. ("**SITO**").

2

6.    On February 11, 2015, the Court entered an order approving the SITO DIP Facility (the "**SITO DIP Order**").  The Debtor also entered into that certain Senior Secured Superpriority Debtor-in-Possession Promissory Note dated as of January 23, 2015 with SITO (the "**SITO DIP Note**").  As contemplated, the Debtor has drawn approximately $3.4 million from the SITO DIP Facility (a) to repay borrowings under a prepetition accounts receivable credit facility, (b) fund its day-to-day working capital needs, and (c) fund chapter 11 administrative expenses in an effort to consummate a sale of the Debtor's assets.

7.    On March 6, 2015, the Debtor held an auction, pursuant to the bid procedures approved in this case.  At the auction, the Debtor selected a bid submitted by ESW Capital, LLC ("**ESW Capital**" or "**DIP Lender**"), that contemplates a plan of reorganization (the "**Plan**"), as the highest and best offer (the "**ESW Bid**").  Pursuant to the *Order Authorizing ESW Capital, LLC as the Successful Bidder and Plan Sponsor* [Docket No. 221] entered on March 13, 2015, the Court declared the ESW Bid the highest and best offer and authorized ESW Capital to be the joint sponsor of the Plan.

8.    Pursuant to an agreement made on the record at a hearing before the Court on February 27, 2015, SITO's obligation to fund the SITO DIP Facility terminated on March 9, 2015. The ESW Bid contemplates that a portion of its postpetition financing facility will be used to immediately repay the SITO DIP Facility and to provide financing sufficient to fund the Debtor's operations and its administrative costs, pursuant to a mutually agreeable budget pending confirmation of the Plan, in an amount not to exceed $4,500,000 in the aggregate.

9.    Accordingly, this Motion seeks approval of the ESW DIP Facility to (a) repay borrowings under the SITO DIP Facility and (b) fund the Debtor's day-to-day working capital needs through confirmation of the Plan.

DOCS_SF:87244.6

10.     The ESW DIP Facility represents the best source of financing available to the Debtor under the circumstances, and was negotiated extensively at arm's length with the DIP Lender, resulting in terms that the Debtor submits are reasonable and appropriate to meet the Debtor's financing needs during the chapter 11 case. The Debtor has not been able to obtain an alternative financing commitment on terms better than proposed by the DIP Lender. The ESW DIP Facility provides financing on terms substantially similar to the SITO DIP Facility. Specifically the ESW DIP Facility provides:

  a.  a line of credit, up to a maximum of $4.5 million (the "**Stated Principal Amount**"), secured by first priority liens on any and all of the Debtor's assets upon which SITO was granted liens pursuant to the SITO DIP and junior liens on the Debtor's assets encumbered by Permitted Liens;

  b.  borrowings and disbursements to be made pursuant to the terms of the budget attached to the DIP Note as **Exhibit A** (as may be modified, the "**Budget**"), but under no circumstance shall be for an amount in excess of the Stated Principal Amount.

## TERMS AND CONDITIONS OF THE DIP FACILITY

11.     The following chart contains a summary of the essential terms of the proposed ESW DIP Facility, together with references to the applicable sections of the relevant source documents, in accordance with Bankruptcy Rule 4001(b)(1)(B) and (c)(1)(B) and Local Rule 4001-2.[3]

| Rule Citation | Summary of Material Terms |
|---|---|
| **Borrower**<br>Bankruptcy Rule 4001(c)(1)(B) | Hipcricket, Inc. *See* Interim Order, Preamble; DIP Note (attached as Exhibit A to Interim Order), Preamble. |

---

[3]     The summaries contained in this Motion are qualified in their entirety by the provisions of the documents referenced. To the extent anything in this Motion is inconsistent with such documents, the terms of the applicable documents shall control. Capitalized terms used in this summary chart but not otherwise defined shall have the meanings ascribed to them in the ESW DIP Documents.

