UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HIPCRICKET, INC.,[1]<br><br>Debtor. | Case No. 15-10104 (LSS)<br><br>Chapter 11<br><br>**Related Docket No. 224** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION SECURED FINANCING FROM ESW CAPITAL, LLC; (B) UTILIZE CASH COLLATERAL; AND (C) PAY CERTAIN RELATED FEES AND CHARGES; AND (II) SCHEDULING A FINAL HEARING

Upon the motion, dated March 13, 2015 (the **"Motion"**), of the above-captioned debtor and debtor-in-possession (the **"Debtor"**) pursuant to sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e), and 507 of Title 11 of the United States Code (the **"Bankruptcy Code"**), and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the **"Local Rules"**), for entry of emergency interim (the "**Interim Order**") and final orders (the "**Final Order**"), among other things:

  i.  authorizing the Debtor to obtain senior secured postpetition financing in an aggregate maximum principal amount of $4,500,000 (the **"DIP Financing"**) on a superpriority basis pursuant to the terms and conditions of that certain Debtor-in-Possession Promissory Note in substantially the form attached hereto as **Exhibit A** (the **"DIP Note"**; together with any additional agreements, documents, instruments and

---

[1]  The last four digits of the Debtor's tax identification number are 2076. The location of the Debtor's headquarters and the service address for the Debtor is 110 110th Avenue NE. Suite 410, Bellevue, WA 98004.

certificates executed by the Debtor or otherwise delivered in connection therewith, the **"DIP Documents"),** between the Debtor as borrower, and ESW Capital, LLC as lender (the **"DIP Lender"**);

ii.    authorizing the Debtor to execute and deliver the DIP Note and other DIP Documents and to perform such other and further acts as may be necessary or desirable in connection with the DIP Documents;

iii.    authorizing the Debtor's use of cash collateral, as defined in section 363(a) of the Bankruptcy Code (collectively, **"Cash Collateral"),** pursuant to the terms and conditions set forth in the Interim Order, the Final Order and the DIP Note; and

iv.    scheduling a final hearing (the "**Final Hearing**") to consider entry of an order authorizing the DIP Financing on a final basis, as set forth in the Motion and the DIP Documents filed with this Court.

Due and appropriate notice of the Motion under the circumstances, the relief requested therein and an interim hearing (the "**Interim Hearing**) on the Motion having been held before this Court; and upon the entire record made at the Interim Hearing; and this Court having found good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND:**

A.    Unless otherwise indicated herein, all capitalized terms used but not defined herein shall have the meanings given in the Motion.

B.    On January 20, 2015 (the **"Petition Date"),** the Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code. The Debtor is continuing in possession of its property, and operating and managing its business, as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      On January 30, 2015, the United States Trustee (the "**U.S. Trustee**") appointed a Committee of Unsecured Creditors (the "**Committee**").

D.      This Court has jurisdiction over the Debtor's chapter 11 case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue for this chapter 11 case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

E.      On February 11, 2015, the Court entered the *Final Order (I) Authorizing the Debtor to (A) Obtain Post-Petition Secured Financing; (B) Utilize Cash Collateral; and (C) Pay Certain Related Fees and Charges; and (II) Scheduling a Final Hearing* (Doc. No. 117) (including, collectively, any prior interim order, the "**SITO DIP Order**").  The Debtor also entered into that certain Senior Secured Super-Priority Debtor-in-Possession Promissory Note dated as of January 23, 2015 (the "**SITO DIP Note**") with SITO Mobile, Ltd. (the "**SITO**").

F.      Pursuant to the SITO DIP Order, the SITO DIP Note is collateralized by the DIP Liens, a perfected, first-priority security interest in all of the assets of the Debtor other than Avoidance Actions  pursuant to paragraph 18 and 19 of the SITO DIP Order.  Further, pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations constitute allowed senior administrative expense claims against the Debtor with priority over all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor as set forth in paragraph 14 of the SITO DIP Order.

G.      Pursuant to an agreement made on the record at a hearing before the Court on February 27, 2015, SITO's obligation to fund the SITO DIP terminated after its last funding on March 9, 2015.

H.      Since March 1, 2015, the Debtor has been in default under the SITO DIP Note. Accordingly, the Obligations (as defined in the SITO DIP Note, the "**SITO DIP Obligations**") are now due and payable in full, with interest accruing at the default rate since March 1, 2015.

I.      The SITO DIP Obligations due and owing as of March 18, 2015 (the "**Payoff Date**") are **$3,396,653.83** plus up to $50,000 in legal fees due and owing as set forth in the Payoff Letter (the "**SITO Payoff Amount**").    The SITO Payoff Amount consists of (a) $3,372,389.34 in respect of unpaid principal and (b) $23,964.49 in respect of accrued and unpaid interest.  The SITO Payoff Amount shall accrue at a per diem rate of $1,417.65 until paid in full.

