# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>HIPCRICKET, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 15-10104 (LSS)<br><br>Related Docket No. 293 |

## DECLARATION OF TODD WILSON
## IN SUPPORT OF CONFIRMATION OF THE
## AMENDED PLAN OF REORGANIZATION OF DEBTOR

I, Todd Wilson, hereby declare (the "**Declaration**") that the following is true to the best of my knowledge, information, and belief:

1. I am the Interim Chief Executive Officer of Hipcricket, Inc., the above-captioned debtor and debtor in possession (the "**Debtor**"). I am familiar with the day-to-day operations, business, and financial affairs of the Debtor, having served as the Debtor's Interim CEO since May 30, 2014, as a member of the Debtor's board of directors since June 2010 (including as the chairman since March 2013), and as the Debtor's principal financial officer since July 2014. I have more than 16 years of experience as a board member, investor, and advisor to middle-market companies. My prior experience includes executive and other positions at equity firms and investment banks, including most recently as a Partner at Crane Street Capital, a California-based investment firm, as well as former positions at American Capital, Ltd., Wind Point Partners, Merrill Lynch, and Montgomery Securities.

2. I submit this Declaration for all permissible purposes under the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Federal Rules of Civil

---

[1] The last four digits of the Debtor's tax identification number are 2076. The location of the Debtor's headquarters and the service address for the Debtor is 110 110th Avenue NE, Suite 410, Bellevue, WA 98004.

Procedure and the Federal Rules of Evidence in support of confirmation of the *Amended Plan of Reorganization of the Debtor* [Docket No. 293] (including the Plan Supplement and collectively with all exhibits and any other modifications, amendments, or supplements thereto, the "**Plan**"). Capitalized terms not otherwise defined herein have the meanings given to them in the Plan and the *Amended Disclosure Statement for the Plan of Reorganization of Hipcricket, Inc.* [Docket No. 294] (the "**Disclosure Statement**"), as applicable.

3. Except as otherwise indicated, my statements in this Declaration are based on my personal knowledge and experience as described above, my discussions with relevant employees, advisors, and agents of the Debtor and representatives of ESW and my review of relevant documents, including, without limitation, any applicable books and records and/or summaries of them prepared for my review in connection with the Plan, the Disclosure Statement, and this Declaration. I have read the Plan, the Disclosure Statement, and the Plan Supplement, and I am generally familiar with the information contained in them.

4. If called to testify, I could and would testify as stated herein. I am authorized and competent to submit this Declaration.

**The Plan Properly Classifies All Claims and Interests**

5. I am informed and to the best of my knowledge believe that the Plan properly classifies all Claims and Equity Interests that require classification. The Plan reasonably provides for the classification of Claims and Equity Interests into five separate Classes. These Classes reflect the differing characteristics of the Claims and Equity Interests between Classes, as well as the distinct legal rights of the holders of those Claims and Equity Interests in the separate Classes. The Claims and Equity Interests within each Class are substantially similar to the other Claims or Equity Interests within the same Class. Thus, I

understand that valid business, factual, and legal reasons exist for the separate classification of Claims and Interests as set forth in the Plan.

6. Further, the Debtor's classification of Claims and Equity Interests under the Plan is not an attempt to manufacture an impaired class that will vote in favor of the Plan and, as I understand it, does not result in unfair discrimination between or among holders of Claims or Interests.

**Implementation of the Plan**

7. The Plan provides adequate means for its implementation, including, without limitation: (a) the funding of the Consideration by ESW to the Reorganized Debtor; (b) issuance of New Equity to ESW Capital, LLC (or an affiliate); (c) the revesting of assets of the estate to the Reorganized Debtor, other than the Distribution Trust Assets; (d) the establishment of a Distribution Trust for the benefit of general unsecured creditors; (e) the appointment and powers of the Distribution Trustee; and (f) the distribution of Cash to holders of Allowed Claims pursuant to the Plan and Distribution Trust Agreement, in accordance with the priority scheme established by the Bankruptcy Code.

**The Plan Has Been Proposed in Good Faith**

8. The Plan was proposed by the Debtor in good faith and in the belief that the proposed reorganization would maximize value for the estate by enabling (i) the Debtor to reorganize and continue as a going concern and, (ii) in respect to the Distribution Trust Assets, the liquidation of said assets, via the Distribution Trust, in an efficient manner to maximize Plan distributions to creditors on a fair and equitable basis, in accordance with the priorities established by the Bankruptcy Code. Moreover, the Plan is the direct result of extensive good faith, arm's length negotiations between the Debtor, Committee, and Plan Sponsor, and thereby

reflects substantial input from the principal constituencies having an interest in the Chapter 11 Case. The Plan has been proposed with the legitimate and honest purpose of reorganizing the Debtor and implementing the liquidation of the Distribution Trust Assets for the benefit of the Debtor's creditors.

9. I believe that the foregoing, the resolution of certain formal and informal objections to the Plan, the lack of any remaining objections to the Plan by any creditor, and the support for the Plan of the Debtor's primary constituencies demonstrate the overall fairness of the Plan.

### Releases and Exoneration Provisions in the Plan

10. In my opinion and to the best of my knowledge, based on consultation with Debtor's counsel, the releases and exoneration provisions of the Plan are warranted, necessary, reasonable, and appropriate, and are supported by sufficient consent and consideration under the circumstances of the Plan and the Chapter 11 Case as a whole.

