## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re

HIPCRICKET, INC.,[1]

Debtor.

Chapter 11

Case No. 15-10104 (LSS)

**Related Docket No. 293**

## PROPONENTS' MEMORANDUM OF LAW (I) IN SUPPORT OF CONFIRMATION OF THE AMENDED PLAN OF REORGANIZATION OF DEBTOR, AS MODIFIED, AND (II) IN RESPONSE TO OBJECTIONS THERETO

Ira D. Kharasch (CA Bar No. 109084)
Linda F. Cantor (CA Bar No. 153762)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone:     (310) 277-6910
E-mail:     ikharasch@pszjlaw.com
            lcantor@pszjlaw.com

- and -

James O'Neill (DE Bar No. 4042)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
E-mail:     joneill@pszjlaw.com

Counsel to Debtor and Debtor in Possession

Charles A. Beckham, Jr. (TX Bar No. 02016600)
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Telephone: (713) 547-2000
Email: charles.beckham@haynesboone.com

- and -

Trevor R. Hoffmann (NY Bar No. 24048806)
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Email: trevor.hoffmann@haynesboone.com

Counsel to Plan Sponsor

---

[1]    The last four digits of the Debtor's tax identification number are 2076. The location of the Debtor's headquarters and the service address for the Debtor is 110 110th Avenue NE, Suite 410, Bellevue, WA 98004.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................... 1

MEMORANDUM .............................................................................................................................. 3

A.   The Plan Satisfies the Requirements of Section 1122. .................................................. 3

B.   The Plan Complies with the Mandatory Requirements of Section 1123(a) .................. 4

    a.   Section 1123(a)(1) – The Plan Designates Classes of Claims and Interests. ...................... 4

    b.   Section 1123(a)(2) – The Plan Identifies Unimpaired  Classes of Claims and Interests. ................................................................................................................. 5

    c.   Section 1123(a)(3) – The Plan Specifies the Treatment of Impaired Classes .................... 5

    d.   Section 1123(a)(4) – The Plan Provides for the  Same Treatment of Claims within Each Class ........................................................................................................ 5

    e.   Section 1123(a)(5) – The Plan Provides  for Adequate Means of Implementation. ........... 5

    f.   Section 1123(a)(6) – The Plan Provides for a Provision Prohibiting the Issuance of Nonvoting Equity Securities ...................................................................................... 6

    g.   Section 1123(a)(7) – The Plan Only Contains Provisions Consistent with the Interests of Creditors and Interest Holders with Respect to Officers and Directors. ......... 6

C.   Section 1123(b) – The Plan Includes Appropriate Permissive Provisions. ..................... 7

D.   Section 1129(a)(2) – The Proponents Have Complied with All Applicable Provisions of the Bankruptcy Code ................................................................................. 8

    a.   The Plan Complies with Section 1125 of the Bankruptcy Code ......................................... 9

    b.   The Plan Complies with Section 1126 of the Bankruptcy Code ....................................... 10

E.   Section 1129(a)(3) – The Proponents Proposed the Plan in Good Faith. ..................... 12

F.   Section 1129(a)(4) – The Plan Provides for Court Approval of All Payments for Services in Connection with This Case. ...................................................................... 13

G.   Section 1129(a)(5) – The Plan Identifies (i) the Reorganized Debtor's Directors and Officers and (ii) the Distribution Trustee ..................................................................... 14

H.   Section 1129(a)(6) – The Plan Does Not Implement Any Change to Publicly Regulated Rates .......................................................................................................... 15

I.   Section 1129(a)(7) – The Plan Is in the Best Interests of Creditors ............................... 16

J.   Section 1129(a)(8) – Acceptance by Impaired Classes. ................................................. 17

K.      Section 1129(a)(9) – The Plan Complies with the Required Treatment of Administrative Claims and Priority Claims. ........................................................................... 18

L.      Section 1129(a)(10) – The Plan Has Been Accepted by at Least One Impaired Class of Claims. ....................................................................................................... 18

M.      Section 1129(a)(11) – The Plan Is Feasible. ................................................... 19

N.      Section 1129(a)(12) - The Plan Provides for Payment of All Statutory Fees. ........... 20

O.      Sections 1129(a)(13) - (16) Are Inapplicable. ................................................ 20

P.      The Plan Complies with the Requirements of Section 1129(b). ............................. 20

        a.      The Plan Is Fair and Equitable. ........................................................... 21

        b.      The Plan Does Not Discriminate Unfairly. .............................................. 22

Q.      Section 1129(c) – The Plan is the Only Plan Filed in This Chapter 11 Case. ............. 23

R.      Section 1129(d) – The Principal Purpose of the Plan is Not the Avoidance of Taxes or of the Application of Section 5 of the Securities Act. ............................................... 23

S.      Section 1129(e) – The Debtor is Not a Small Business Debtor. ............................. 23

T.      The Assumption and Assignment or Rejection of the Executory Contracts and Unexpired Leases Under the Plan Should be Approved. ..................................................... 24

U.      The Releases Contemplated by the Plan Should Be Approved. ............................. 26

        a.      The Debtor's Releases of Third Parties Should Be Approved. ......................... 27

        b.      The Third Party Release Should Be Approved. .......................................... 29

V.      The Exculpation Should Be Approved. .......................................................... 30

W.      No Successor Liability. ............................................................................ 33

X.      Modifications to Plan Do Not Affect Holders of Claims. ..................................... 34

Y.      Waiver of stay ...................................................................................... 35

CONCLUSION ................................................................................................. 35

# TABLE OF AUTHORITIES

**Cases**

*Armstrong World Indus.*,
    348 B.R. 111, 121 (D. Del. 2006) ..................................................................... 22

*Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*,
    526 U.S. 434 (1999) ........................................................................................ 16

*Enron Corp. v. New Power Co. (In re New Power Co.)*,
    438 F.3d 1113 (11th Cir. 2006) ...................................................................... 34

*In re Aleris Int'l, Inc.*,
    No. 09-10478 (BLS), 2010 WL 3492664 (Bankr. D. Del. May 13, 2010) ...................... 19

*In re Am. Capital Equip., LLC*,
    688 F.3d 145 (3d Cir. 2012) ............................................................................ 12

*In re Buckhead America Corp.*,
    180 B.R. 83 (Bankr. D. Del. 1995) .................................................................. 24

*In re Chateaugay Corp.*,
    89 F.3d 942 (2d Cir. 1996) ................................................................................ 3

*In re Crowthers McCall Pattern, Inc.*,
    120 B.R. 279 (Bankr. S.D.N.Y. 1990) ............................................................ 16

*In re Don & Lin Trucking Co., Inc.*,
    110 B.R. 562 (Bankr. N.D. Al. 1990) .............................................................. 26

*In re Eagle-Picher Indus., Inc.*,
    203 B.R. 256 (Bankr. S.D. Ohio 1996) ........................................................... 12

*In re FAH Liquidating Corp., et al., (f/k/a/ Fisker Automotive Holdings, Inc.)*,
    Case No. 13-13087-1 (KG) at *10 (ECF Doc. No. 1137) (Bankr. D. Del. July 28, 2014) 31

*In re FKF Madison Group Owner, LLC et al.*,
    Case No. 10-11867 (KG) (Docket No. 1343) (Bankr. D. Del. Apr. 20, 2012) ........... 31, 32

*In re Genco Shipping & Trading Ltd.*,
    No. 14-11108, slip op. (Bankr. S.D.N.Y. July 2, 2014) .................................... 29

*In re Genesis Health Ventures, Inc.*,
    266 B.R. 591 (Bankr. D. Del. 2001) ............................................................... 12

*In re Indianapolis Downs, LLC*,
    486 B.R. 286 (Bankr. D. Del. 2013) ....................................................... 27, 29, 30

DOCS_SF:87544.5

*In re Johnston,*
   21 F.3d 323 (9th Cir. 1994) ............................................................ 3, 4

*In re NH Holdings, Inc.,*
   288 B.R. 356 (Bankr. D. Del. 2002) ................................................. 13

*In re PTL Holdings, LLC,*
   No. 11–12676, 2011 WL 5509031 (Bankr. D. Del. Nov. 10, 2011) ............................... 30

*In re PWS Holding Corp.,*
   228 F.3d 224 (3d Cir. 2000) .................................................... 30, 31, 33

*In re Resorts Int'l, Inc.,*
   145 B.R. 412 (Bankr. D.N.J. 1990) ................................................. 14

*In re Spansion, Inc.,*
   426 B.R. 114 (Bankr. D. Del. 2010) ................................................ 29

*In re Steaks to Go, Inc.,*
   226 B.R. 35 (Bankr. E.D. Mo. 1998) ............................................... 26

*In re Taylor,*
   913 F.2d 102 (3d. Cir. 1990) ..................................................... 24

*In re the Ground Round, Inc.,*
   335 B.R. 253 (B.A.P. 1st Cir., 2005) .............................................. 26

*In re Trans World Airlines, Inc.,*
   261 B.R. 103 (Bankr. D. Del. 2001) ............................................... 24

*In re W.R. Grace & Co.,*
   729 F.3d 332 (3d Cir. 2013) ...................................................... 12

*In re Wash. Mut., Inc.,*
   442 B.R. 314 (Bankr. D. Del. 2011) ............................................ 27, 30

*In re Washington Mutual, Inc.,*
   461 B.R. 200 (Bankr. D. Del. 2011) ............................................... 12

