# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Hipcricket, Inc., | Case No. 15-10104 (LSS) |
| Debtor. | Re.: Dkt. Nos. 456, 466, 514 |

## MEMORANDUM ORDER APPROVING FIRST AND FINAL
## FEE APPLICATION OF CANACCORD GENUITY INC.

Upon consideration of the application (the "Final Fee Application")[1] of Canaccord Genuity Inc. ("Canaccord") seeking a final order approving compensation and expenses for the period of January 20, 2015 through May 14, 2015 for services rendered to Hipcricket, Inc. ("Debtor"), the objection (the "Objection")[2] of Hal L. Baume (the "Distribution Trustee") thereto, the arguments of counsel at a hearing on September 2, 2015, and upon further consideration, the Court finds as follows:

**Background**

On January 20, 2015, Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code. On January 21, 2015, Debtor filed an application to employ Canaccord as its investment banker.[3] Pursuant to an order entered on February 11, 2015 (the

---

[1] *First and Final Application for Compensation and Reimbursement of Expenses of Canaccord Genuity Inc., as Investment Banker to the Debtor for the Period from January 20, 2015 Through May 14, 2015* [D.I. 456]

[2] *Objection of the Distribution Trustee to First and Final Application for Compensation and Reimbursement of Expenses of Canaccord Genuity Inc., as Investment Banker to the Debtor for the Period from January 20, 2015 Through May 14, 2015* [D.I. 466]

[3] *Debtor's Application for Entry of an Order Under 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Employment and Retention of Canaccord Genuity Inc. as Investment Banker to Debtor Nunc Pro Tunc to the Petition Date* [D.I. 10]

"Retention Order"),[4] the Court approved Debtor's retention of Canaccord. The terms of the engagement are found in the Retention Order and the January 20, 2014 engagement letter as amended by Amendment No. 1 to Agreement dated December 11, 2014 ("Engagement Letter, and together with the Retention Order, the "Retention Terms").

On June 3, 2015, Canaccord filed the Canaccord Fee Application seeking final allowance of compensation in the amount of $805,000 in fees[5] and $2,610.94 in expenses. Canaccord asserts that pursuant to the Retention Terms it is entitled to Monthly Fees of $140,000, an M&A Fee in the amount of $530,000, and a Success Fee in the amount of $135,000. The Success Fee is based upon the transaction with ESW Capital, LLC ("ESW"), which included debtor-in-possession financing, and culminated in a confirmed plan of reorganization.

The Distribution Trustee filed the Objection to the Canaccord Fee Application. In his Objection, the Distribution Trustee does not object to the Monthly Fees, or the M&A Fee; in fact, the Distribution Trustee specifically supports payment of the M&A Fee. It is only the Success Fee that is subject to challenge.

The Distribution Trustee argues that the proviso in the Retention Terms eliminating a Success Fee in connection with debtor-in-possession financing as part of "a contemplated sale transaction" applies to the ESW transaction, as it included debtor-in-possession financing and arose directly from the Court supervised 363 sale process. Canaccord argues that the ESW transaction is not a "contemplated sale transaction" as set forth in the Retention Terms because

---

[4] *Order under 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Employment and Retention of Canaccord Genuity Inc. as Investment Banker to Debtor Nunc Pro Tunc to the Petition Date* [D.I. 112]

[5] The cover sheet to the Canaccord Fee Application indicates a final request of $875,000 in fees. At the hearing, counsel for Canaccord pointed out that this was an error as it failed to properly reflect a credit of $70,000 in monthly fees against the M&A Fee of $600,000. Aside from this error, no party questioned the calculation of the fees.

the ESW transaction contemplated a plan of reorganization through which old equity was cancelled and ESW obtained 100% of the new equity of the Debtor. Canaccord thus, concludes that the proviso does not prevent the award of a Success Fee.

**Discussion**

The Distribution Trustee's objection has more than a little surface appeal. On February 11, 2015, the Court entered an order[6] approving bid procedures (the "Bid Procedures") for the sale of substantially all of Debtor's assets (the "Sale"), which included a stalking horse bid ("SITO Bid") from SITO Inc. ("SITO"). On February 23, 2015, ESW submitted its initial bid (the "ESW Bid"). Unlike the SITO Bid, the ESW Bid did not offer to purchase Debtor's assets via an asset purchase agreement. Rather, the ESW Bid took the form of a plan sponsor, with replacement debtor-in-possession financing to both pay off SITO's debtor-in-possession financing and to bridge the gap to a confirmation hearing. On March 3, 2015, Debtor conducted the auction sanctioned by the Court in the Bid Procedures. When SITO declined to participate in the auction, Debtor determined the ESW Bid to be the highest and best offer for Debtor's assets.[7] On March 6, 2015, Debtor filed a *Notice of Successful Bidder and Bid Comparison*[8] indicating that Debtor intended to seek court approval of the ESW Bid. SITO opposed this relief and filed

---

[6] *Order (A) Approving Bid Procedures for the Sale of Substantially All of the Debtor's Assets Outside of the Ordinary Course of Business; (B) Scheduling an Auction and Hearing to consider the Sale and Approve the From and Manner of Notice Related Thereto; (C) Approving Payment of a Break-Up Fee and Expense Reimbursement; and (D) Granting Related Relief* [D.I. 118]

[7] While the cash component of the bid continued to improve, the ESW bid remained in the context of a plan of reorganization.