4

| Rule Citation | Summary of Material Terms |
|---|---|
| **DIP Lender**<br><br>Bankruptcy Rule 4001(c)(1)(B) | ESW Capital, LLC, the Successful Bidder for the right to be the plan sponsor of a plan of reorganization to be co-proposed with the Debtor, on the terms and conditions set forth in the ESW Bid. *See* Interim Order at p. 2, clause i; DIP Note, Preamble. |
| **Commitment**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | The DIP Facility shall include loans to be advanced and made available to the Debtor in the aggregate maximum principal amount of $4,500,000. *See* Interim Order, ¶ 3; DIP Note, § 1. |
| **Term**<br><br>Bankruptcy Rule 4001(b)(l)(B)(iii), 4001(c)(1)(B)<br><br>Local 4001-2(a)(ii) | The Obligations shall be due and payable on the earliest to occur of (i) the date a plan of reorganization goes effective; (ii) June 10, 2015; (iii) upon acceleration of the DIP Note pursuant to the terms thereof; and (iv) the Termination Date. *See* Interim Order, ¶ 13; DIP Note, § 2(f). |
| **Use of DIP Facility and Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(l)(B)(ii)<br><br>Local Rule 4001-2(a)(ii) | Unless otherwise agreed to by the DIP Lender, the Debtor shall use the proceeds of the Loans solely for operating working capital purposes and chapter 11 administrative costs in the amounts and otherwise in accordance with and for the purposes provided for in the Budget. *See* DIP Note, § 3(a).<br><br>No borrowings, Cash Collateral, DIP Collateral, DIP Indebtedness, or proceeds of the DIP Financing or any part of the Carve-Out may be used for any of the following without the prior written consent of the DIP Lender: (a) to object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, or the liens or claims granted under the Interim Order, the DIP Documents, (b) investigate any claims, defenses or causes of action that may exist under law, equity, or otherwise against the DIP Lender or its respective agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Documents or the Interim Order, (d) seek to modify any of the rights granted to the DIP Lender hereunder or under the DIP Documents, or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted to be paid under the DIP Documents. *See* Interim Order, ¶ 24. |

| Rule Citation | Summary of Material Terms |
|---|---|
| **Entities with Interests in Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(l)(B)(i) | SITO Mobile, Ltd.<br><br>Pursuant to the DIP Documents, including the Budget, all valid obligations of the Debtor owed to SITO Mobile, Ltd. will be paid with ESW DIP Facility proceeds immediately after the entry of the Interim Order. *See* Interim Order, ¶ 7; DIP Note, ¶ 1(a)(i). |
| **Fees**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | None. *See* Interim Order, ¶ 10. |
| **Interest Rates**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | 13% per annum, plus an additional 2% upon default. *See* Interim Order, ¶ 11; DIP Note, § 2(a) & (b). |
| **Conditions of Borrowing**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001- 2(a)(ii) | The obligation of the DIP Lender to make advances is subject to customary borrowing conditions and certain plan milestones, including confirming a plan by June 3, 2015. *See* DIP Note, § 1(c). |
| **Budget**<br><br>Bankruptcy Rule 4001 (c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | A budget mutually agreed upon by the Debtor and DIP Lender, in an amount not more than $4,500,000, including an amount sufficient to pay off the outstanding amount of the SITO DIP Obligations. *See* Budget attached to the DIP Note; Interim Order, ¶ 8. |
| **Reporting Information**<br><br>Bankruptcy Rule 4001(c)(l)(B)<br><br>Local Rule 4001- 2(a)(ii) | Standard or ordinary reporting requirements including, without limitation, Budget related information; providing copies of, or access to, Debtor's books and records and other information, and discussing with the DIP Lender the business and other matters relating to the Debtor; and providing notice of certain litigation and other proceedings. *See* DIP Note, §§ 1(b), 3. |

| Rule Citation | Summary of Material Terms |
|---|---|
| **Variance Covenant**<br><br>Bankruptcy Rule 4001(c)(l)(B)<br><br>Local Rule 4001- 2(a)(ii) | Notwithstanding the then applicable Budget, the Debtor may exceed the budgeted amount for any line item (other than professional fees) during any weekly budget period by 10%, excluding any timing difference resulting from the roll-forward of budgeted expenses from previous weekly periods that were unpaid and which may be rolled forward to subsequent periods, subject to certain other terms and conditions. *See* DIP Note, § 3(a). |
| **Chapter 11 Milestones**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001- 2(a)(ii) | The Debtor shall obtain final orders from the Bankruptcy Court (a) approving the ESW DIP Facility on or before April 10, 2015; and (b) confirming a plan by June 3, 2015. *See* ESW Bid; Interim Order, ¶ 11(xii); DIP Note, § 4(a)(xiii). |
| **Liens and Priorities**<br><br>Bankruptcy Rule 4001(c)(l)(B)(i)<br><br>Local Rule 4001- 2(a)(i)(D) and (G), 4001- 2(a)(ii) | Subject and subordinate to the Carve-Out and to any amounts that were paid to Estate Professionals and the Expense Reserve Account pursuant to the SITO DIP Order, in all respects, all obligations of the Debtor under the DIP Facility shall be (i) pursuant to section 364(c)(1) of the Bankruptcy Code, afforded superpriority allowed administrative expense claim status in the chapter 11 case; (ii) secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by a first priority lien on all of the Debtor's unencumbered assets (except the Debtor's claims and avoidance actions); and (iii) secured, pursuant to section 364(c)(3), a second priority lien on all of the Debtor's assets encumbered by valid Permitted Liens, provided that the DIP Liens shall not be subject or subordinate to (1) any lien that is avoided and preserved for the benefit of the Debtor and estate under section 551, (2) any liens arising after the Petition Date including any liens granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor to the extent permitted by applicable non-bankruptcy law, or (3) any intercompany or affiliate liens of the Debtor. *See* Interim Order, ¶¶ 14, 18; DIP Note, § 5. |

| Rule Citation | Summary of Material Terms |
|---|---|
| **Carve Out**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(f) | The liens and claims of or granted to the DIP Lender shall be subject and subordinate to the payment of the following fees and claims (collectively, the "**Carve-Out**"): (a) all allowed fees and expenses of attorneys, investment bankers and financial advisors (collectively, the "**Estate Professionals**") (i) employed by the Debtor which are accrued prior to the Termination Date to the extent set forth in (and limited by) the Budget and (ii) employed by the Committee and any disbursement of any member of the Committee which, in each case, are accrued prior to the Termination Date (A) to the extent set forth in (and limited by) the Budget plus (B) an additional $200,000; provided, that following the Termination Date, the Carve-Out shall be limited to the allowed fees and disbursements of Estate Professionals incurred or accrued after such Termination Date by the Estate Professionals in an aggregate amount not to exceed $100,000 plus the fees and expenses of Estate Professionals incurred or accrued prior to the Termination Date to the extent provided in clauses (i) and (ii) above, and as reduced in accordance with Paragraph 16 of the Interim Order, and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court or to the Debtor's appointed claims agent. *See* Interim Order, ¶ 15.<br><br>Following entry of the Interim Order and on a weekly basis thereafter, the Debtor shall be authorized to transfer funds to the Pachulski Stang Ziehl & Jones LLP Client Trust Account (the "**Expense Reserve Account**") in the amounts set forth in the Budget for fees and expenses of the Estate Professionals. Such funds shall be held in the Expense Reserve Account for the benefit of the Estate Professionals, respectively, to be applied pro rata to the fees and expenses of such Estate Professionals approved for payment pursuant to one or more orders of the Bankruptcy Court (the "**Segregated Funds**"), provided, however, that for the avoidance of doubt, fees and expenses payable to the Estate Professionals that were incurred after ESW Capital becomes the DIP Lender, shall be paid first out of the Expense Reserve Account, and shall reduce, on a dollar for dollar basis, the obligation to fund the Carve-Out, and provided further that there shall be no requirement that any amounts in respect of any success fees that may be earned by any Estate Professional be deposited into the Expense Reserve Account. Without in any way limiting the Debtor's ability to use the Segregated Funds to pay fees payable to the Office of the United States Trustee and the Clerk of the Court and the fees and expenses of the Estate Professionals, the Segregated Funds in the Expense Reserve Account shall remain encumbered by and subject to the DIP Liens, and the Superpriority Claim, in their respective order of priority; provided, however, that such liens and claims shall be subordinate to the Carve-Out. Notwithstanding the foregoing, none of the Carve-Out, proceeds from the DIP Financing or Cash Collateral may be used (1) to investigate or challenge in any respect the validity, perfection, priority, extent or enforceability of the DIP Liens, (2) to delay, challenged or impede any rights of the DIP Lender under any of the DIP Documents, or the Final Order, or (3) to pursue any claims or causes of action of any kind against the DIP Lender. Nothing in the Interim Order shall restrict the ability of the Committee or any other party to investigate or object to a disclosure statement or a plan of reorganization, and the Carve-Out, proceeds from the DIP Financing and/or Cash Collateral may be used to pay approved fees and expenses of Estate Professionals employed by the Committee in connection therewith. *See* Interim Order, ¶ 16. |

8

| Rule Citation | Summary of Material Terms |
|---|---|
| **Events of Default**<br><br>Bankruptcy Rule 4001(c)(l)(B)<br><br>Local Rule 4001- 2(a)(ii) | Events of Default.  Usual and customary for financings of this type, including, without limitation, non-payment of principal and interest, defaults under affirmative and negative covenants and breaches of representations and warranties.  The DIP Note contains case milestones (discussed above), the failure of which to satisfy would constitute an Event of Default thereunder.  Additionally, certain actions, if taken, or pleadings, if filed, would constitute an Event of Default. *See* Interim Order ¶¶ 11-13, 22.<br><br>Remedies.  Upon the occurrence of an Event of Default and after five (5) days' notice to the Debtor, the Committee and the U.S. Trustee, if any Event of Default shall then be continuing, DIP Lender may take any of the following actions: (i) declare all or any portion of the outstanding Obligations due and payable, whereupon the same shall become due and payable without presentment, demand, protest or notice of any kind, all of which are hereby waived by Debtor; (ii) enforce all liens and security interests in the Collateral; (iii) institute proceedings to enforce payment of such Obligations; (iv) terminate the obligation of the DIP Lender to make Loans; and (v) exercise any other remedies and take any other actions available to it at law, in equity, under the DIP Note, the Bankruptcy Code, other applicable law or pursuant to the Interim Order. *See* DIP Note, § 4(b).<br><br>In addition to the foregoing, if any Event of Default shall occur and be continuing, but subject only to any required notice hereunder or under the Interim Order, the DIP Lender may exercise in addition to all other rights and remedies granted to it in the DIP Note and the Interim Order, all rights and remedies of a secured party under the UCC or other applicable law. Without limiting the generality of the foregoing, the Debtor expressly agrees that in any such event the DIP Lender, without demand of performance or other demand, advertisement or notice of any kind (except the notice required by the Interim Order or the notice specified below of time and place of public or private sale) to or upon the Debtor or any other person may collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may sell, lease, assign, give an option or options to purchase, or sell or otherwise dispose of and deliver said Collateral (or contract to do so), or any part thereof, subject to other terms as set forth in the DIP Documents *See* DIP Note, § 4(c). |

| Rule Citation | Summary of Material Terms |
|---|---|
| **Waiver / Modification of the Automatic Stay**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iv) | The automatic stay shall be modified to the extent necessary to permit the DIP Lender to retrieve, collect and apply payments and proceeds in respect of the DIP Collateral and exercise its remedies, as applicable, in accordance with the terms of the Interim Order and DIP Documents, including subject to any notice requirements set forth therein.<br><br>Notwithstanding the provisions of section 362, (i) the DIP Lender, may, at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtor's expense, any such UCC financing statements, notices of liens and security interests, mortgages, amendments to mortgages and/or other similar documents or instruments as the DIP Lender may require, and (ii) the DIP Lender, may require the Debtor to deliver to the DIP Lender, any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the Debtor is directed to cooperate and comply therewith.<br><br>*See* Interim Order, ¶¶ 9, 20. |
| **Waiver / Modification of Applicability of Non-bankruptcy Law Relating to Perfection or Enforceability of Liens**<br><br>Bankruptcy Rule 4001(c)(1)(B)(vii) | The DIP Liens shall be effective and perfected upon the date of the Interim DIP Order and without the necessity of the execution, recordation of filings by the Debtor or the DIP Lender of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender of or over any DIP Collateral. *See* Interim Order, ¶ 18.<br><br>The DIP Liens shall be deemed duly perfected and recorded under all applicable federal or state or other laws as of the date of the Interim Order, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of section 362 of the Bankruptcy Code, (i) the DIP Lender, may, at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtor's expense, any such UCC financing statements, notices of liens and security interests, mortgages, amendments to mortgages and/or other similar documents or instruments as the DIP Lender may require, and (ii) the DIP Lender, may require the Debtor to deliver to the DIP Lender, any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the Debtor is directed to cooperate and comply therewith. If the DIP Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages, amendments to mortgages or other documents or instruments with respect to such security interests and liens, or if the DIP Lender, in accordance with the DIP Documents or this Interim Order, elects to take possession of any DIP Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements, mortgages, amendments to mortgages or similar documents or instruments or taking possession shall be deemed to have been filed or recorded or taken in these cases as of the commencement of these cases but with the priorities as set forth herein. The DIP Lender may (in its sole discretion), but shall not be required to, file a certified copy of |

| Rule Citation | Summary of Material Terms |
|---|---|
| | the Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of the DIP Lender's interest in the DIP Collateral. *See* Interim Order, ¶ 19; DIP Note, § 5(e). |
| **Releases**<br><br>Bankruptcy Rule 4001(c)(1)(B)(viii) | Each stipulation, admission and agreement contained in the Interim Order, shall be binding upon the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all claims against the DIP Lender as of the date of entry of the Interim Order. Each stipulation, admission and agreement contained in the Interim Order or Final Order shall also be binding upon all other parties in interest, including, without limitation, the Committee, under all circumstances and for all purposes. *See* Interim Order, ¶ 26. |
| **Liens on Avoidance Actions**<br><br>Bankruptcy Rule 4001(c)(l)(B)(xi)<br><br>Local Rule 4001-2(a)(i)(D) | None. *See* Interim Order, ¶ 18(a). |
| **Credit Bid Rights**<br><br>Bankruptcy Rule 4001(c)(l)(B)<br><br>Local Rule 4001- 2(a)(ii) | Subject to section 363(k) of the Bankruptcy Code and entry of the Interim Order, the DIP Lender shall have the right to "credit bid" the full amount of its claims in connection with any sale of all or any portion of the Debtor's assets, including, without limitation, a sale transaction under section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code; provided, that in the event the DIP Lender is also the purchaser of the Debtor's assets or sponsor of a plan of reorganization for the Debtor and agrees to assume the DIP Financing, the DIP Financing shall not be double counted as purchase or plan consideration. *See* Interim Order, ¶ 25. |
| **No Priming or Pari Passu Liens**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001- 2(a)(ii) | No claim or lien having a priority superior to or pari passu with those granted by the Interim Order to the DIP Lender shall be granted or allowed until the occurrence of (i) the payment in full in cash or immediately available funds of all of the DIP Obligations or the application of all of the DIP Obligations to the consideration paid by the DIP Lender pursuant to the plan of reorganization contemplated by the ESW Bid, (ii) the termination or expiration of all commitments to extend credit to the Debtor under the DIP Documents, and (iii) the cash collateralization in respect of any asserted claims, demands, actions, suits, proceedings, investigations, liabilities, fines, costs, penalties, or damages for which the DIP Lender may be entitled to indemnification by the Debtor ("**Paid in Full**"). While any portion of the DIP Financing (or any refinancing thereof) or the DIP Obligations remain outstanding and |

DOCS_SF:87244.6

| Rule Citation | Summary of Material Terms |
|---|---|
| | the commitments thereunder have not been terminated, the DIP Liens shall not be (x) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Bankruptcy Code section 551 or (y) subordinated to or made pari passu with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise. *See* Interim Order ¶ 20; DIP Note, § 5(f). |

## RELIEF REQUESTED

12.    The Debtor seeks entry of the Interim Order and, where applicable, the Final Order:

a.  authorizing the Debtor to enter into the secured ESW DIP Facility, which shall include loans to be advanced and made available to the Debtor, up to a maximum of $4,500,000 (subject to the terms of the ESW DIP Documents), with up to $4,500,000 to be available upon entry of the Interim Order and satisfaction of other conditions to borrowing (with additional proceeds anticipated to be available prior to the Final Hearing, as set forth in the Budget);

b.  ordering that, subject to the Carve-Out, in all respects, all obligations of the Debtor under the ESW DIP Documents shall be:

i.  entitled to superpriority claim status under section 364(c)(1) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims now existing or hereafter arising under the Bankruptcy Code;

ii.  secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by a first priority lien on all of the Debtors' unencumbered assets (excluding avoidance actions); and

iii.  secured, pursuant to section 364(c)(3), a second priority lien on all of the Debtor's assets encumbered by valid Permitted Liens, provided that the DIP Liens shall not be subject or subordinate to (1) any lien that is avoided and preserved for the benefit of the Debtor and estate under section 551, (2) any liens arising after the Petition Date including any liens granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor to the extent permitted by applicable non-bankruptcy law, or (3) any intercompany or affiliate liens of the Debtor;

12

c.   modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order or the Final Order, as applicable;

d.   scheduling the Final Hearing to consider entry of the Final Order on or before April 10, 2015, and approving the form of notice with respect to the Final Hearing; and

e.   granting related relief.

## BACKGROUND

13.     On January 20, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its assets as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case. On January 30, 2015, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**").

### A.     The SITO DIP Facility

14.     On January 21, 2015, the Debtor filed the *Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Priority, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 11] (the "**SITO DIP Motion**").

15.     Pursuant to the SITO DIP Motion and SITO DIP Facility, the Stalking Horse Bidder (discussed below), agreed to provide postpetition financing to (a) pay off the prepetition secured amount owed to Fast Pay Partners LLC ("**Fast Pay**"), the Debtor's prepetition accounts receivable factor, (b) honor employee wages and benefits, (c) fund the Debtor's day-to-day working capital needs, and (d) pay chapter 11 administrative expenses.

13

16.     On January 23, 2015, the Court entered an order [Docket No. 43] approving the SITO DIP Motion on an interim basis.  On February 11, 2015, the Court entered an order [Docket No. 117] approving the SITO DIP Motion on a final basis.

17.     Pursuant to the SITO DIP Documents, the Debtor paid off, in full, all obligations due under that certain Financing and Security Agreement dated May 12, 2014, between the Debtor and Fast Pay.  The ESW DIP Documents and Orders do not alter any of the Committee's or Fast Pay's rights under the SITO DIP Order.

18.     Pursuant to an agreement made on the record at a hearing before the Court on February 27, 2015, SITO's obligations to provide funding under the SITO DIP Facility terminated on March 9, 2015.

### B.     The Bid Procedures and Sale Motion

19.     On January 21, 2015, the Debtor filed the *Motion for Order: (A) Approving Bid Procedures for the Sale of Substantially All of Debtor's Assets Outside the Ordinary Course of Business; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Approving Payment of a Break-up Fee and Expense Reimbursement; and (D) Granting Related Relief* [Docket No. 12], and subsequently the *Notice of Errata re: Bid Procedures* [Docket No. 58] (together, the "**Bid Procedures Motion**"), which sought approval of certain sale and bid procedures (the "**Bid Procedures**") for the sale of substantially all of the Debtor's assets (the "**Assets**").

20.     On January 27, 2015, the Debtor filed the *Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Substantially All of Debtor's Assets Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f) and 363(m); (C) Assuming and Assigning Certain Executory Contracts and*

14

*Unexpired Leases; and (D) Granting Related Relief* [Docket No. 59] (the "**Sale Motion**"). Pursuant to the Sale Motion, the Debtor sought approval of the sale of the Assets to SITO (the "**Stalking Horse Bidder**"), or to the highest and best bidder, at the auction provided for in the Bid Procedures Motion and the Bid Procedures.

21.    On February 11, 2015, the Court entered an order [Docket No. 118] (the "**Bid Procedures Order**") approving the Bid Procedures, scheduling an auction of the Assets (the "**Auction**") and scheduling a sale hearing (the "**Sale Hearing**") to consider the sale of the Assets to the Stalking Horse Bidder, or alternatively, to a party who submitted a higher and better offer for the Assets at the Auction.

C.    **The Auction**

22.    A bid was received from ESW Capital prior to the revised bid deadline of March 4, 2015 at 8:00 p.m. (Eastern Time).  Following due consideration of the ESW Bid, the Debtor and the Committee determined that the ESW Bid was a Qualified Bid (as defined in the Bid Procedures).  Accordingly, the Debtor conducted the Auction at the offices of Pachulski Stang Ziehl & Jones LLP on March 6, 2015 at 10:00 a.m. (Eastern Time).

23.    At the Auction, the Debtor, in consultation with the Committee, exercised its reasonable business judgment and determined the ESW Bid to be the highest and best offer for the Debtor's estate and is the successful bid.

24.    On March 9, 2015, the Court held the Sale Hearing to determine the highest and best offer for the Debtor's estate.  Pursuant to the *Order Authorizing ESW Capital, LLC as the Successful Bidder and Plan Sponsor* [Docket No. 221] entered on March 13, 2015, the Court declared the ESW Bid the highest and best offer and authorized ESW Capital to be the joint sponsor of the Plan.

15

25.    The Debtor and ESW Capital have negotiated a replacement postpetition financing facility on substantially similar terms as the SITO DIP Facility. The ESW DIP Facility will provide sufficient financing to (a) repay all amounts due and owing under the SITO DIP Facility, (b) fund ordinary course working capital needs and chapter 11 administrative expenses; and (c) effectuate a restructuring of the Debtor via a plan of reorganization.

## THE DEBTOR HAS AN IMMEDIATE NEED FOR CASH

26.    As noted above, the Debtor proposes to use the proceeds of the ESW DIP Facility to, among other things, satisfy employee wages, employee benefits, certain other operational expenses as set forth in the Budget, and to fund administration of this chapter 11 estate in order effectuate a plan of reorganization contemplated under the ESW Bid. Without access to the ESW DIP Facility and Cash Collateral to satisfy these obligations, the Debtor will have insufficient funds to continue to pay wages for its employees and administer the chapter 11 case. Thus, the Debtor's access to the ESW DIP Facility and Cash Collateral will facilitate the Debtor's efforts to maximize value for its stakeholders through the confirmation of the proposed Plan. Absent approval of the Interim Order, the Debtor will not have access to the financing necessary to meets its payroll obligations or fund administration of the chapter 11 estate, causing immediate and irreparable harm to the value of the Debtor's estate to the detriment of all stakeholders and other parties in interest.

## ALTERNATIVE SOURCES OF FINANCING ARE NOT READILY AVAILABLE

27.    The Debtor does not believe that alternative sources of financing are readily available. In addition, the Debtor does not believe it would be prudent, or even possible, to administer the chapter 11 estate on a "cash collateral" basis. As noted above, without access to the ESW DIP Facility, the Debtor has limited cash on hand, and does not expect to be able to generate sufficient levels of cash flow through its business to cover its cash needs and the

16

projected costs of the chapter 11 case. As noted in the SITO DIP Motion, the Debtor's and its professionals' prepetition inquiry into other potential postpetition financing loans yielded no results – either on a fully priming basis, *pari passu*, or unsecured basis.

28.    In sum, the Debtor does not believe any other postpetition financing would be reasonably available given the realities of the current circumstances. The proposed ESW DIP Facility represents the best (and likely only) option available to address the Debtor's immediate liquidity needs. It is the product of extensive arm's length negotiations with ESW Capital and is an essential component of effectuating the proposed plan of reorganization.

## BASIS FOR RELIEF

**A.    The Debtor Should Be Authorized to Obtain
Postpetition Financing Through the ESW DIP Documents**

### i.    Entering Into the ESW DIP Documents Is an Exercise of the Debtor's Sound Business Judgment

29.    The Court should authorize the Debtor, as an exercise of its sound business judgment, to enter into the ESW DIP Documents, obtain access to the ESW DIP Facility, and use Cash Collateral. Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances discussed in detail below. Courts grant a debtor-in-possession considerable deference in acting in accordance with its business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See, e.g., In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("Cases consistently reflect

that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest.").

30.    Specifically, to determine whether the business judgment standard is met, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a Debtors' business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the Debtors'] authority under the [Bankruptcy] Code").

31.    Furthermore, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization). The Court may also appropriately take into consideration non-economic benefits to a debtor offered by a proposed postpetition facility. For example, in *In re ION Media Networks. Inc.*, the bankruptcy court for the Southern District of New York held that:

> Although all parties, including the Debtor and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. *Relevant features of the financing must be evaluated, including non economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the*

> *likelihood of a successful reorganization.*  This is particularly true in a bankruptcy setting where cooperation and establishing alliances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan.  That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.

No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) (emphasis added).

32.     The Debtor's determination to move forward with the ESW DIP Facility is an exercise of the Debtor's sound business judgment following an arm's length process and careful evaluation of alternatives.  Specifically, the Debtor requires replacement postpetition financing to repay the SITO DIP Obligations and fund its working capital needs.  Accordingly, the Debtors negotiated the ESW DIP Documents with the DIP Lender in good faith, at arm's length, and with the assistance of its advisors, and the Debtor believes that it has obtained the best replacement financing available.

### ii.   The Debtor Should Be Authorized to Obtain Postpetition Financing on a Secured and Superpriority Basis

33.     The Debtor proposes to obtain financing under the ESW DIP Facility by providing security interests and liens as set forth above pursuant to section 364(c) of the Bankruptcy Code.  The statutory requirement for obtaining postpetition credit under section 364(c) is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of the [the Bankruptcy Code]." 11 U.S.C. § 364(c).  *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

34.     Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code.  Specifically, courts look to whether:

19

    a.  the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, *i.e.*, by allowing a lender only an administrative claim;

    b.  the credit transaction is necessary to preserve the assets of the estate; and

    c.  the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders.

*In re Ames Dep't Stores*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); *see also In re St. Mary Hosp.*, 86 B.R. 393, 401-02 (Bankr. E.D. Pa. 1988); *Crouse Grp.*, 71 B.R. at 549.

    35.    Based on current capital market conditions, after consultation with its advisors, the Debtor determined that postpetition financing on an unsecured basis would be unobtainable. Without replacement postpetition financing, the Debtor will not be able to preserve and maximize the value of its estate. Absent sufficient financing to operate the business during the chapter 11 case and consummate the proposed plan of reorganization, the value of the Debtor's estate would be substantially impaired to the detriment of all stakeholders. Given the Debtor's circumstances, the Debtor believes that the terms of the ESW DIP Facility, as set forth in the ESW DIP Documents, are fair, reasonable, and adequate, all as more fully set forth below.

    36.    In the event that a debtor is unable to obtain unsecured credit, section 364(c)(1) of the Bankruptcy Code provides that the debtor may obtain credit that is secured by an administrative expense claim having priority "over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]." As described above, the Debtor is unable to obtain unsecured credit. Therefore, approving the DIP Superpriority Claim in favor of the DIP Lender is reasonable and appropriate. Further, section 364(c)(2) of the Bankruptcy Code provides that the debtor may obtain credit that is secured by a lien on property of the estate that is not otherwise subject to a lien. The DIP Liens sought herein are senior only with respect to the Debtor's unencumbered property. As the Debtor is unable to obtain the critical financing

it needs to administer the chapter 11 case from any other source, the Debtor respectfully represents that granting the DIP Liens to the DIP Lender is warranted under the circumstances.

### iii. No Comparable Alternative to the ESW DIP Facility Is Reasonably Available

37.       In satisfying the standards of section 364(c) of the Bankruptcy Code, a debtor need not seek credit from every available source, but should make a reasonable effort to seek other sources of credit available of the type set forth in sections 364(a) and (b) of the Bankruptcy Code. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) ("the statute imposes no duty to seek credit from every possible lender before concluding that such credit is available"); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *In re Ames Dep't Stores*, 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b); finding that debtor demonstrated the unavailability of unsecured financing where debtor approached several lending institutions); *In re 495 Cent. Park*

21

*Ave. Corp.,* 136 B.R. 626, 631 (Bank. S.D.N.Y. 1992) (element satisfied where "specialist in commercial lending practices . . . explained that most banks lend money only in return for a senior secured position. The debtor cannot obtain financing secured by a lien on unencumbered property . . . because there is no property in the estate which is not already subject to a lien."). Generally, the debtor's efforts are to be considered on a case by case basis, particularly "[g]iven the 'time of the essence' nature of this type of financing." *In Reading Tube Indus.,* 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987). *See also In re Sky Valley, Inc.,* 100 B.R. at 112-13 (exhaustive search not required where the business suffered from financial stress, had little or no unencumbered property, and primary property was subject to numerous liens, and thus debtors' approach of only four lenders was sufficient under such circumstances).

38.    As noted above, after consulting with its advisors, the Debtor does not believe that alternative sources of financing are reasonably available. Thus, the Debtor has determined that the ESW DIP Facility provides the best option forward under the circumstances to both fund the chapter 11 case and bridge the gap until confirmation of the plan of reorganization. Therefore, the Debtor submits that the requirements of sections 364 of the Bankruptcy Code that alternative credit on more favorable terms was unavailable to the Debtor is satisfied.

**B.      The DIP Lender Should Be Deemed a
Good-Faith Lender under Section 364(e)**

39.    Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that

22

extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

40.    As explained herein, the ESW DIP Facility is the result of the Debtor's reasonable and informed determination that the DIP Lender offered the most favorable terms on which to obtain needed replacement postpetition financing, and of arm's length, good-faith negotiations between the Debtor and the DIP Lender.  The terms and conditions of the ESW DIP Facility are reasonable and appropriate under the circumstances, and the proceeds of the ESW DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code.  Further, no consideration is being provided to any party to the ESW DIP Facility other than as described herein.  Accordingly, the Court should find that the DIP Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and are entitled to all of the protections afforded by that section.

**C.    The Automatic Stay Should Be Modified on a Limited Basis**

41.    The Debtor requests that automatic stay imposed by section 362 be modified to the extent necessary to implement and effectuate the terms and provisions of the Interim Order or the Final Order, as applicable.  Among other things, the proposed Interim Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to allow the DIP Lender, to the extent necessary, to permit the DIP Lender to retrieve, collect and apply payments and proceeds in respect of the DIP Collateral, as applicable, in accordance with the terms and provisions of the Interim Order and the ESW DIP Documents

42.    Similar stay modifications are commonplace and standard features of debtor in possession financing arrangements, and, in the Debtor's business judgment, are reasonable and fair under the circumstances of this chapter 11 case.  *See, e.g., In re Peak Broad., LLC*, No. 12-

23

10183 (PJW) (Bankr. D. Del. Feb. 2, 2012) (terminating automatic stay after occurrence of termination event); *In re TMP Directional Mktg., LLC*, No. 11-13835 (MFW) (Bankr. D. Del. Jan. 17, 2012) (modifying automatic stay as necessary to effectuate the terms of the order*); In re Broadway 401 LLC*, No. 10-10070 (KJC) (Bankr. D. Del. Feb. 16, 2010) (same); *In re Haights Cross Commc'ns, Inc.,* No. 10-10062 (BLS) (Bankr. D. Del. Feb. 8, 2010) (same).

### D. Failure to Obtain the Immediate Interim Access to the ESW DIP Facility and Cash Collateral Would Cause Immediate and Irreparable Harm

43.     Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code or to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.   Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

44.     The Debtor requests that the Court hold and conduct a hearing to consider entry of the Interim Order authorizing the Debtor from and after entry of the Interim Order until the Final Hearing to receive advances contemplated by the ESW DIP Facility.  The Debtor requires these advances prior to the Final Hearing and entry of the Final Order to be able to continue to operate and pay administrative expenses.  This relief will enable the Debtor to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to the estates and all parties in interest, pending the Final Hearing.

### REQUEST FOR FINAL HEARING

45.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later than

April 10, 2015, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

46.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

47.     The Debtor will provide notice of this Motion to the following parties, or their counsel, if known: (a) ESW Capital; (b) SITO Mobile, Ltd.; (c) the Committee; (d) all known holders of liens on the Debtor's assets; (e) the United States Attorney for the District of Delaware; (f) the Internal Revenue Service; (g) the United States Trustee for the District of Delaware; and (h) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure.

48.     Pursuant to Bankruptcy Rule 4001, the Debtors respectfully request that it be authorized to provide notice of the Final Hearing by serving a copy of this Motion, together with the Interim Order, and notice of the Final Hearing, by first class mail upon the parties referenced in the foregoing section above.  The Debtors respectfully request that such notice is sufficient and requests that this Court find that no further notice of the Final Hearing and Final Order is required.

25

**WHEREFORE**, the Debtor respectfully requests entry of the Interim Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, and granting such other relief as is just and proper.

Dated: March 13, 2015

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James O'Neill*
Ira D. Kharasch (CA Bar No. 109084)
Linda F. Cantor (CA Bar No. 153762)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail:      ikharasch@pszjlaw.com
             lcantor@pszjlaw.com
             joneill@pszjlaw.com

Counsel to Debtor and Debtor in Possession

DOCS_SF:87244.6