J.      The Debtor is obligated to pay the SITO DIP Obligations in full, in cash, within two (2) business days of the date of entry of this Interim Order.

K.      Pursuant to the SITO DIP Documents, the Debtor paid off, in full, obligations due under that certain Financing and Security Agreement dated May 12, 2014, between the Debtor and Fast Pay Partners, LLC ("**Fast Pay**").    This Interim Order does not alter any of the Committee's or Fast Pay's rights under the SITO DIP Order.

L.      On March 6, 2015, the Debtor held the Auction (the "**Auction**") pursuant to the *Order (A) Approving Bid Procedures for the Sale of Substantially All of Debtor's Assets Outside the Ordinary Course of Business; (B) Scheduling an Auction and hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Approving Payment of a Break-Up Fee and Expense Reimbursement; and (D) Granting Related Relief* (Doc. No. 118) (the "**Bid Procedures Order**").

M.      On March 13, 2015, the Court entered an order [Docket No. 221] approving the bid of ESW Capital, LLC to be the sponsor (the "**Sponsor**") and co-proponent with the Debtor of a plan of reorganization.

- 4 -

N.     The Debtor requires DIP financing in an amount necessary to fund both the Debtor's operations and its administrative costs to permit it to pursue confirmation of the plan of reorganization.

O.     The Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a postpetition basis is also not otherwise available pursuant to section 364(c) of the Bankruptcy Code.

P.     The DIP Lender will commit to providing DIP Financing in an amount necessary to fund (a) the indefeasible payment in full of the SITO DIP Obligations in cash immediately upon entry of this Interim Order and (b) the Debtor's operations and its administrative costs as set forth on an agreed-upon budget submitted by the Debtor and acceptable to DIP Lender, in an amount not more than $4,500,000 (the "**Stated Principal Amount**").

Q.     Based on the record presented to this Court by the Debtor, the DIP Financing and use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtor and the DIP Lender and any credit extended and loans made to the Debtor by the DIP Lender pursuant to the Interim Order, and the DIP Documents (the **"DIP Obligations"**) shall be deemed to have been extended, issued or made, as the case may be, in good faith within the meaning of, section 364(e) of the Bankruptcy Code and the DIP Lender shall have all of the protections thereunder.

R.     Based on the record before this Court, it appears that the terms of this Interim Order, including, without limitation, the terms of the DIP Financing and use of Cash Collateral, are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

- 5 -

S.      The Debtor has requested immediate entry of this Interim Order. The permission granted herein to use Cash Collateral and obtain funds under the DIP Financing is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, enhance the Debtor's prospects for a successful completion of the case.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED DETERMINED AND DECREED THAT:**

1.      <u>Motion Granted</u>. The Motion is granted on the terms and conditions set forth in this Interim Order, with the foregoing findings incorporated herein by reference. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled. This Interim Order shall be valid and binding on all parties-in-interest and fully effective immediately upon entry.

2.      <u>Authorization</u>. The Debtor is hereby authorized to execute and enter into the DIP Documents. The DIP Note, the other DIP Documents and this Interim Order shall govern the financial and credit accommodations to be provided to the Debtor by the DIP Lender as described herein; *provided* that in the event of a conflict between the DIP Documents and the Interim Order, the Interim Order shall control.

3.      The Debtor is hereby authorized to borrow money pursuant to the DIP Note up to an aggregate principal amount of $4,500,000. Upon entry of this Interim Order, the Debtor is hereby directed to borrow the amounts under the DIP Note necessary to pay in full the SITO Payoff Amount and to remit such amount to SITO within two (2) business days of entry of this Interim Order.

4.     The DIP Financing may be used in accordance with the terms of the Interim Order and the DIP Note to pay in full the SITO Payoff Amount, to fund the day-to-day working capital needs and chapter 11 administrative expenses of the Debtor during the pendency of the Chapter 11 Case (subject to the Budget (defined below)) and to allow the Debtor, if subsequently approved by the Court, to effectuate a restructuring of the Debtor (the "**Restructuring**") via a plan of reorganization.

5.     In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Financing, including, without limitation:

    (i)    the execution, delivery and performance of the DIP Documents, including, without limitation, the DIP Note, any security and pledge agreements, any mortgages contemplated thereby and the letter agreements referred to below;

    (ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtor and the DIP Lender may agree; *provided,* that, the Debtor shall provide written notice of any material modification or amendment to the DIP Documents to counsel to any official committee appointed in the Chapter 11 Case (the **"Committee"),** and the U.S. Trustee, each of whom shall have five (5) days from the date of such notice within which to object in writing to such modification or amendment. If any Committee or the U.S. Trustee timely objects to any such material modification or amendment to the DIP Credit Agreement, such modification or amendment shall only be effective pursuant to an order of this Court; and

    (iii)    the performance of all other acts required under or in connection with the DIP Documents.

6.     Upon execution and delivery of the DIP Note and the other DIP Documents, such DIP Documents shall constitute valid, binding and non-avoidable obligations of the Debtor

- 7 -

enforceable against the Debtor in accordance with their respective terms and the terms of the Interim Order for all purposes during the Chapter 11 Case, any subsequently converted case of the Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of any case. No obligation, payment, transfer or grant of security under the DIP Note, the other DIP Documents or the Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under Bankruptcy Code sections 502(d), 548 or 549 or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.    SITO DIP Obligations Payoff.  The Debtor shall pay off the total amount of the SITO DIP Obligations in the amount of the SITO Payoff Amount within two (2) business days of entry of this Interim Order.  SITO does not and shall have no further commitments to make any Loans (as defined in the SITO DIP Note) or otherwise extend financial accommodations to the Debtor and any and all of SITO's financial commitments under the SITO DIP Note shall terminate to the extent not previously terminated.  Upon the entry of this Interim Order, the Challenge Period Termination Date (as set forth in the SITO DIP Order) shall be deemed to have occurred.

8.    Borrowing; Use of Cash Collateral. Subject to the budget attached to the DIP Note as Exhibit A to the DIP Note (as modified from time to time in accordance with the DIP Note, the **"Budget")** and solely in compliance therewith and subject further to the terms and conditions of the Interim Order and the DIP Documents, (a) the DIP Lender will provide the DIP Financing in accordance with the terms of the DIP Documents, and (b) the Debtor is authorized to use Cash Collateral in accordance with the terms of the Interim Order.  For the avoidance of

DOCS_DE:198858.1

doubt the Debtor shall be directed and authorized to pay the SITO Payoff Amount within two (2) business days of entry of this Interim Order.

9.       Subject to paragraph 12, the automatic stay under section 362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to permit the DIP Lender to retrieve, collect and apply payments and proceeds in respect of the DIP Collateral (defined below), as applicable, in accordance with the terms and provisions of the Interim Order and the DIP Documents.

10.      Interest, Fees, Costs and Expenses. The DIP Obligations shall bear interest at 13% per annum.

11.      Event of Default[2] Each of the following events shall constitute an **"Event of Default":**

> (i)       Borrower (A) fails to pay any payment (whether principal, interest, or otherwise) when such amount becomes due and payable under the DIP Note or (B) Borrower defaults in the due performance or observance by it of any other term, covenant, or agreement contained in the DIP Note (and, if such default is capable of being remedied, it has not been remedied within the cure period set forth in the DIP Note or, if no such cure period is provided, it has not been remedied to the reasonable satisfaction of the DIP Lender) two (2) business days following the occurrence of such event of default);
>
> (ii)      any representation, warranty, or statement made by or on behalf of Borrower herein or in the DIP Note or in any certificate delivered in connection with the DIP Note shall prove to be untrue in any material respect on the date on which made or deemed made; the security interest granted to the DIP Lender shall cease to be in full force and effect, or shall cease to create a perfected security interest in, and lien on, the Collateral purported to be created thereby;
>
> (iii)     the DIP Note is, or becomes, invalid or ineffective or unenforceable against Borrower, in whole or in part, or Borrower so asserts or at any time denies its liability or Obligations under the DIP Note;

---

[2]    Capitalized terms used but not defined in this section shall have the meaning ascribed to them in the DIP Note.

(iv)    the Bankruptcy Court shall enter an order with respect to Borrower dismissing its Chapter 11 Case or converting it to a case under chapter **7** or any other chapter of the Bankruptcy Code, or appointing a trustee in its Chapter 11 Case or appointing a responsible officer or an examiner with enlarged powers relating to the operation of Borrower's business (beyond those set forth in sections 1106(a)(3) or (4)) under Bankruptcy Code section 1106(b), in each case, without the consent of the DIP Lender;

(v)    entry of any order of the Bankruptcy Court dismissing the Bankruptcy Case, unless as a condition thereto the Obligations are irrevocably paid in cash in full;

(vi)    the Bankruptcy Court shall enter an order granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder of any lien (other than liens in favor of the DIP Lender) or any assets of Borrower having an aggregate value in excess of $50,000;

(vii)    the Borrower shall seek to, or shall support any other person's motion to, disallow in whole or in part the Obligations or to challenge the validity, priority, or enforceability of the DIP Lender's liens and superpriority claims hereunder;

(viii)    a DIP Order shall be entered in form and substance that is not acceptable to the DIP Lender in its sole discretion or, from and after the date of entry thereof, any DIP Order shall cease to be in full force and effect or shall have been vacated, stayed, reversed, modified or amended (or the Borrower shall take any step to accomplish any of the foregoing) without the consent of the DIP Lender;

(ix)    the Borrower shall make any payments on any indebtedness which arose before the Petition Date other than as provided in any of the "first day" orders entered in the Chapter 11 Case or otherwise consented to by the DIP Lender;

(x)    the Borrower shall be in breach or shall fail to comply with the terms of the Interim Order or that certain letter dated March 4, 2015 (including the draft plan of reorganization and other exhibits thereto, as amended, the "**Letter**"), in any material respect;

(xi)    actual cash receipts from operations for any three consecutive week budget period are less than 80% of such receipts projected in the Budget or on a cumulative basis from the Petition Date;

(xii)    the failure to obtain an order from the Bankruptcy Court, acceptable in form and substance to the DIP Lender, confirming the Plan (as defined in the Letter) by June 3, 2015 (or such later date to which DIP Lender shall agree in writing), subject only to the Bankruptcy Court's docket;

DOCS_DE:198858.1

(xiii)   one or more judgments or decrees shall be entered against Borrower involving in the aggregate a post-Petition Date liability (not paid or fully covered by insurance or otherwise considered permitted Indebtedness) of **$50,000** or more, and all such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within the time required by the terms of such judgment;

(xiv)   the DIP Note or any related document shall cease, for any reason, to be in full force and effect or the Borrower shall so assert in writing, or any such document shall cease to be effective to grant a perfected lien on any material item of Collateral described therein with the priority purported to be created thereby;

(xv)   an application or motion shall be filed by the Borrower for the approval of a superpriority Claim in the Bankruptcy Case or the Bankruptcy Court shall have granted superpriority status to any claim in the Bankruptcy Case, in each case, that is senior to the claims of DIP Lender against Borrower hereunder, without the prior written consent of the DIP Lender; or

(xvi)   SITO is not fully paid the SITO DIP Obligations Payoff within two (2) business days of the entry of the Interim Order.

12.      Upon the occurrence of an Event of Default and after five (5) days' written notice to the Debtor, the Committee and the U.S. Trustee (the **"Default Notice Period"**), the automatic stay shall terminate, and the DIP Lender shall be permitted to exercise any remedies permitted by law, or including any of the following actions, unless the Court determines during the Default Notice Period that an Event of Default has not occurred:

(i)      declare all or any portion of the outstanding Obligations due and payable, whereupon the same shall become, forthwith due and payable without presentment, demand, protest or notice of any kind, all of which are hereby waived by Borrower;

(ii)     enforce all liens and security interests in the Collateral;

(iii)    institute proceedings to enforce payment of such Obligations;

(iv)     terminate the obligation of the DIP Lender to make Loans; and

(v)      exercise any other remedies and take any other actions available to it at law, in equity, under the DIP Note, the Bankruptcy Code, other applicable law or pursuant to any DIP Order.

- 11 -

Notwithstanding the foregoing, the DIP Lender shall continue to fund the Debtor's operations, pursuant to the Budget, through the Default Notice Period.

13.    <u>Termination of the DIP Financing and Use of Cash Collateral</u>. Except with respect to the payment of the Carve-Out (as defined herein), the DIP Lender's agreement to provide the DIP Financing in accordance with the DIP Documents and the Debtor's use of Cash Collateral shall immediately and automatically terminate (except as the DIP Lender may otherwise agree in writing in its sole discretion), and all DIP Obligations shall be immediately due and payable in cash upon the earliest to occur of any of the following (each, a **"Termination Date"**):

(i)    June 10, 2015;

(ii)    April 10, 2015, if a Final Order (as defined below) has not been entered by such date.

(iii)    the date of final indefeasible payment and satisfaction in full in cash of the DIP Obligations;

(iv)    the entry of an order by the Court granting a motion by the Debtor to obtain additional financing from a party other than DIP Lender under section 364 of the Bankruptcy Code unless the proceeds from such financing are used to immediately repay in cash the DIP Obligations or unless such financing is subordinate to the DIP Obligations and consented to in writing by the DIP Lender;

(v)    the dismissal the Chapter 11 Case or the conversion of the Chapter 11 Case into a case under chapter 7 of the Bankruptcy Code;

(vi)    upon and following the entry of an order authorizing the appointment in the Chapter 11 Case of a trustee or an examiner with enlarged powers (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code), relating to the operation of the business of the Debtor without the prior written consent of the DIP Lender (which consent may be withheld, or, if given revoked, by the DIP Lender in its sole discretion), or if any Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the DIP Lender (which consent may be withheld in its sole discretion);

- 12 -

(vii)   the Interim Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lender (which consent may be withheld in its sole discretion); or

(viii)   upon three (3) days written notice of any "Event of Default" under any of the DIP Documents or Interim Order occurring after the date hereof.

14.   <u>Superpriority Claims</u>. Pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations shall constitute allowed senior administrative expense claims against the Debtor (the **"Superpriority Claims"**) with priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) or 507(b), and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546, 726, 1113 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of Bankruptcy Code section 1129(a)(9)(A) be considered administrative expenses allowed under Bankruptcy Code section 503(b), and which shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, excluding, however, the proceeds of all Avoidance Actions (as defined below), subject only to the Carve-Out to the extent specifically provided for herein, and to any amounts that were paid to Estate Professionals and the Expense Reserve Account pursuant to the SITO DIP Order.

15.   <u>Carve-Out</u>. The liens and claims of or granted to the DIP Lender shall be subject and subordinate to the payment, without duplication, of the following fees and claims (the amounts set forth below, together with the limitations set forth therein, collectively, the **"Carve-Out"**): (a) all allowed fees and expenses of attorneys, investment bankers and financial advisors

(collectively, the **"Estate Professionals"**) (i) employed by the Debtor pursuant to sections 327, 328, 1102 and 1103 of the Bankruptcy Code which are accrued prior to the Termination Date to the extent set forth in (and limited by) the Budget and (ii) employed by the Committee pursuant to sections 327, 328, 1102 and 1103 of the Bankruptcy Code and any disbursement of any member of the Committee which, in each case, are accrued prior to the Termination Date (A) to the extent set forth in (and limited by) the Budget plus (B) an additional $200,000; provided, that following the Termination Date, the Carve-Out shall be limited to the allowed fees and disbursements of Estate Professionals incurred or accrued after such Termination Date by the Estate Professionals in an aggregate amount not to exceed $100,000 plus the fees and expenses of Estate Professionals incurred or accrued prior to the Termination Date to the extent provided in clauses (i) and (ii) above, and as reduced in accordance with paragraph 16, and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court or to the Debtor's appointed claims agent.

16.     Following entry of the Interim Order and on a weekly basis thereafter, the Debtor shall be authorized to transfer funds to the Pachulski Stang Ziehl & Jones LLP Client Trust Account (the **"Expense Reserve Account"**) in the amounts set forth in the Budget for fees and expenses of the Estate Professionals. Such funds shall be held in the Expense Reserve Account for the benefit of the Estate Professionals, respectively, to be applied *pro rata* to the fees and expenses of such Estate Professionals approved for payment pursuant to one or more orders of the Bankruptcy Court (the **"Segregated Funds"**), provided, however, that for the avoidance of doubt, fees and expenses payable to the Estate Professionals that were incurred after the ESW Capital, LLC becomes the DIP Lender, shall be paid first out of the Expense Reserve Account, and shall reduce, on a dollar for dollar basis, the obligation to fund the Carve-Out, and provided

DOCS_DE:198858.1

further that there shall be no requirement that any amounts in respect of any success fees that may be earned by any Estate Professional be deposited into the Expense Reserve Account. Without in any way limiting the Debtor's ability to use the Segregated Funds to pay fees payable to the Office of the United States Trustee and the Clerk of the Court and the fees and expenses of the Estate Professionals, the Segregated Funds in the Expense Reserve Account shall remain encumbered by and subject to the DIP Liens, and the Superpriority Claim, in their respective order of priority; provided, however, that such liens and claims shall be subordinate to the Carve-Out. Notwithstanding the foregoing, none of the Carve-Out, proceeds from the DIP Financing or Cash Collateral may be used (1) to investigate or challenge in any respect the validity, perfection, priority, extent or enforceability of the DIP Liens, (2) to delay, challenged or impede any rights of the DIP Lender under any of the DIP Documents, or the Interim Order, or (3) to pursue any claims or causes of action of any kind against the DIP Lender. Nothing herein shall restrict the ability of the Committee or any other party to investigate or object to a disclosure statement or a plan of reorganization, and the Carve-Out, proceeds from the DIP Financing and/or Cash Collateral may be used to pay approved fees and expenses of Estate Professionals employed by the Committee in connection therewith.

17.     Subject to the terms of the Interim Order, the Debtor shall be permitted to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals allowed and payable under sections 328, 330 or 331 of the Bankruptcy Code, as the same may be due and payable, that constitute pre-Termination Date expenses and such payments shall not reduce or be deemed to reduce the post-Termination Date fees and expenses.

18.     Liens to Secure the DIP Obligations. As security for the DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the

execution, recordation of filings by the Debtor or the DIP Lender of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender of or over any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtor to the DIP Lender for its benefit (all property identified in clauses (a), (b) and (c) below being collectively referred to as the **"DIP Collateral"),** subject, only in the event of the occurrence and during the continuance of an Event of Default (as defined in the DIP Note), to the payment of the Carve-Out (all such liens and security interests granted to the DIP Lender for its benefit pursuant to the Interim Order and the DIP Documents, the **"DIP Liens"**), and to any amounts that were paid to Estate Professionals and the Expense Reserve Account pursuant to the SITO DIP Order:

   (a) *First Lien on Unencumbered Property.* Pursuant to Bankruptcy Code section 364(c)(2), a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtor or its estate, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, **"Unencumbered Property"),** including, without limitation, any such unencumbered cash of the Debtor and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, commercial tort claims, equity interests, and the proceeds of all the foregoing. For purposes of the Interim Order, Unencumbered Property shall expressly exclude the proceeds of the Debtor's claims and causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550, and 553 and any other avoidance actions under the Bankruptcy

DOCS_DE:198858.1

Code (collectively, **"Avoidance Actions"),** which Avoidance Actions shall not be subject to the DIP Liens, Superpriority Claims or any other liens or superpriority claims.

(b)    *Liens Junior to Certain Other Liens.* Pursuant to Bankruptcy Code section 364(c)(3), a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all pre- and post-petition property of the Debtor (other than the property described in clauses (a) or (c) of this paragraph 18, as to which the liens and security interests in favor of the DIP Lender will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b), which security interests and liens in favor of the DIP Lender are junior to such valid, perfected and unavoidable liens (collectively, the **"Permitted Liens").**

(c)    *Liens Senior to Certain Other Liens.* The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under Bankruptcy Code section 551, (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor to the extent permitted by applicable non-bankruptcy law or (iii) any intercompany or affiliate liens of the Debtor.

19.    <u>Perfection of DIP Liens</u>. The DIP Liens shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect

DOCS_DE:198858.1

such perfection; provided, however, that notwithstanding the provisions of section 362 of the Bankruptcy Code, (i) the DIP Lender, may, at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtor's expense, any such UCC financing statements, notices of liens and security interests, mortgages, amendments to mortgages and/or other similar documents or instruments as the DIP Lender may require, and (ii) the DIP Lender, may require the Debtor to deliver to the DIP Lender, any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the Debtor is directed to cooperate and comply therewith. If the DIP Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages, amendments to mortgages or other documents or instruments with respect to such security interests and liens, or if the DIP Lender, in accordance with the DIP Documents or this Interim Order, elects to take possession of any DIP Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements, mortgages, amendments to mortgages or similar documents or instruments or taking possession shall be deemed to have been filed or recorded or taken in these cases as of the commencement of these cases but with the priorities as set forth herein. The DIP Lender may (in its sole discretion), but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall constitute further evidence of the DIP Lender's interest in the DIP Collateral.

20.    <u>Preservation of Rights Granted Under this Interim Order</u>. No claim or lien having a priority superior to or *pari passu* with those granted by the Interim Order to the DIP Lender

shall be granted or allowed until the occurrence of (i) the payment in full in cash or immediately available funds of all of the DIP Obligations or the application of all of the DIP Obligations to the consideration paid by the DIP Lender to fund the reorganization of the Debtor, (ii) the termination or expiration of all commitments to extend credit to the Debtor under the DIP Documents, and (iii) the cash collateralization in respect of any asserted claims, demands, actions, suits, proceedings, investigations, liabilities, fines, costs, penalties, or damages for which the DIP Lender may be entitled to indemnification by the Debtor **("Paid in Full").** While any portion of the DIP Financing (or any refinancing thereof) or the DIP Obligations remain outstanding and the commitments thereunder have not been terminated, the DIP Liens shall not be (x) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Bankruptcy Code section 551 or (y) subordinated to or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise.

(i) Unless all DIP Obligations shall have indefeasibly been Paid in Full, the Debtor shall not seek, and it shall constitute an Event of Default (as defined in the DIP Note) and terminate the right of the Debtor to use Cash Collateral if the Debtor seeks, or if there is entered, any modification or extension of this Interim Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence, or an order converting or dismissing the Chapter 11 Case.

21.    If an order dismissing the Chapter 11 Case under Bankruptcy Code section 1112 or otherwise is entered at any time prior to the DIP Obligations being Paid in Full, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that (i) the Superpriority Claims, security interests and replacement security interests granted to the DIP

Lender shall continue in full force and effect and shall maintain their priorities as provided in the Interim Order until all DIP Obligations shall have been indefeasibly paid in cash in full (and that such Superpriority Claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

22.    If any or all of the provisions of the Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Documents with respect to any DIP Obligations. To the extent permitted by applicable law, notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral or DIP Obligations incurred by the Debtor to the DIP Lender prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of the Interim Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in Bankruptcy Code section 364(e), the Interim Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral and the DIP Obligations.

23.    Except as expressly provided in the Interim Order or in the DIP Documents, or until the DIP Obligations are Paid in Full, the DIP Liens, the Superpriority Claims, and all other rights and remedies of the DIP Lender granted by the provisions of the Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry

- 20 -

of an order converting the Chapter 11 Case to a case under chapter 7, or dismissing the Chapter 11 Case or (ii) the entry of an order confirming a plan of reorganization in the Chapter 11 Case and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtor has waived any discharge as to any remaining DIP Obligations. The terms and provisions of the Interim Order and the DIP Documents shall continue in the Chapter 11 Case, or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, and the Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of the Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are Paid in Full.

24.   <u>Preservation of SITO DIP Liens Until SITO Payoff</u>.  For the avoidance of doubt, and notwithstanding anything contained herein or in any other order by this Court to the contrary, the SITO DIP Note remains collateralized by the DIP Liens, with priority over any liens or rights granted herein, until payment in full of the SITO DIP Obligations as provided in this Interim Order.   For the avoidance of doubt, until payment in full of the SITO DIP Obligations as provided in this Interim Order, SITO shall have all rights available to it under the SITO DIP Note and the SITO DIP Order.

25.   <u>Payment of Fees Under SITO DIP Note</u>.  For the avoidance of Doubt, the Debtor shall pay Greenberg Traurig, LLP, within two (2) business days of the Payoff Date, by wire transfer of immediately available funds, $50,000 (the "**SITO Legal Fee Cap**") to be used to pay the legal fees and costs and expenses of the DIP Lender that are payable or reimbursable by the Debtor pursuant to the SITO DIP Order.  The SITO Legal Fee Cap represents the unpaid portion of the "DIP Lender Legal Fees" in the SITO DIP Budget.  The payment of the SITO Legal Fee Cap is in full and final satisfaction of all legal fees and expenses due and payable under the SITO DIP Note, SIP DIP Documents, and SITO DIP Order.  However, the Debtor retains its rights

- 21 -

under paragraph 10 of the SITO DIP Order to review and object to Greenberg Traurig, LLP's invoices.  Any unused amount of the SITO Legal Fee Cap shall be returned by Greenberg Traurig, LLP to the Debtor.

26.    <u>Limitation on Use of DIP Financing Proceeds and Collateral</u>. Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, Cash Collateral, DIP Collateral, DIP Indebtedness, or proceeds of the DIP Financing or any part of the Carve-Out may be used for any of the following without the prior written consent of the DIP Lender: (a) to object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, or the liens or claims granted under the Interim Order, the DIP Documents, (b) investigate any claims, defenses or causes of action that may exist under law, equity or otherwise against the DIP Lender or its respective agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Documents or the Interim Order, (d) seek to modify any of the rights granted to the DIP Lender hereunder or under the DIP Documents, or I pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted to be paid under the DIP Documents. Nothing herein shall restrict the ability of the Committee or any other party to investigate or object to a plan of reorganization or disclosure statement, and proceeds from the DIP Financing and/or Cash Collateral may be used to pay approved fees and expenses of Estate Professionals employed by the Committee in connection therewith.

27.    <u>Right to Credit Bid</u>. Subject to section 363(k) of the Bankruptcy Code and entry of this Interim Order, the DIP Lender shall have the right to "credit bid" the full amount of its

- 22 -

claims in connection with any sale of all or any portion of the Debtor's assets, including, without limitation, a sale transaction under section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code; provided, that in the event the DIP Lender is also the purchaser of the Debtor's assets or sponsor of a plan of reorganization for the Debtor and agrees to assume the DIP Financing, the DIP Financing shall not be double counted as purchase or plan consideration.

28.    Effect of Stipulations on Third Parties. Each stipulation, admission and agreement contained in the Interim Order, shall be binding upon the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all claims against the DIP Lender as of the date of entry of the Interim Order. Each stipulation, admission and agreement contained in the Interim Order shall also be binding upon all other parties in interest, including, without limitation, the Committee, under all circumstances and for all purposes.

29.    Upon approval of the ~~Interim~~ _Final_ Order, notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtor's leased premises that an Event of Default has occurred and is continuing, the DIP Lender shall be entitled to the Debtor's rights and privileges under such lease(s) without interference from such landlord, including, if applicable, the right to enter upon such leased premises for the purpose of exercising any right or remedy with respect to the collateral located thereon; _provided_ that such DIP Lender shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by such DIP Lender, calculated on a per diem basis and any such amount paid shall be deemed to be DIP Obligations, as applicable.

- 23 -

30.     _Financial Reporting_. The Debtor shall provide any reporting provided for under the DIP Note.

31.     _Covenants_. Unless otherwise modified pursuant to the Interim Order, the Debtor acknowledges and agrees that the Debtor shall timely comply with all of the covenants set forth in the Interim Order and the DIP Documents.

32.     _Effect of Modification of Interim Order_. The Debtor shall not, without the DIP Lender's prior written consent (which shall be given or refused in their sole discretion), seek to modify, vacate or amend the Interim Order or any DIP Documents. If any provisions of the Interim Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court without the prior written consent of the DIP Lender (which consent may be given or refused in its sole discretion), then such event shall constitute an immediate Termination Date under the Interim Order and an Event of Default under the DIP Documents.

33.     _Binding Effect on Successors and Assigns_. The DIP Documents and the provisions of the Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, including, without limitation, the prior DIP lender, SITO, the Committee and the Debtor and its successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to Bankruptcy Code section 1104 or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender and the Debtor and its successors and assigns, _provided, however,_ that the DIP Lender shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor. In determining to make any loan (whether under the DIP Credit Agreement,

- 24 -

promissory notes or otherwise) or permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the Interim Order or the DIP Documents, the DIP Lender shall not (i) be deemed to be in control of the operations of the Debtor, (ii) owe any fiduciary duty to the Debtor, its creditors, shareholders or estate or (iii) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

34.   _Effectiveness_. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable _nunc pro tunc_ to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, the Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of the Interim Order.

35.   _Objections Overruled or Withdrawn_. All objections to the entry of the Interim Order have been withdrawn or are hereby overruled.

36.   _Controlling Effect of Interim Order_. To the extent any provisions in this Interim Order conflict with any provisions of the Motion, the provisions of this Interim Order shall control; provided that SITO shall be permitted to rely on the SITO DIP Order.

37.   _Interim Order Effective_. This Interim Order shall be effective as of the date of signature by the Court notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(h), 7062, 9014 or otherwise.

DOCS_DE:198858.1

38.     Subsequent Hearing; Procedure for Objections and Entry of Final Order.  The

Motion is set for a final hearing before this Court on March 31, 2015 at _11:00 a_.m. (Eastern

Time) at which time any party in interest may present any timely filed objections to the entry of

the Final Order.  The Debtor shall promptly serve a copy of this Interim Order, by regular mail

upon (i) the United States Trustee; (ii) all affected state and federal taxing authorities; (iii)

counsel to the Committee; (iv) counsel to SITO; (v) counsel to DIP Lender; and (vi) any other

party which theretofore has filed in the chapter 11 cases a request for special notice with this

Court and served such request upon Debtor's counsel.  Any objections to this Interim Order and

the entry of a Final Order on the Motion shall be in writing and shall be filed with the Court and

served so that they are not received later than March 25, 2015 at 4:00 p.m. (Eastern Time) by (i)

Debtor's counsel, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor,

Wilmington, Delaware 19899, Attn: James O'Neill, joneill@pszjlaw.com; Pachulski Stang Ziehl

& Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067, Attn:  Ira

Kharasch, ikharasch@pszjlaw.com; (ii) counsel to SITO, Greenberg Traurig, LLP, 200 Park

Avenue, New York, NY 10166, Attn:    Matthew Hinker and Joseph Gangitano,

hinkerm@gtlaw.com and gangitanoj@gtlaw.com; (iii) counsel to DIP Lender, Haynes and

Boone LLP, 30 Rockefeller Plaza, 26th Floor, New York, New York 10112, Attn: Trevor

Hoffman     and     Arsalan     Muhammad,     trevor.hoffman@haynesboone.com     and

arsalan.muhammad@haynesboone.com; (iv) Office of the U.S. Trustee, 844 King Street, Suite

2207, Lockbox 35, Wilmington, Delaware 19801; (v) counsel to the Committee of Unsecured

Creditors, (a) Cooley LLP, 1114 Avenue of the Americas, New York, NY  10036, Attn:  Jay

Indyke, Esq. Jeffrey L. Cohen, Esq. and Alex R. Velinsky, Esq. and (b) Pepper Hamilton LLP,

Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, DE  19801, Attn:  Donald J.

DOCS_DE:198858.1

Detweiler, Esq. and Henry J. Jaffee, Esq.; and (vi) all parties requesting notice in these cases pursuant to Bankruptcy Rule 2002.  Any objections by creditors or other parties in interest to any of the provisions of this Interim Order shall be deemed waived unless filed and served in accordance with this paragraph.

Dated: March 16, 2015

Honorable Laurie Selber Silverstein
United States Bankruptcy Judge

DOCS_DE:198858.1