### The Plan Is In the Best Interests of Creditors

11. Based on consultation with Debtor's counsel, I believe that the Plan satisfies the "best interests of the creditors" test. For the reasons explained below and in the Disclosure Statement, each holder of an impaired Claim or Equity Interest that has not accepted the Plan, or is deemed not to have accepted the Plan, will receive or retain, on account of such Claim or Equity Interest, property under the Plan having a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

12. All holders of Claims and Equity Interests in these cases will fare no worse under the Plan than they would in a chapter 7 liquidation. As set forth in the Disclosure

Statement, in a chapter 7 case, there would be no Consideration being paid and provided by the Plan Sponsor. Without the Consideration, there would likely be insufficient proceeds of estate assets to pay in full secured and administrative claims, and thus there likely would be no recovery at all for general unsecured creditors in a chapter 7 proceeding. Under the Plan, a recovery is anticipated for general unsecured creditors as set forth in Exhibit B to the Disclosure Statement, using a portion of the Consideration and any proceeds of other Distribution Trust Assets. For all of the foregoing reasons and the reasons stated in the Disclosure Statement, I believe that the Plan is in the best interests of the Debtor's creditors.

**The Plan Does Not Discriminate Unfairly**

13. Based on my understanding from consultation with Debtor's counsel, the Plan does not discriminate unfairly with respect to Classes 4 and 5. It is my understanding that the Claims in Class 4, which is comprised of Subordinated Claims, are legally distinct under the Bankruptcy Code from the Claims in the other Classes of Claims under the Plan. Therefore, these Claims are properly classified in a separate Class and have not been classified separately for the purpose of unfair discrimination compared to other Claims. With respect to the Equity Interests in Class 5, these interests are not classified separately for the purpose of unfair discrimination because Class 5 comprises all of the Equity Interests in the Debtor.

14. Based on my understanding, the Plan is otherwise fair and equitable with respect to Classes 4 and 5 because: (a) for Class 4, no holder of a Claim that is junior to the Claims in Class 4 is receiving or retaining any property under the Plan on account of such Claim; and (b) for Class 5, no holder of an interest that is junior to the Equity Interests in Class 5 is receiving or retaining any property under the Plan on account of such interest.

**The Plan Is Feasible**

15. In my opinion and to the best of my knowledge, based on consultation with Debtor's counsel, the Plan is feasible and can be implemented consistent with its terms. I am informed that the Plan Sponsor and its affiliates have acquired more than 30 distressed software-related companies in the past 5 years, and that the Plan Sponsor and its affiliates are experienced in successfully turning around distressed situations to generate sustainable profits. The Plan Sponsor believes that under its management, the Reorganized Debtor will enhance its relationships with its employees, customers, and vendors, while simultaneously engaging in cost-cutting efforts to drive efficiency and profitability. I am informed that the Plan Sponsor also possesses more than $20 million of liquidity and believes that it will be able to leverage its relationships, expertise, and know-how to help the Reorganized Debtor thrive.

16. Furthermore, no distributions to creditors under the Plan are dependent on any metrics related to the Reorganized Debtor in that such distributions will generally be funded by use of the Consideration to be provided by ESW pursuant to the Plan.

17. Additionally, based on the Debtor's claim estimates, I believe that the Debtor will have, upon the effectiveness of the Plan, sufficient cash available – through the funding of the Consideration by ESW – to make all payments that are required to be made on the Effective Date pursuant to the terms of the Plan.

**The Debtors Do Not Owe Retiree Benefits**

18. The Debtor does not owe any payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical or hospital care benefits, or benefits in the event of sickness,

accident, disability or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the Debtor.

**The Principal Purpose of the Plan Is Not
the Avoidance of Taxes or Section 5 of the Securities Act**

19. The principal purpose of the Plan is to reorganize the Debtor as a going concern and is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. I am not aware of any allegation from any party in interest, including but not limited to any governmental unit, that such avoidance was the purpose of the Plan.

**Adequate Means for Implementation of the Plan**

20. In my opinion and to the best of my knowledge, the means of implementation set forth in the Plan, including the funding of the Consideration by ESW, are adequate. The means of implementing the Plan are not intended to hinder, delay, or defraud any entity to which the Debtor is indebted on the Effective Date.

21. Except as otherwise provided in the Plan, the Reorganized Debtor will be revested with assets of the estate other than Distribution Trust Assets and will continue to exist after the Effective Date as a corporate entity, with all of the powers of a corporation under applicable law in the jurisdiction in which the Debtor is incorporated and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan. All property of the Debtor constituting the Distribution Trust Assets shall be conveyed and transferred by the Debtor to the Distribution Trust, free and clear of all Liens, Claims, interests, and encumbrances.

**Executory Contracts and Unexpired Leases**

22. The Plan provides for the assumption of certain agreements specified on Exhibit B to the Plan and for the rejection of all remaining executory contracts and unexpired

leases of the Debtor upon the occurrence of the Effective Date, except agreements entered into postpetition, which shall be assumed by the Reorganized Debtor. The Debtor's determinations regarding the assumption or the rejection of executory contracts and unexpired leases are based on and within the sound business judgment of the Debtor. Based on consultations with ESW, I believe that the designated assumption or rejection of executory contracts and unexpired leases under the Plan will aid in the implementation of the Plan and are in the best interests of the Debtor, its estate, its creditors, and other parties in interest in the Chapter 11 Case.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 11, 2015

_____
Todd Wilson, President