*In re Zenith Elecs. Corp.,*
   241 B.R. 92 (Bankr. D. Del. 1999) ................................................ 27

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.,*
   987 F.2d 154 (3d Cir. 1993) ....................................................... 3

*Johns-Manville,*
   68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) ......................................... 22

DOCS_SF:87544.5

*L.R.S.C. Co. v. Rickel Home Ctrs. Inc. (In re Rickel Home Ctrs. Inc.)*,
    209 F.3d 291 (3d Cir. 2000) ................................................................................... 25

*N.L.R.B. v. Bildisco & Bildisco (In re Bildisco)*,
    682 F.2d 72 (3d Cir. 1982) ..................................................................................... 24

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 513 (1984) ................................................................................................ 24

*Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*,
    83 F.3d 735 (5th Cir. 1996) .................................................................................... 25

*U.S. v. Reorganized CF&I Fabricators, Inc.*,
    518 U.S. 213 (1996) ................................................................................................ 16

*Westpointe, L.P. v. Franke (In re Westpointe, L.P.)*,
    241 F.3d 1005 (8th Cir. 2001) ................................................................................ 21

**Statutes**

11 U.S.C. § 101(51D) .................................................................................................... 23

11 U.S.C. § 105(d)(2)(B)(vi) ......................................................................................... 10

11 U.S.C. § 1114 ............................................................................................................ 20

11 U.S.C. § 1122 ..................................................................................................... 3, 4, 8

11 U.S.C. § 1122(a) ......................................................................................................... 3

11 U.S.C. § 1123 .............................................................................................................. 3

11 U.S.C. § 1123(a) ......................................................................................................... 4

11 U.S.C. § 1123(a)(1) ..................................................................................................... 4

11 U.S.C. § 1123(a)(2) ..................................................................................................... 5

11 U.S.C. § 1123(a)(3) ..................................................................................................... 5

11 U.S.C. § 1123(a)(4) ..................................................................................................... 5

11 U.S.C. § 1123(a)(5) ..................................................................................................... 5

11 U.S.C. § 1123(a)(6) ..................................................................................................... 6

11 U.S.C. § 1123(a)(7) ..................................................................................................... 6

11 U.S.C. § 1123(b) ..................................................................................................... 4, 7

11 U.S.C. § 1123(b)(1) ................................................................................................ 7

11 U.S.C. § 1123(b)(2) ............................................................................................ 7, 24

11 U.S.C. § 1123(b)(3) ................................................................................................ 7

11 U.S.C. § 1123(b)(4) ................................................................................................ 8

11 U.S.C. § 1123(b)(5) ................................................................................................ 8

11 U.S.C. § 1123(b)(6) ................................................................................................ 8

11 U.S.C. § 1125 ..................................................................................................... 9, 11

11 U.S.C. § 1125(b) ..................................................................................................... 9

11 U.S.C. § 1126 ................................................................................................. 9, 10, 11

11 U.S.C. § 1126(a) ................................................................................................... 11

11 U.S.C. § 1126(c) ................................................................................................... 17

11 U.S.C. § 1126(f) ............................................................................................... 11, 17

11 U.S.C. § 1126(g) ............................................................................................... 11, 17

11 U.S.C. § 1127(a) ................................................................................................... 34

11 U.S.C. § 1127(d) ................................................................................................... 34

11 U.S.C. § 1129 ................................................................................................. 3, 8, 32

11 U.S.C. § 1129(a) ............................................................................................. 9, 21, 23

11 U.S.C. § 1129(a)(1) ............................................................................................. 3, 8

11 U.S.C. § 1129(a)(10) .............................................................................................. 18

11 U.S.C. § 1129(a)(11) .............................................................................................. 19

11 U.S.C. § 1129(a)(12) .............................................................................................. 20

11 U.S.C. § 1129(a)(13) .............................................................................................. 20

11 U.S.C. § 1129(a)(15) .............................................................................................. 20

11 U.S.C. § 1129(a)(16) .............................................................................................. 20

11 U.S.C. § 1129(a)(2) ........................................................................................... 8, 12

11 U.S.C. § 1129(a)(3)..........................................................................................12, 13

11 U.S.C. § 1129(a)(4)..........................................................................................13, 14

11 U.S.C. § 1129(a)(5)..........................................................................................14, 15

11 U.S.C. § 1129(a)(5)(A)(i) .......................................................................................15

11 U.S.C. § 1129(a)(5)(A)(ii) ......................................................................................15

11 U.S.C. § 1129(a)(6).................................................................................................15

11 U.S.C. § 1129(a)(7)..........................................................................................16, 17

11 U.S.C. § 1129(a)(8).........................................................................17, 18, 20, 21

11 U.S.C. § 1129(a)(9).................................................................................................18

11 U.S.C. § 1129(b)............................................................................................. passim

11 U.S.C. § 1129(b)(1) ........................................................................18, 21, 22

11 U.S.C. § 1129(b)(2)(B)...........................................................................21, 22

11 U.S.C. § 1129(b)(2)(C)...........................................................................21, 22

11 U.S.C. § 1129(c).......................................................................................................23

11 U.S.C. § 1129(d)......................................................................................................23

11 U.S.C. § 1129(e)......................................................................................................23

11 U.S.C. § 1141...........................................................................................................33

11 U.S.C. § 1141(b)......................................................................................................33

11 U.S.C. § 1141(c)......................................................................................................33

11 U.S.C. § 1141(d)......................................................................................................33

11 U.S.C. § 365.............................................................................................................24

11 U.S.C. § 365(a)........................................................................................................24

11 U.S.C. § 502(g)........................................................................................................33

11 U.S.C. § 502(h)........................................................................................................33

11 U.S.C. § 502(i)........................................................................................................33

11 U.S.C. § 507(a) ................................................................................................... 18

11 U.S.C. § 507(a)(2) ................................................................................................... 4

11 U.S.C. § 507(a)(3) ................................................................................................... 4

11 U.S.C. § 507(a)(8) ................................................................................................... 5

11 U.S.C. § 510(b) ..................................................................................................... 22

11 U.S.C. § 524(e) ..................................................................................................... 30

28 U.S.C. § 1930(a) ................................................................................................... 20

**Other Authorities**

H.R. Rep. No. 95-595 (1977),
    reprinted in 1978 U.S.C.C.A.N. 5963, 6368 .................................................. 3, 9

S. Rep. No. 95-989 (1978),
    *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912 ................................................... 9

**Rules**

Fed. R. Bankr. P. 2002(b) ......................................................................................... 10

Fed. R. Bankr. P. 3017(d)-(f) .................................................................................... 10

Fed. R. Bankr. P. 3019 ............................................................................................. 34

Fed. R. Bankr. P. 3020(e) ......................................................................................... 35

DOCS_SF:87544.5

The above-captioned debtor and debtor in possession (the "**Debtor**") and ESW Capital, LLC ("**ESW**" and, together with the Debtor, the "**Proponents**") respectfully submit this memorandum of law (this "**Memorandum**") in support of confirmation of the *Amended Plan of Reorganization of Debtor Dated March 31, 2015, As Modified* (as may be further modified, the "**Modified Plan**" or the "**Plan**").[2]   The Modified Plan incorporates certain non-material modifications to the *Amended Plan of Reorganization of the Debtor Dated March 31, 2015* [Docket No. 293] (the "**March 31 Plan**").   For the reasons provided below, the Proponents request that the Court enter an order confirming the Plan, overruling all remaining Objections to the extent not consensually resolved, and approving the non-material modifications reflected in the Modified Plan and deeming such modifications to be accepted by creditors who voted to accept the March 31 Plan.   In support thereof, the Proponents respectfully state as follows:[3]

## PRELIMINARY STATEMENT

1.     The Debtor commenced this chapter 11 case on January 20, 2015 with the goal of maximizing stakeholder value through the sale of substantially all its assets.   In accordance with a Court-approved auction and sale process, the Debtor ultimately selected the bid of ESW as the highest and best offer.   The Plan is a straightforward plan that implements this Court's order declaring ESW as the successful bidder, with the funding of the consideration through a plan of reorganization on substantially the terms set forth in the ESW winning bid.   The Plan provides for the reorganization of the Debtor by retiring, cancelling, extinguishing, and/or discharging the

---

[2]     Capitalized terms used but not defined in this Memorandum have the meanings ascribed to them in the Plan, which is being filed concurrently herewith.

[3]     The facts and circumstances supporting the confirmation of the Plan are set forth more fully in the *Declaration of Todd Wilson in Support of Confirmation of the Amended Plan of Reorganization of the Debtor* (the "**Wilson Declaration**") and in the *Declaration of Catherine Nownes-Whitaker Regarding Analysis of Ballots for Accepting or Rejecting Amended Plan of Reorganization of the Debtor* (the "**Voting Declaration**"), each of which are filed contemporaneously herewith and incorporated herein by reference.

Debtor's prepetition equity interests and issuing New Equity to ESW, and the funding of meaningful distributions to general unsecured creditors through a Distribution Trust. The Plan, which is co-sponsored by the Debtor and ESW, is the result of arm's-length negotiations between the Debtor, the Committee, and ESW, the Debtor's plan sponsor and replacement postpetition lender.

2.    The Proponents respectfully submit that the Plan should be confirmed. The Plan holds unanimous support from voting creditors, securing acceptance from 100 percent of all voting creditors by number and by value. This chapter 11 case has generally proceeded on a consensual basis and support for this Plan is no exception. Every major stakeholder and party in interest, including the Official Committee of Unsecured Creditors (the "**Committee**"), supports confirmation of the Plan.

3.    Only two objections to confirmation of the Plan have been filed (together, the "**Objections**").[4] The Debtor has consensually resolved the NY State Objection. The Debtor has negotiated with the United States Trustee (the "**UST**") to narrow the scope of the UST Objection. The Debtor will continue in its efforts to resolve the remaining objections of the UST to the extent reasonably possible in advance of the Confirmation Hearing. In connection with confirmation of the Plan, five former employees of the Debtor filed objections to the assumption of their Confidentiality and Non-Solicitation Agreements.[5] The Debtor has removed the agreements in question from the Schedule of Assumed Contracts and Unexpired Leases. Accordingly, these objections are moot.

---

[4]    The objecting parties are (a) the United States Trustee [Docket No. 277] (the "**UST Objection**") and (b) the New York State Department of Taxation and Finance [Docket No. 370] (the "**NY State Objection**").

[5]    The five objecting employees are: (1) John Green [Docket Nos. 378 and 148]; (2) Ivan Braiker [Docket No. 164]; (3) Gay Gabrilska [Docket No. 164]; (4) Kim Donaldson [Docket No. 164]; and (5) Glenn Stansbury.

2

4.      Regardless, as set forth more fully in this Memorandum and as the Proponents will establish at the Confirmation Hearing, the Plan satisfies each applicable standard under section 1129, and all other applicable provisions, of the Bankruptcy Code.  The Proponents therefore respectfully request that the Court enter an order confirming the Plan.

**MEMORANDUM**

5.      Under section 1129(a)(1) of the Bankruptcy Code, a chapter 11 plan must comply with all applicable provisions of the Bankruptcy Code.  Legislative history indicates that this subsection embodies and incorporates the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests as well as the requisite mandatory contents of a plan.  *See* H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368.  As demonstrated below, the Plan complies with both sections 1122 and 1123, and all other applicable provisions, of the Bankruptcy Code.  Accordingly, the Plan satisfies the requirements of section 1129(a)(1) and merits confirmation.

**A.      The Plan Satisfies the Requirements of Section 1122.**

6.      Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class."  By its plain language, section 1122(a) prohibits only the classification of dissimilar claims in the same class.  *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158 (3d Cir. 1993); *In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996) ("[C]lassification is constrained by two straight-forward rules:  Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason.").  As such, courts have broad discretion to determine the propriety of classification schemes in light of the facts of each case.  *See In re Johnston*, 21 F.3d 323, 327 (9th Cir. 1994).

3

7.    The Plan organizes Claims and Interests into five (5) different Classes.[6]  *See* Plan, Art. IV.  Each Class consists of substantially similar Claims or Interests.  In addition, valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests.

8.    Namely, the Plan separately classifies Secured Claims (Class 1), Priority Unsecured Non-Tax Claims (Class 2), General Unsecured Claims (Class 3), Subordinated Claims (Class 4), and Equity Interests (Class 5) because each holder of such Claims or Interests may hold (or may have held) rights in the Debtor's estate legally dissimilar to the Claims or Interests in other Classes.  *Id.* at Art. III.

9.    Each Claim or Interest in each particular Class possesses substantial similarity to every other Claim or Interest in that Class.  The classification of Claims and Interests in the Plan therefore complies with section 1122 of the Bankruptcy Code.

**B.    The Plan Complies with the Mandatory Requirements of Section 1123(a).**

10.    Section 1123(a) of the Bankruptcy Code sets the mandatory requirements for the contents of a corporate debtor's chapter 11 plan.  Additionally, section 1123(b) sets forth various provisions that a debtor may, but need not, include in its plan.  As shown below, the Plan complies with all of these requirements.

**a.    Section 1123(a)(1) – The Plan Designates Classes of Claims and Interests.**

11.    Section 1123(a)(1) of the Bankruptcy Code requires that a chapter 11 plan designate classes of claims and interests other than claims of a kind specified in sections 507(a)(2) (administrative expense claims), 507(a)(3) (claims arising during the "gap"

---

[6]    The Plan does not classify Administrative Claims, Priority Tax Claims, and Ordinary Course Liabilities.

period in an involuntary bankruptcy case), and 507(a)(8) (priority tax claims) of the Bankruptcy Code. The Plan satisfies this requirement by expressly classifying all Claims and Interests, other than Administrative Claims, Priority Tax Claims, and Ordinary Course Liabilities. *See* Plan, Art. V.

  **b.**   **Section 1123(a)(2) – The Plan Identifies Unimpaired Classes of Claims and Interests.**

12.   Section 1123(a)(2) of the Bankruptcy Code requires that a chapter 11 plan "specify any class of claims or interests that is not impaired under the plan." The Plan satisfies this requirement by identifying the Claims in Classes 1 and 2 as Unimpaired. *See* Plan, § 3.3.

  **c.**   **Section 1123(a)(3) – The Plan Specifies the Treatment of Impaired Classes.**

13.   Section 1123(a)(3) of the Bankruptcy Code requires that a chapter 11 plan "specify the treatment of any class of claims or interests that is impaired under the plan." The Plan satisfies this requirement by specifying the treatment of each Impaired Class under the Plan. *See* Plan, §§ 5.2 – 5.5.

  **d.**   **Section 1123(a)(4) – The Plan Provides for the Same Treatment of Claims within Each Class.**

14.   Section 1123(a)(4) of the Bankruptcy Code requires that a chapter 11 plan provide the same treatment for each claim or interest in a particular class. The Plan satisfies this requirement by providing the same treatment to every Claim or Interest in each particular Class. *See* Plan, Art. V.

  **e.**   **Section 1123(a)(5) – The Plan Provides for Adequate Means of Implementation.**

15.   Section 1123(a)(5) of the Bankruptcy Code requires a chapter 11 plan to "provide adequate means for the plan's implementation." Articles VI and X of the Plan satisfy this requirement by setting forth specific means for the Plan's execution and implementation,

including the establishment of the Distribution Trust, the use of the Consideration to be provided by the Plan Sponsor to fund the Distribution Trust Fund, and the revesting of property of the Debtor (other than the Distribution Trust Assets) in the Reorganized Debtor.

> **f.**    **Section 1123(a)(6) – The Plan Provides for a Provision Prohibiting the Issuance of Nonvoting Equity Securities.**

16.    Section 1123(a)(6) of the Bankruptcy Code requires the plan of a corporate debtor to provide that the debtor's charter prohibits the issuance of nonvoting equity securities and, as to the classes of securities possessing voting power, to provide an appropriate distribution of such power among such classes.  11 U.S.C. § 1123(a)(6).  Section 6.1 of the Plan provides that the Reorganized Debtor's Charter Documents shall be deemed amended to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such Charter Documents as permitted by applicable law.  In addition, the Debtor has amended the form of Amended and Restated Certificate of Incorporation of Hipcricket, Inc. to provide explicitly that the Reorganized Debtor shall not issue any class of nonvoting equity securities unless and solely to the extent permitted by section 1123(a)(6) of the Bankruptcy Code.  *See Notice of Filing of Amended Exhibit B to Plan Supplement Relating to the Amended Plan of Reorganization of Debtor, as Modified* [388].  Consequently, the Plan complies with the requirements of section 1123(a)(6) of the Bankruptcy Code.

> **g.**    **Section 1123(a)(7) – The Plan Only Contains Provisions Consistent with the Interests of Creditors and Interest Holders with Respect to Officers and Directors.**

17.    Section 1123(a)(7) of the Bankruptcy Code provides that a chapter 11 plan must "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or

6

trustee under the plan and any successor to such officer, director, or trustee." The Debtor asserts that the Plan fulfills this requirement. The Plan Supplement provides the names for each of the Reorganized Debtor's officers and board members, and each selected person is well-qualified and his/her service will be in the best interests of the Reorganized Debtor and consistent with the interests of the Reorganized Debtor's stakeholders and public policy.

**C.      Section 1123(b) – The Plan Includes Appropriate Permissive Provisions.**

18.      Section 1123(b) of the Bankruptcy Code specifies certain permissive provisions that may appear in a plan.

19.      Section 1123(b)(1) provides that a plan may impair or leave unimpaired any class of claims, whether secured or unsecured. Article V of the Plan specifies the treatment of each Class under the Plan.

20.      Section 1123(b)(2) provides that, subject to section 365 of the Bankruptcy Code, a plan may provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously rejected. Article VIII of the Plan contains such provisions.

21.      Section 1123(b)(3) specifies that a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate" or "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." Article XI of the Plan contains such provisions. In particular, the Plan provides for the release of a variety of claims, on a mutual basis, among the Debtor's estate, retained professionals, Distribution Trustee, Plan Sponsor, DIP Lender, and the Committee and its members and retained professionals. These releases are an integral part of the Plan. The releases provide both appropriate levels of protection to parties that constructively participated in the Debtor's restructuring process as well as finality for this chapter 11 estate.

7

For example, the Distribution Trustee retains the right to pursue avoidance actions against insiders of the Debtor.

22.     Section 1123(b)(4) specifies that a plan may provide for the sale of all or substantially all of the property of the estates, and the distribution of the proceeds of such sale among holders of claims or interests.  This provision is not applicable to this reorganization Plan.

23.     Section 1123(b)(5) allows a plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."  Article V contains provisions which permissibly modify the rights of holders of unsecured claims.

24.     Section 1123(b)(6) specifies that a plan may include any other provisions not inconsistent with the applicable provisions of the Bankruptcy Code.  The Plan contains many such provisions which are standard in chapter 11 plans.  For example, the Plan contains various definitions consistent with the purposes of the Bankruptcy Code and provisions governing and related to distributions to creditors.

25.     Based upon the foregoing, the Debtor respectfully submits that the Plan complies with the provisions of Bankruptcy Code sections 1122 and, therefore, complies with section 1129(a)(1) of the Bankruptcy Code.

**D.     Section 1129(a)(2) – The Proponents Have Complied with All Applicable Provisions of the Bankruptcy Code.**

26.     While section 1129(a)(1) focuses on a *plan's* compliance with the Bankruptcy Code, section 1129(a)(2) focuses on the *proponent's* compliance with the Bankruptcy Code.  *See* 11 U.S.C. § 1129(a)(2).  The legislative history of this provision indicates that its principal purpose is to ensure that the proponent complies with the disclosure and solicitation

8

requirements set forth in sections 1125 and 1126 of the Bankruptcy Code. *See* S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912 ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368. The Proponents have complied with the applicable provisions of the Bankruptcy Code, including the provisions of sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and Plan solicitation.

> **a.**    **The Plan Complies with Section 1125 of the Bankruptcy Code.**

27.    Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a chapter 11 plan from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b). In this case, the Court entered an order [Docket No. 290] (the "**Solicitation Procedures Order**") conditionally approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code. Solicitation Procedures Order at ¶ 2.[7]

28.    Pursuant to the Solicitation Procedures Order, the Debtor – through its claims, noticing, balloting, and solicitation agent, Rust Consulting | Omni Bankruptcy ("**Rust Omni**") – transmitted the approved Solicitation Package and Non-Voting Notices in accordance with the instructions of the Court in the Solicitation Procedures Order. *See* Rust Omni Affidavits at Docket Nos. 309 and 310. In addition, in compliance with the Solicitation Procedures Order,

---

[7]    The motion seeking entry of the Solicitation Procedures Order [Docket No. 256] ("**Solicitation Procedures Motion**") also requested final approval of the Disclosure Statement at the Confirmation Hearing as part of the Confirmation Order. *See* Solicitation Procedures Motion at ¶ 20.

copies of the Solicitation Procedures Order, the Plan, and the Disclosure Statement have been available upon request from the Debtor's counsel and, free of charge, at www.omnimgt.com/hipcricket (the "**Case Website**").  Additionally, the Debtor caused notice of the Disclosure Statement, Plan and related matters to be published in the national edition of USA Today.  *See* Docket No. 311.  On April 27, 2015, the Debtor filed the *Plan Supplement Relating to the Amended Plan of Reorganization of the Debtor* [Docket No. 361] (the "**Plan Supplement**") and made the Plan Supplement available on the Case Website and served it on the parties entitled to receive notice.  *See* Affidavit of Service [Docket No. 380].

29.    Thus, the Solicitation Package was served in accordance with the requirements of Bankruptcy Rules 2002(b) and 3017(d)-(f) and the Solicitation Procedures Order. The Solicitation Package clearly stated that, consistent with the Solicitation Procedures Order and section 105(d)(2)(B)(vi) of the Bankruptcy Code, final approval of the Disclosure Statement and any objections thereto would be heard at the Confirmation Hearing.

30.    After notice to all creditors, no party has objected to the adequacy of the Disclosure Statement.[8]  For this reason and for the additional reasons supporting the adequacy of the Disclosure Statement as set forth in the Solicitation Procedures Motion, approval of the Disclosure Statement on a final basis as part of the Confirmation Order is appropriate.

b.    **The Plan Complies with Section 1126 of the Bankruptcy Code.**

31.    Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a chapter 11 plan.  As set forth in the Disclosure Statement and the Voting Declaration, in accordance with section 1126 of the Bankruptcy Code, the Debtor solicited acceptances from the

---

[8]    The Debtor has resolved all issues regarding the UST Objection as it relates to the adequacy of the Disclosure Statement.

10

holders of all Allowed Claims in each Class of Impaired Claims entitled and anticipated to receive distributions under the Plan.  Specifically:

> i. Holders of Claims or Interests in Classes 1 and 2 are designated under the Plan as unimpaired.  Accordingly, pursuant to section 1126(f) of the Bankruptcy Code, those Classes are conclusively presumed to have accepted the Plan.[9]
>
> ii. Claims in Class 3 are designated as impaired under the Plan, and holders of such Claims are entitled and anticipated to receive distributions on account of their Allowed Claims under the Plan. Accordingly, pursuant to section 1126(a)  of the Bankruptcy Code, holders of Claims in Class 3 were entitled to vote to accept or reject the Plan.[10]
>
> iii. Under the Plan, Claims in Class 4 and Equity Interests in Class 5 will receive no distributions and retain no property under the Plan. Therefore, consistent with the Solicitation Procedures Order, votes to accept or reject the Plan were not solicited from such holders because they are not receiving or retaining any property under the Plan on account of their Claims or Interests.  *See* Plan at § 3.5.  Holders of Claims in Class 4 and Equity Interests in Class 5 have been deemed to reject the Plan, consistent with section 1126(g)  of the Bankruptcy Code, and were not entitled to vote to accept or reject the Plan.[11]

Based upon the foregoing, the Proponents' solicitation of votes with respect to the Plan was undertaken in conformity with sections 1125 and 1126 of the Bankruptcy Code and the Solicitation Procedures Order.  The Proponents acted in good faith at all times with respect to the solicitation of votes on the Plan.  The Proponents, therefore, have complied with applicable

---

[9] Section 1126(f) of the Bankruptcy Code provides that "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required."  11 U.S.C. § 1126(f).

[10] Section 1126(a) of the Bankruptcy Code provides that "[t]he holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." 11 U.S.C. § 1126(a).

[11] Section 1126(g) of the Bankruptcy Code provides that "[n]otwithstanding any other provision of [section 1126 of the Bankruptcy Code], a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g).

provisions of the Bankruptcy Code and has satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

**E.     Section 1129(a)(3) – The Proponents Proposed the Plan in Good Faith.**

32.     Under section 1129(a)(3) of the Bankruptcy Code, a bankruptcy court may confirm a chapter 11 plan only if the plan "has been proposed in good faith and not by any means forbidden by law." The Third Circuit has indicated that a chapter 11 plan is proposed in good faith when it "will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re W.R. Grace & Co.*, 729 F.3d 332, 346 (3d Cir. 2013) (quoting *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012)). The relevant objectives and purposes of the Bankruptcy Code with respect to "good faith" include, among other things, maximizing property available to satisfy creditors, the expeditious distribution of the bankruptcy estate to its creditors, achieving fundamental fairness and justice. *Am. Capital Equip.*, 688 F.3d at 156-57 (internal citations omitted). To meet the good faith standard, the plan proponent must establish that (i) the plan fosters a result consistent with the Bankruptcy Code's objectives, (ii) the plan has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected, and (iii) there was fundamental fairness in dealing with the creditors. *In re Washington Mutual, Inc.*, 461 B.R. 200, 239 (Bankr. D. Del. 2011) (quoting *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 609 (Bankr. D. Del. 2001)). The inquiry into whether a plan was proposed in good faith may consider the totality of the circumstances surrounding the plan's proposal. *In re W.R. Grace & Co.*, 468 B.R. 81, 133 (D. Del. 2012).

33.     Good faith for purposes of section 1129(a)(3) of the Bankruptcy Code also may be found where the plan is supported by key creditor constituencies or was the result of arm's length negotiations with creditors. *In re Eagle-Picher Indus., Inc.*, 203 B.R. 256, 274 (Bankr. S.D. Ohio 1996) (finding that chapter 11 plan was proposed in good faith when, among other

12

things, it was based on arm's length negotiations among plan proponents and other parties in interest).

34.    The Plan accomplishes the goals promoted by section 1129(a)(3) of the Bankruptcy Code by enabling (i) the Debtor to reorganize and continue as a going concern and, (ii) in respect to the Distribution Trust Assets, the liquidation of said assets, via the Distribution Trust, in an efficient manner to maximize Plan distributions to creditors on a fair and equitable basis, in accordance with the priorities established by the Bankruptcy Code.  Moreover, the Plan is the direct result of extensive good faith, arm's length negotiations between the Debtor, Committee, and Plan Sponsor, and thereby reflects substantial input from the principal constituencies having an interest in the chapter 11 case.  The Plan has been proposed with the legitimate and honest purpose of reorganizing the Debtor and implementing the liquidation of the Distribution Trust Assets for the benefit of the Debtor's creditors.

35.    Accordingly, for the foregoing reasons, the Proponents have satisfied the requirements of section 1129(a)(3) of the Bankruptcy Code.

**F.    Section 1129(a)(4) – The Plan Provides for Court Approval of All Payments for Services in Connection with This Case.**

36.    Section 1129(a)(4) of the Bankruptcy Code requires that a payment "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."  Courts have construed this section as requiring the bankruptcy court's review and approval of the reasonableness of all professional fee payments made from estate assets.  *See In re NH Holdings, Inc.*, 288 B.R. 356, 362-63 (Bankr. D. Del. 2002) (finding in a confirmation order that the plan complied with section 1129(a)(4) of the Bankruptcy Code where all final fees

13

and expenses payable to professionals remained subject to final review by the court); *In re Resorts Int'l, Inc.*, 145 B.R. 412, 475 (Bankr. D.N.J. 1990).

37.    No payment for services or costs and expenses in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been or will be made other than payments that have been authorized by an order of the Court.  The Court has previously authorized the interim payment of the fees and expenses incurred by estate professionals.  *See Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 115].  Pursuant to section 4.1(d)(ii) of the Plan, professionals shall file and serve applications for allowance of final compensation and reimbursement of expenses no later than thirty (30) days after the effective date of the Plan. Such applications will be subject to review and approval by the Court.  Accordingly, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

## G.    Section 1129(a)(5) – The Plan Identifies (i) the Reorganized Debtor's Directors and Officers and (ii) the Distribution Trustee.

38.    Section 1129(a)(5) of the Bankruptcy Code requires that (a) the proponent of a chapter 11 plan disclose the identity of any individual proposed to serve after confirmation as a director, officer, or voting trustee of the debtor, (b) the appointment of such individuals comply with the interests of creditors and shareholders and with public policy, and (c) the proponent disclose the identity of any insider that the reorganized debtor will employ and the nature of the compensation provided to that insider.

39.    The Plan Supplement identifies the proposed officers and directors of the Reorganized Debtor, including any insiders of the Debtor to be employed post-Effective-Date. Each identified person is well-qualified and his/her service will be in the best interests of the

Reorganized Debtor and consistent with the interests of the Reorganized Debtor's stakeholders and public policy.

40.    Pursuant to sections 6.4(d) and (e) of the Plan, the Distribution Trust Agreement shall be executed on the effective date of the Plan and all property of the Debtor constituting the Distribution Trust Assets shall be conveyed and transferred by the Debtor to the Distribution Trust.    The identity, qualifications, and affiliations of the Distribution Trustee have been disclosed in the Plan Supplement in satisfaction of section 1129(a)(5)(A)(i) of the Bankruptcy Code.[12]    Further, in accordance with section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the appointment of the Distribution Trustee will be consistent with the interests of creditors and with public policy inasmuch as no objection to the proposed Distribution Trustee was received and the Committee participated in the selection and the negotiation of the compensation of the Distribution Trustee.

41.    Based upon the foregoing, the Proponents have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code to the extent they may be applicable in this Chapter 11 Case.

**H.    Section 1129(a)(6) – The Plan Does Not Implement Any Change to Publicly Regulated Rates.**

42.    Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission with jurisdiction over the rates of a debtor approve any changes in rate regulations provided in a chapter 11 plan.  Because the Debtor is not subject to any such regulation and the Plan does not propose any rate changes, section 1129(a)(6) does not apply to the Plan.

---

[12]    Pursuant to the Plan, and as disclosed in the Plan Supplement, the Committee elected Hal L. Baume to serve as Distribution Trustee.  However, Mr. Baume recently informed the Committee and Debtor that he is unable to serve as Distribution Trustee.  Accordingly, the Committee has elected Peter Kravitz to serve as Distribution Trustee on similar terms as Mr. Baume.  The Debtor will file an amended Distribution Trust Agreement as soon as reasonably practicable.

I.    **Section 1129(a)(7) – The Plan Is in the Best Interests of Creditors.**

43.    The "best interests" test of section 1129(a)(7) of the Bankruptcy Code requires that holders of impaired claims or interests that do not vote to accept a chapter 11 plan "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date." Accordingly, section 1129(a)(7) of the Bankruptcy Code focuses on individual dissenting creditors rather than classes of claims. *See, e.g., Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 442 n.13 (1999) (stating that the "'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").

44.    Under the best interests test, the court must find that each non-accepting creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated. *LaSalle*, 526 U.S. at 440); *U.S. v. Reorganized CF&I Fabricators, Inc.*, 518 U.S. 213, 228 (1996).  In considering whether a plan is in the "best interests" of creditors, a court need not consider any alternative to the plan other than the recoveries projected in a liquidation of all the debtor's assets under chapter 7 of the Bankruptcy Code. *See, e.g., In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990).

45.    As set forth in Article VII.C of the Disclosure Statement and Exhibit B to the Disclosure Statement (collectively, the "**Liquidation Analysis**"), the "best interests" test is satisfied in this Chapter 11 Case with respect to each non-accepting impaired Claim or Interest. The Liquidation Analysis demonstrates that all holders of Claims and Equity Interests in this Chapter 11 Case will fare no worse under the Plan than they would in a chapter 7 liquidation.  As set forth in the Liquidation Analysis, in a chapter 7 case, there would be no Consideration being

16

paid and provided by the Plan Sponsor.  Without the Consideration, as provided in Exhibit B to the Disclosure Statement, there would be insufficient proceeds of estate assets to pay in full secured and administrative claims, and thus there likely would be no recovery at all for general unsecured creditors in a chapter 7 proceeding.  Under the Plan, a recovery is anticipated for general unsecured creditors as set forth in Exhibit B, using a portion of the Consideration and any proceeds of other Distribution Trust Assets.

46.    Consequently, no dissenting party in an impaired Class will receive less under the Plan than it would receive in a liquidation of the Debtor's assets, and therefore the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**J.    Section 1129(a)(8) – Acceptance by Impaired Classes.**

47.    Subject to the "cram down" exceptions contained in section 1129(b) of the Bankruptcy Code, section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests under a plan has either accepted the plan or is not impaired under the plan.  11 U.S.C. § 1129(a)(8).  In the instant case, the only impaired voting Class (Class 3), voted to accept the Plan by greater than the required one-half in number and two-thirds in amount necessary for Class acceptance.  *See* 11 U.S.C. § 1126(c); Voting Declaration at ¶ 6.  Both unimpaired Classes under the Plan (Classes 1 and 2) are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(8) of the Bankruptcy Code are met with respect to Classes 1, 2, and 3.

48.    With respect to Classes 4 and 5, consistent with section 1126(g) of the Bankruptcy Code, (i) the holders of Claims in Class 4 will not receive or retain any property under the Plan, and therefore Class 4 is deemed to have rejected the Plan; and (ii) the holders of Equity Interests in Class 5 shall neither receive nor retain any property under the Plan, and therefore Class 5 is deemed to have rejected the Plan.  *See* Plan at § 3.5.  Although the

requirements of section 1129(a)(8) of the Bankruptcy Code are not met with respect to Classes 4 and 5 because those Classes are impaired and deemed to reject the Plan, the Plan nevertheless may be confirmed over such non-acceptance pursuant to the "cram down" provisions of section 1129(b)(1) of the Bankruptcy Code.  For the reasons discussed below, the Debtor has satisfied section 1129(b) of the Bankruptcy Code to the extent necessary to obtain confirmation of the Plan.

**K.      Section 1129(a)(9) – The Plan Complies with the Required Treatment of Administrative Claims and Priority Claims.**

49.      Section 1129(a)(9) of the Bankruptcy Code requires that claimholders entitled to priority treatment under section 507(a) receive cash payments under a chapter 11 plan unless such claimholders agree to different treatment.  Article IV of the Plan provides that holders of Allowed Administrative Claims (other than the Allowed DIP Claim) and Allowed Priority Tax Claims will receive a cash distribution in full satisfaction of their Claims.  The Plan therefore satisfies the requirements of section 1129(a)(9).  No party has objected to Confirmation on the basis that the Plan fails to comply with section 1129(a)(9) of the Bankruptcy Code.

**L.      Section 1129(a)(10) – The Plan Has Been Accepted by at Least One Impaired Class of Claims.**

50.      Section 1129(a)(10) of the Bankruptcy Code requires that at least one class of impaired claims vote to accept the chapter 11 plan, without including any acceptance by an insider.  As evidenced by the Voting Report, the only impaired Class entitled to vote on the Plan voted to accept the Plan.  As such, at least one impaired Class of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code).  Accordingly, the Plan satisfies the requirements of section 1129(a)(10).

**M.     Section 1129(a)(11) – The Plan Is Feasible.**

51.     Section 1129(a)(11) of the Bankruptcy Code provides that a chapter 11 plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." Section 1129(a)(11) does *not* require the Debtor to guarantee the Plan's complete success. Instead, and to satisfy the feasibility requirement, the Debtor must show that the Plan has a *reasonable* chance of success. *See In re Aleris Int'l, Inc.*, No. 09-10478 (BLS), 2010 WL 3492664, at *27–29 (Bankr. D. Del. May 13, 2010).

52.     The Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code, as confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Reorganized Debtor. The Plan Sponsor and its affiliates have acquired more than 30 distressed software-related companies in the past 5 years. The Plan Sponsor and its affiliates are experienced in successfully turning around distressed situations to generate sustainable profits. The Plan Sponsor believes that under its management, the Reorganized Debtor will enhance its relationships with its employees, customers, and vendors, while simultaneously engaging in cost-cutting efforts to drive efficiency and profitability. The Plan Sponsor also possesses more than $20 million of liquidity and believes that it will be able to leverage its relationships, expertise, and know-how to help the Reorganized Debtor thrive. Accordingly, the Debtor and Plan Sponsor are confident that the Reorganized Debtor will be feasible going forward, and will not require a further reorganization. Furthermore, no distributions to creditors under the Plan are dependent on any metrics related to the Reorganized Debtor. *See* Disclosure Statement at Art. V.

**N.      Section 1129(a)(12) - The Plan Provides for Payment of All Statutory Fees.**

53.      Section 1129(a)(12) of the Bankruptcy Code requires that a debtor either directly pay all fees required under section 1930(a) of the Judicial Code, as determined by the bankruptcy court at the confirmation hearing, or provide in its chapter 11 plan for the payment of all such fees on the effective date of the plan.  The Plan provides that the Debtor or the Distribution Trustee, as applicable, will pay all fees required under 28 U.S.C. § 1930(a) until the Chapter 11 Case is closed, converted, or dismissed.  Plan at Art. IV(1)(c).  Accordingly, the Plan satisfies section 1129(a)(12).

**O.      Sections 1129(a)(13) - (16) Are Inapplicable.**

54.      Section 1129(a)(13) of the Bankruptcy Code requires chapter 11 plans to continue all retiree benefits (as defined in section 1114 of the Bankruptcy Code).  The Debtor does not have any retirees entitled to benefits.  Accordingly, this requirement is inapplicable.

55.      Sections 1129(a)(14) and (15) of the Bankruptcy Code apply only to a debtor that is an individual and thus do not apply here.

56.      Section 1129(a)(16) of the Bankruptcy Code applies only to a debtor that is a non-profit entity or trust and thus does not apply here.

**P.      The Plan Complies with the Requirements of Section 1129(b).**

57.      As discussed above, (a) holders of impaired Claims in Class 4 will not receive any distribution pursuant to the Plan and (b) holders of Equity Interests in Class 5 will not receive any distributions under the Plan on account of such Equity Interests.  Accordingly, both Class 4 and Class 5 (together, the "**Deemed Rejecting Classes**"), are deemed to have rejected the Plan and section 1129(a)(8) has not been satisfied with respect to these Classes.  Thus, to confirm the Plan, the Debtor must satisfy the requirements of section 1129(b) of the Bankruptcy Code with respect to the holders of Claims and Interests in the Classes 4 and 5.

58.    Section 1129(b) of the Bankruptcy Code provides a mechanism known as "cram down" for confirmation of a chapter 11 plan, despite the rejection of the plan by a class or classes of impaired claims or equity interests.  Specifically, section 1129(b) of the Bankruptcy Code provides that, if all the requirements of section 1129(a) of the Bankruptcy Code are satisfied, other than the requirement of acceptance by all impaired classes under section 1129(a)(8) of the Bankruptcy Code, a plan may nevertheless be confirmed so long as the plan "does not discriminate unfairly" and is "fair and equitable" with respect to impaired, non-consenting classes.  11 U.S.C. § 1129(b)(1) .  For the reasons set forth below, the Plan meets these requirements.

a.    **The Plan Is Fair and Equitable.**

59.    Section 1129(b)(2)(B) of the Bankruptcy Code states that a plan is "fair and equitable" with respect to a class of unsecured claims if "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property."  11 U.S.C. § 1129(b)(2)(B).  Section 1129(b)(2)(C) further provides that a plan is fair and equitable with respect to a class of interests if the plan provides that "the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property."   11 U.S.C. § 1129(b)(2)(C).  This latter standard necessarily is satisfied with respect to any impaired dissenting class to the extent that there is no class of claims junior to such dissenting class.  *See Westpointe, L.P. v. Franke (In re Westpointe, L.P.)*, 241 F.3d 1005, 1007 (8th Cir. 2001) ("[A] plan is fair and equitable as long as the holder of any interest junior to the dissenting impaired class does not receive any property under the reorganization plan, and because there are no interests junior to the [impaired class], the confirmed plan satisfies this requirement.").

60.     The Plan satisfies sections 1129(b)(2)(B) and 1129(b)(2)(C) for Classes 4 and 5

because (a) for Class 4, no holder of a Claim that is junior to the Claims in Class 4 is receiving or

retaining any property under the Plan on account of such Claim; and (b) for Class 5, no holder of

an interest that is junior to the Equity Interests in Class 5 is receiving or retaining any property

under the Plan on account of such interest.  Thus, the Plan satisfies the requirements for "cram

down" with respect to the Deemed Rejecting Classes.

     **b.     The Plan Does Not Discriminate Unfairly.**

61.     Section 1129(b)(1) of the Bankruptcy Code does not prohibit discrimination

between classes under a chapter 11 plan – it prohibits only discrimination that is "unfair."

Generally speaking, section 1129(b)(1) of the Bankruptcy Code is intended to "ensure[ ] that a

dissenting class will receive relative value equal to the value given to all other similarly situated

classes.  Thus a plan proponent may not segregate two similar claims or groups of claims into

separate classes and provide disparate treatment for those classes." *Johns-Manville*, 68 B.R. 618,

636 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also Armstrong World Indus.*, 348 B.R. 111,

121 (D. Del. 2006) (citing *Johns-Manville* and stating that the "hallmarks of the various tests

have been whether there is a reasonable basis for the discrimination, and whether the debtor can

confirm and consummate a plan without the proposed discrimination").

62.     Under the foregoing standards, the Plan does not "discriminate unfairly" against

any relevant Class.  Specifically, the Deemed Rejecting Classes are classified appropriately as

the Claims in each of the Deemed Rejecting Classes are not similarly situated with the Claims in

other Classes.  The Claims in Class 4, which are Claims subject to subordination under section

510(b) of the Bankruptcy Code, are legally distinct from the Claims in the other Classes under

the Plan.  With respect to the Equity Interests in Class 5, these interests are not classified

separately for the purpose of unfair discrimination because Class 5 comprises all of the Equity

22

Interests in the Debtor.  Accordingly, the Plan does not "discriminate unfairly" against the foregoing Classes.

**Q.    Section 1129(c) – The Plan is the Only Plan Filed in This Chapter 11 Case.**

63.    Section 1129(c) of the Bankruptcy Code provides that, with a limited exception related to plan modifications, a bankruptcy court may only confirm one plan.  The Plan is the only plan that has been filed in this Chapter 11 Case and is the only plan that satisfies the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

**R.    Section 1129(d) – The Principal Purpose of the Plan is Not the Avoidance of Taxes or of the Application of Section 5 of the Securities Act.**

64.    Section 1129(d) of the Bankruptcy Code provides that on request of a party in interest that is a governmental unit, the bankruptcy court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or of the application of section 5 of the Securities Act.  No governmental unit or other party in interest has requested that the Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  Moreover, as set forth in the Wilson Declaration, the principal purpose of the Plan is to reorganize the Debtor as a going concern and liquidate the Distribution Trust Assets for the benefit of creditors.  The principal purpose of the Plan is not the avoidance of taxes.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**S.    Section 1129(e) – The Debtor is Not a Small Business Debtor.**

65.    Section 1129(e) of the Bankruptcy Code concerns the confirmation of a plan "[i]n a small business case" and therefore is inapplicable here because the Debtor is not a "small business debtor" within the meaning of section 101(51D) of the Bankruptcy Code.

**T.      The Assumption and Assignment or Rejection of the Executory Contracts and Unexpired Leases Under the Plan Should be Approved.**

66.     Article VIII of the Plan provides for either the assumption or the rejection of all remaining executory contracts and unexpired leases of the Debtor upon the occurrence of the Effective Date, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code.  Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease."  11 U.S.C. § 365(a).  Courts routinely approve motions to assume and assign or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.  *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that the traditional standard applied by courts to authorize the rejection of an executory contract is that of "business judgment"); *see also In re Taylor*, 913 F.2d 102, 107 (3d. Cir. 1990) (acknowledging "the traditional 'business judgment' test" for determining whether to reject an executory contract); *In re Buckhead America Corp.*, 180 B.R. 83, 88 (Bankr. D. Del. 1995) ("[T]he bankruptcy court was able to meet its requirement to find . . . that assumption of each franchise agreement was a reasonable exercise of the debtor's business judgment.").

67.     Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease.  *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'" (internal quotations omitted)).  The "business judgment" test is not a strict standard; it merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  *N.L.R.B. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (noting that the "usual test for rejection of an executory contract

24

is simply whether rejection would benefit the estate"), *aff'd*, 465 U.S. 513.    Further, "[s]ection 365 enables the trustee to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not." *L.R.S.C. Co. v. Rickel Home Ctrs. Inc. (In re Rickel Home Ctrs. Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000); *see also Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (section 365 of the Bankruptcy Code "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed").

68.    In the sound exercise of its business judgment, the Debtor has determined to assume the executory contracts and unexpired leases identified on **Exhibit B** to the Plan and to reject any and all other remaining executory contracts and unexpired leases that have not otherwise been addressed in this Chapter 11 Case.[13]    For the avoidance of doubt, the Reorganized Debtor is assuming all postpetition contracts entered into by the Debtor.

69.    Five former employees of the Debtor filed objections (collectively, the "**Employee Assumption Objections**") to the proposed assumption of their Confidentiality and Non-Solicitation Agreements (collectively, the "**Objecting Employee Agreements**") identified on the previous Schedule of Assumed Contracts and Unexpired Leases.[14]    As reflected in the current Schedule of Assumed Contracts annexed as Exhibit B to the Plan, the Reorganized Debtor has withdrawn the Objecting Employee Agreements from the Schedule of Assumed Contracts and Unexpired Leases.    Accordingly, the Employee Assumption Objections are moot and should be overruled.    Withdrawal of the Objecting Employee Agreements from the Schedule

---

[13]    By agreement with AOL, Inc., the Debtor has added the *Patent License and Settlement Agreement, effective February 5, 2013, by and between Augme Technologies, Inc. and AOL, Inc.* to the Schedule of Assumed Contracts and Unexpired Leases.

[14]    The five objecting employees are: (1) John Green [Docket Nos. 378 and 148]; (2) Ivan Braiker [Docket No. 164]; (3) Gay Gabrilska [Docket No. 164]; (4) Kim Donaldson [Docket No. 164]; and (5) Glenn Stansbury.

25

of Assume Contracts and Unexpired Leases shall not constitute an admission as to whether the Objecting Employee Agreements are executory.    To the extent the Objecting Employee Agreements were executory as of the Petition Date, the rejection of those agreements does not terminate the Objecting Employee Agreements.  *See, e.g., In re the Ground Round, Inc.*, 335 B.R. 253, 261 (B.A.P. 1st Cir., 2005) ("Rejection does not constitute a termination of the contract.").    Thus, all obligations regarding confidentiality and non-solicitation under the Objecting Employee Agreements would continue.  *See, e.g., In re Don & Lin Trucking Co., Inc.*, 110 B.R. 562, 568 (Bankr. N.D. Al. 1990) (a covenant not to compete in an agreement with a trucking company was enforceable after rejection); *In re Steaks to Go, Inc.*, 226 B.R. 35, 38 (Bankr. E.D. Mo. 1998) ("Debtor's rejection of a Franchise Agreement is a rejection and breach of the entire executory contract; however, the covenants not to compete remain effective and are otherwise enforceable.").  To the extent the Objecting Employee Agreements were not executory as of the Petition Date, the executed Objecting Employee Agreements would "ride through" this Debtor's bankruptcy case and remain in effect and binding.  The Reorganized Debtor reserves all rights to enforce the Objecting Employee Agreements to the fullest extent permissible under applicable law.

70.    The Debtor believes that the designated assumption or rejection of executory contracts and unexpired leases under the Plan will aid in the implementation of the Plan and are in the best interests of the Debtor, its estate, and holders of Claims and other parties in interest in this Chapter 11 Case.  Therefore, the proposed assumptions and rejections provided for in the Plan should be approved in connection with the confirmation of the Plan.

**U.    The Releases Contemplated by the Plan Should Be Approved.**

71.    The Plan provides for a release of certain causes of action by the Debtor against third parties (the "**Debtor Release**") and certain releases by third parties (the "**Third Party**

**Release**" and, together with the Debtor Release, the "**Releases**").  *See* Plan at Art. XI.  No creditor entitled to vote to accept or reject the Plan was obligated to provide a Third Party Release.  Rather, each such creditor had the opportunity to opt out of the Third Party Release, thereby making that release fully consensual by its terms.  *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 304–06 (Bankr. D. Del. 2013).  Further, the Releases contemplated by the Plan implement a fundamental arms'-length agreement among the Debtor, Plan Sponsor, and the Committee crucial to confirmation of the Plan.  Specifically, the Third Party Releases form an essential part of the overall consideration by which the Debtor, the Committee, and the Plan Sponsor collectively agreed to move forward with and support the Plan.

### a.    The Debtor's Releases of Third Parties Should Be Approved.

72.    Courts in this jurisdiction typically assess the propriety of a release by a debtor of others in light of five "*Zenith* factors" in the context of a chapter 11 plan:

  i. an identity of interest between the debtor and the third party, such that a suit against the third party is, in essence, a suit against the debtor or will deplete assets of the estate;

  ii. substantial contribution by the third party to the plan;

  iii. the essential nature of the release to the debtor's plan;

  iv. an agreement by a substantial majority of creditors to support the plan and the release; and

  v. provision in the plan for payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999).  No factor is dispositive, nor is a proponent required to establish each factor required for the release to be approved.  *See In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011) ("These factors . . . simply provide guidance in the [c]ourt's determination of fairness.").

73.    The Debtor submits that each *Zenith* factor supports the proposed release by the Debtor of third parties, including ESW.  **First**, while litigation undertaken against the parties otherwise benefitting from the release may not reduce assets, since the Consideration will be paid, the release itself to ESW, for example, is an essential component of the Plan by which the Debtor stands to return significant value to its stakeholders.  Without the release of ESW by the Debtor, ESW could be mired in uncertain litigation.

74.    **Second**, the release by the Debtor is predicated on substantial contributions by the parties benefitting from that release.  In the first instance, the Debtor Release includes parties that have provided a direct benefit to the Debtor's estate through diligently discharging their duties and contributing to the overall success of this Chapter 11 Case.  Moreover, each Protected Party is obliged to release the Debtor and its Estate from causes of action that might otherwise be asserted against the Debtor's Estate.  When measured against the limited value of the released claims or causes at issue, such agreements constitute "substantial consideration" supporting the Debtor Release.

75.    **Third**, the release is essential to the Plan itself.  Without the Debtor's release of third parties, the Debtor does not believe that the manifest benefits arising under the Plan would be possible.  This factor therefore supports approval with respect to the Debtor Release.

76.    **Fourth**, creditors overwhelmingly support the release by the Debtor of third parties.  As noted in the Voting Report, the voting creditors unanimously support the Plan.  Given the critical nature of the release of third parties to the Plan, the creditors' tremendous support for the Plan can only demonstrate tremendous support for the Debtor Release.

77.    *Finally*, while the Plan does not provide *full* recoveries to unsecured creditors, the Plan provides *significant* recoveries to those constituencies, and, as noted above, enjoys overwhelming support by the Voting Class.  The Debtor Release should therefore be approved.

**b.    The Third Party Release Should Be Approved.**

78.    The Plan provides a narrow and appropriately tailored Third Party Release that applies only to consenting parties and, therefore, should be approved.    Generally, a chapter 11 plan may provide for a consensual release of claims by third parties.    The determination as to whether a third party release is consensual ultimately relies on the particular circumstances at issue in a particular case.  *See Indianapolis Downs*, 486 B.R. at 305.  Nor is affirmative consent to a third party release (as opposed to opting out of that release) required for such release to be "consensual."  *See id.*; *In re Spansion, Inc.*, 426 B.R. 114, 144 (Bankr. D. Del. 2010).  Thus, unimpaired creditors receiving a full recovery under a plan may be deemed to have consented to a third party release.  *See id.*  Similarly, a third party release is consensual against non-debtor parties where the releasing parties have the opportunity to opt out of the release but fail to do so.  *See Indianapolis Downs*, 486 B.R. at 306; *Spansion*, 426 B.R. at 144; *In re Genco Shipping & Trading Ltd.*, No. 14-11108, slip op. at 58 (Bankr. S.D.N.Y. July 2, 2014).

79.    The Third Party Release is fully consensual.  Only holders of claims that are unimpaired (and receiving full recoveries) under the Plan or that are entitled to vote to accept or reject the Plan, yet do not opt out of the third party release, will grant the release.  Class 4 and Class 5 holders are not deemed to be giving the Third Party Releases.  In other words, every party potentially bound by the Third Party Release is either Unimpaired (and will receive payment in full) or had the opportunity and the necessary information to opt out of the Third Party Release, and the Plan appropriately recognizes those who did not opt out as having granted

29

the release.  *See Indianapolis Downs*, 486 B.R. at 306 ("[T]he record reflects these parties were provided detailed instructions on how to opt out, and had the opportunity to do so by marking their ballots.  Under these circumstances, the [t]hird [p]arty [r]eleases may be properly characterized as consensual and will be approved.").  Therefore, the Third Party Release should be approved.

## V.    The Exculpation Should Be Approved.

80.    The Debtor acknowledges the objection filed by the office of the United States Trustee with respect to the scope of the Exculpation provided under the Plan.  In particular, the Debtor notes that the UST has objected to the inclusion of non-estate fiduciaries in that Exculpation, citing *Washington Mutual*, 442 B.R. at 350; *Tribune*, 464 B.R. at 189; and *In re PTL Holdings, LLC*, No. 11–12676, 2011 WL 5509031 at *12 (Bankr. D. Del. Nov. 10, 2011).

81.    However, the Debtor respectfully submits that inclusion of non-estate fiduciaries in its proposed Exculpation is both fair and appropriate under both applicable law and the facts and circumstances of this Chapter 11 Case.  In the first instance, each of *Washington Mutual, Tribune*, and *PTL* trace their rulings in this regard to the Third Circuit's decision in *In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000).  *See, e.g.*, *Wash. Mut.*, 442 B.R. at 351 ("The standard for exculpations has been extant in this district since the Third Circuit's *PWS* decision in 2000.").  But, in *PWS*, the Third Circuit in fact rejected any "per se rule barring any provision in a reorganization plan limiting the liability of third parties" by virtue of section 524(e) of the Bankruptcy Code when it assessed a plan exculpation in that case.  *See PWS*, 228 F.3d at 247.  Rather, the Third Circuit was clear that, where a plan seeks to limit liability, such as through exculpation, such provisions must be assessed in light of the particular circumstances at issue –

30

in that case, the particular duties and obligations imposed on a creditors' committee's members per section 1103(c) of the Bankruptcy Code. *See id.*

82.    Courts have allowed exculpation provisions to include purchasers.  For example, the plan of reorganization in *Fisker Automotive Holdings, Inc.*, defined "Exculpated Parties" to include "the Purchaser and each of its agents, financial advisors, attorneys, accountants, consultants, representatives, and other professionals . . . ." *See, e.g.*, *In re FAH Liquidating Corp., et al., (f/k/a/ Fisker Automotive Holdings, Inc.)*, Case No. 13-13087-1 (KG) at *10 (ECF Docket No. 1137) (Bankr. D. Del. July 28, 2014).  "Exculpated Parties shall neither have, nor incur any liability to any Entity for any prepetition of postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases . . . ." *Id.* at *44.  The court in describing the reasoning behind granting the exculpation stated:

> Wanxiang [the purchaser] has played a particularly key role in this -- in this bankruptcy case, and I think to reject its desire for an exculpation clause would really, I believe, not give recognition to all of the benefits that the debtors' estates have received as a result of Wanxiang's activities in the case. And I certainly am not telling people and not ruling that in other cases an exculpation provision would be applied to a nonfiduciary. I think that it has to be extremely restricted, as we're doing here, to an exceptional situation, and I think that Wanxiang has satisfied the particular circumstances, very exceptional circumstances, situation. So I'll overrule that objection.

*In re FAH Liquidating Corp., et al., (f/k/a/ Fisker Automotive Holdings, Inc.)*, Case No. 13-13087-1 (KG) at *27 (ECF Doc. No. 1152) (Bankr. D. Del. July 30, 2014).

83.    Similarly, in *FKF Madison Group Owner, LLC*, Judge Gross at confirmation overruled the UST's objection with regards to the plan sponsors being exculpated by finding:

> And I think that the whole concept of exculpation is appropriate under these circumstances where we have parties who really carried the case on their backs for extended periods of time, and didn't have to do it. And I recognize that there are some cases that limit exculpation to fiduciaries, but as a practical matter, I just don't see any rationale for limiting the exculpation of two fiduciaries under the very, as I say unique

31

> circumstances and facts of these cases. And under the circumstances I am going . . . overrule the argument of the United States Trustee, again on a very, very specific set of facts.

*In re FKF Madison Group Owner, LLC et al.*, Case No. 10-11867 (KG) (Docket No. 1343)

(Bankr. D. Del. Apr. 20, 2012).

84.    The particular facts and circumstances of this Chapter 11 Case warrant the inclusion of non-estate fiduciaries in the Exculpation here.  ESW's role in the Chapter 11 Case was unique and critical.  For example, ESW has made significant contributions to this Chapter 11 Case, including the development of the highly consensual Plan, including by directly participating in negotiations, providing replacement debtor-in-possession financing that allowed the Debtor sufficient liquidity and financing to negotiate, draft, and solicit the Plan, and funding distributions, among others.  Further, ESW is also providing recoveries directly to creditors through the Consideration provided under the Plan as well as providing further avenues of recovery through the Distribution Trust Avoidance Actions and D&O Policies.  ESW, at great expense and risk, proposed a plan of reorganization which was able to provide for a reorganization process that complied with the safeguards of section 1129 of the Bankruptcy Code and materially increased the recovery for general unsecured.  ESW bid to become a plan sponsor and, in the process, allowed this case to move from an abbreviated section 363 sale process with limited recoveries to unsecured creditors, to a fulsome plan process governed by the safeguards of section 1129 of the Bankruptcy Code, and materially improved recoveries to creditors.  Without ESW, it is plausible that the recovery from the proceeds from the section 363 sale would not have been sufficient to pay administrative claims.  Moreover, ESW agreed to fund replacement postpetition financing for the Debtor to permit the plan process to proceed.  Given the unusual and exceptional circumstances of the Chapter 11 Case, ESW, as the DIP Lender and the Plan Sponsor, has provided material consideration that warrants and necessitates

the Exculpation here.  Through the Plan, there will be significant and, in many cases, complete, recoveries to creditors.  The Debtor therefore respectfully submits that including ESW in the Exculpation is amply warranted under *PWS*.

**W.    No Successor Liability.**

85.    Pursuant to section 1141 of the Bankruptcy Code and Article XI of the Plan, the property of the Debtor's estate is vested in the Reorganized Debtor, free and clear of all claims and interests of creditors and equity holders of the Debtor. *See* 11 U.S.C. § 1141(b)-(c). Moreover, the effect of confirmation of the Plan is to discharge the Debtor from any debt that arose before the date of confirmation, and any debt of a kind specified in section 502(g) , 502(h) , or 502(i) of the Bankruptcy Code.  *See* 11 U.S.C. § 1141(d) .

86.    Accordingly, the issuance of New Equity or transfer of assets through the Plan shall not result in the Reorganized Debtor (a) having any liability or responsibility for any Claim against or Equity Interest in the Debtor, the Debtor's estate, or Insider of the Debtor, or (b) having any liability or responsibility to the Debtor, each except as expressly set forth in the Plan. Without limiting the effect or scope of the foregoing, and to the fullest extent permitted by applicable laws, the issuance of the New Equity or transfer of assets contemplated in the Plan does not and will not subject the Reorganized Debtor, its respective properties or assets or respective affiliates, successors, or assigns to any liability for Claims against the Debtor's interests in such assets by reason of such issuance of New Equity or transfer of assets under any applicable laws, including, without limitation, any successor liability.

87.    Pursuant to the Schedule of Assumed Contracts and Unexpired Leases, the Reorganized Debtor shall not assume, and therefore shall reject, that certain Hipcricket, Inc. 401(k) Retirement Plan (the "**401(k) Plan**").  On April 30, 2015, the Debtor filed its *Amended Motion of Debtor for an Order Approving (I) the Debtor's Termination of Its 401(k) Plan and*

33

*(II) the Implementation of Certain Procedures in Connection Therewith* [Docket No. 369] requesting authority of the Court to terminate the 401(k) Plan. ESW shall assume no liabilities or fiduciary duties with respect to the 401(k) Plan in any respect whatsoever.

## X.    Modifications to Plan Do Not Affect Holders of Claims.

88.    The Proponents have made certain non-material modifications to the Plan to address the concerns raised by the UST and New York State Department of Taxation and Finance, as well as to address informal comments made by the Committee, Plan Sponsor, and Distribution Trustee. Section 1127(a) of the Bankruptcy Code provides a plan proponent with the right to modify the plan "at any time" before confirmation. Section 1127(d) of the Bankruptcy Code provides that all stakeholders that previously accepted the plan also are deemed to have accepted the modified plan if such modifications are found to not adversely change the treatment of the claims in the voting classes. 11 U.S.C. § 1127(d); Fed. R. Bankr. P. 3019. Courts routinely allow plan proponents to make non-material changes to a plan without requiring the proponent to re-solicit the plan for acceptances. *See, e.g., Enron Corp. v. New Power Co. (In re New Power Co.)*, 438 F.3d 1113, 1117-18 (11th Cir. 2006). The Proponents submit that all of the modifications to the March 31 Plan, as reflected in the Modified Plan being filed concurrently herewith, do not affect the recoveries of the Debtor's creditors.[15]    For example, the Modified Plan clarifies that the proceeds of certain insurance policies will vest in the Distribution Trust. In addition, the Modified Plan adds the Committee and its members to the definition of Protected Parties, but also narrows the reach of the exoneration provisions contained in the Plan. In light of these minor technical modifications, the Proponents are not

---

[15]    The modifications to the Plan are reflected in **Exhibit A** to the *Notice of Immaterial Modifications to Amended Plan of Reorganization of Debtor* filed concurrently herewith.

required to re-solicit the Plan and all creditors that previously voted to accept the March 31 Plan should be deemed to accept the Modified Plan.

**Y.      Waiver of stay**

89.      The Debtor respectfully requests that, pursuant to Bankruptcy Rule 3020(e), the Court waive the 14-day stay of the Confirmation Order.  Such a waiver is appropriate in these circumstances to permit the Distribution Trustee to commence his duties as quickly as practicable, to promote prompt distributions under the Plan and Distribution Trust Agreement for the benefit of creditors and because a significant number of implementation activities are capable of being undertaken in short order.  Therefore, the Debtor respectfully submits that good cause exists to support the waiver of the stay imposed by Bankruptcy Rule 3020(e).

## CONCLUSION

WHEREFORE, based on the foregoing, the Debtor respectfully requests that the Court enter an order (substantially in the form to be submitted to the Court) confirming the Plan, overruling all remaining Objections to the extent not consensually resolved, approving the non-material modifications reflected in the Modified Plan, deeming such modifications to be accepted by creditors who voted to accept the March 31 Plan, and granting such other and further relief as may be just and appropriate.

DOCS_SF:87544.5

Dated:  May 11, 2015                    PACHULSKI STANG ZIEHL & JONES LLP

_/s/ James E. O'Neill_
Ira D. Kharasch (CA Bar No. 109084)
Linda F. Cantor (CA Bar No. 153762)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
E-mail:  ikharasch@pszjlaw.com
            lcantor@pszjlaw.com
            joneill@pszjlaw.com

_Counsel for Debtor and Debtor in Possession_

  - and -

HAYNES AND BOONE, LLP

_/s/ Trevor R. Hoffmann_
Trevor R. Hoffmann (NY Bar No. 24048806)
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Email:    trevor.hoffmann@haynesboone.com

- and -

Charles A. Beckham, Jr. (TX Bar No. 02016600)
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Telephone: (713) 547-2000
Email:    charles.beckham@haynesboone.com

_Counsel to Plan Sponsor_

36