[8] D.I. 191

a motion (the "SITO Motion") for the Court to vacate the auction and declare SITO the successful bidder.[9]

On March 9, 2015, the Court held a hearing (the "Sale Hearing") to consider Debtor's motion to approve the ESW Bid (the "Sale Motion") and the SITO Motion. After a contested evidentiary hearing, on March 10, 2015 the Court ruled from the bench[10] granting the Sale Motion, approving the ESW Bid and denying the SITO Motion. In that context, the Court found that the ESW Bid was a Qualified Bid, that it was the highest and best offer, and that the Bid Procedures adequately contemplated a form of transaction different from the SITO Bid. The Court also noted that the plan contemplated in the ESW Bid, in essence, effected a sale of Debtor's assets, stating that the plan was a "transaction under which ESW will receive the assets indirectly through its acquisition of the equity of Debtor in a plan of reorganization."[11]

Notwithstanding the foregoing, Canaccord's right to a Success Fee is based upon the Retention Terms, not the characterization of the transaction for purposes of the Sale Hearing.[12] Section 2 of the Engagement Letter governs fees, and provides, in pertinent part:

> In consideration for its services hereunder, [Debtor] shall pay [Canaccord] . . . the following fees:

---

[9] *Emergency Motion to (I) Enforce the Provision of the Order (A) Approving Bid Procedures for the Sale of Substantially All of Debtor's Assets Outside the Ordinary Course of Business; (B) Scheduling and Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Approving Payment of a Break-Up Fee and Expense Reimbursement; and (D) Granting Related Relief, (II) Vacate the Purported Auction and (III) Declare SITO Mobile, Ltd. as Successful Bidder* [D.I. 192]

[10] Bench Ruling on Sale Mot. Hr'g Tr., Mar. 10, 2015 ("Bench Ruling")

[11] Bench Ruling 10: 18-21

[12] The Court was not interpreting the transaction for purposes of Canaccord's engagement (which application was filed two months prior to the Sale Hearing). And, not surprisingly, Canaccord did not take a position on the nature of the transaction at the Sale Hearing.

(d) [u]pon the closing of a Financing Transaction, a Success Fee equal to 3% of the gross proceeds received by the Company in such Financing Transaction, but not including proceeds from the exercise of any warrants issued in the Financing Transaction.

\* \* \*

<u>provided</u>, that if a proposed buyer provides debtor in possession financing as part of a contemplated *sale transaction*, and such *sale transaction* is consummated with that proposed buyer, then Canaccord [] shall earn only the M&A Fee and not any Success Fee on account of a Financing Transaction."[13]  (Emphasis added.)

Thus, the Retention Terms provide for a Success Fee on the closing of a Financing Transaction that is not part of a consummated sale transaction.

The Distribution Trustee's argument is that the words "sale transaction" should read "sale Transaction" (capital "T") and so read, would include the acquisition of equity through a plan of reorganization. Had that been the intent of the parties, however, the term "Transaction"[14] itself, rather than "sale transaction" would have sufficed as it would have included both acquisition of assets and equity through whatever acquisition device. To adopt the Distribution Trustee's

---

[13] Engagement Letter § 2, hanging paragraph

[14] In full, the Engagement Letter defines a Transaction as

> any transaction or series of transactions, whether accomplished pursuant to a Plan (as defined below) or otherwise, involving (a) an acquisition, merger, consolidation, or other transaction with another party through which assets of the Company are, directly or indirectly, combined, with or transferred to another party outside of the ordinary course of business; (b) the acquisition, directly or indirectly, by a buyer or buyers of equity interests or options, or any combination thereof constituting a majority or controlling portion of the stock of the Company or possessing a majority or controlling portion of the voting power of the Company; (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of a majority or controlling portion of the securities or other interests (through tender offer, merger, sale, exchange or otherwise) or any portion of the assets of the Company outside of the ordinary course of business; (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purposes of affecting a transfer of a majority or controlling interest in the Company to a third party; (e) the conversion to common or other equity, or any other security or instrument, or any portion of the Company's indebtedness; or (f) any combination of the foregoing.

Amendment No. 1 to Agreement at 1.

position it would be necessary to ignore the word "sale." Such a reading does not comport with the rules of contract interpretation. *In re Am. Bus. Fin. Servs., Inc.*, 2008 WL 1702095, at *7 (Bankr. D. Del. Apr. 10, 2008) (citing *In re Marques*, 358 B.R. 188, 198 (Bankr. E.D. Pa. 2006) ("It is a general principle of contract interpretation that in construing a contract a court should give meaning to all its words and phrases and adopt a construction that avoids surplusage.")) Further, although the Distribution Trustee is correct that the term "sale transaction" is not defined, it is not ambiguous. *In re Combustion Eng'g, Inc.*, 366 F.Supp.2d 224, 230 (D. Del. 2005) ("A contract is not ambiguous simply because both parties disagree over the construction of the terms in the contract."). In context, it means a sale of the company's assets and not the acquisition of new equity through a plan process.

Finally, this Court will not re-write the Retention Terms to conform to an after-the-fact occurrence in the case. *In re HNRC Dissolution Co.*, 340 B.R. 818, 828 (E.D. Ky. 2006) (recognizing a "need to protect the professional's expectation of compensation to ensure that the most highly qualified professionals remain willing to participate in the bankruptcy process").[15]

**Conclusion**

Based on the Retention Terms, Canaccord is entitled to a Success Fee in connection with the debtor-in-possession financing provided by ESW as it was not provided as part of a "sale transaction" as those words are used in the Retention Terms. Accordingly,

**IT IS HEREBY ORDERED** that:

1. Canaccord's fees in the amount of $805,000 and expenses in the amount of $2,610.94 are allowed.

---

[15] The Distribution Trustee did not argue that the Retention Terms proved to be "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).

2. Debtor is authorized to pay Canaccord one hundred percent (100%) of the fees and expenses allowed.

3. This Court shall retain jurisdiction over all matters arising from or related to the interpretation or implementation of this Order.

Dated: September 29, 2015
Wilmington, Delaware

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE